COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
AZRA Z. MEHDI (220406)
DANIEL J. PFEFFERBAUM (248631)
SUZANNE H. KAPLAN (247067)
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
amehdi@csgrr.com
dpfefferbaum@csgrr.com
shkaplan@csgrr.com
– and –
LAURIE L. LARGENT (153493)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
llargent@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re IMPAX LABORATORIES, INC. SECURITIES LITIGATION | Master File No. C-04-4802-JW |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |

DATE:           January 12, 2009
TIME:           9:00 a.m.
COURTROOM:      The Honorable
                James Ware

1

**TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ............................................................................................2

4   II.    ARGUMENT ..................................................................................................4

5          A.     This Case Appropriately Calls for Class Action Treatment Under Rule 23 ..........4

6          B.     The Proposed Class Satisfies the Prerequisites of Rule 23(a) .................................6

7                 1.     The Class Is So Numerous that Joinder of All Members of the
8                        Class Is Impracticable.................................................................................6

9                 2.     Questions of Law and Fact Are Common to Members of the Class ...........8
10
                  3.     Plaintiffs' Claims Are Typical of Those of the Class...............................10
11
                  4.     Dearborn Heights and Owen Will Fairly and Adequately Protect
                         the Interests of the Class ...........................................................................11

12         C.     The Proposed Class Satisfies Rule 23(b)(3) ......................................................13

13                1.     Common Questions of Law and Fact Predominate over Individual
14                       Questions ...................................................................................................13

15                2.     A Class Action Is Superior to Other Available Methods for
                         Resolving This Controversy ......................................................................17

16   III.   CONCLUSION ............................................................................................19

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Adam v. Silicon Valley Bancshares*,
884 F. Supp. 1398 (N.D. Cal. 1995)................................................................................11

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001)..........................................................................................10

*Arnold v. United Artists Theatre Circuit, Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994).....................................................................................6

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)....................................................................................................5, 14

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999).............................................................................9, 14, 15

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)...................................................................................*passim*

*Cameron v. E. M. Adams & Co.*,
547 F.2d 473 (9th Cir. 1976)..........................................................................................14

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989)..........................................................................14, 15, 16

*Carpenter v. Davis*,
424 F.2d 257 (5th Cir. 1970)............................................................................................7

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484 (S.D. Fla. 2003)....................................................................................15

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980)........................................................................................................19

*Dukes v. Wal-Mart, Inc.*,
474 F.3d 1214 (9th Cir. 2007).................................................................................4, 8, 9

*Dukes v. Wal-Mart Stores, Inc.*,
222 F.R.D. 137, 145 (N.D. Cal. 2004) ), *aff'd*, 474 F.3d 1214
(9th Cir. 2007), *cert. denied*, 931 A.2d 1095 (Md. 2007)...................................................8

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).........................................................................................................4

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985)...........................................................................................17

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

*Epitope, Inc., Sec. Litig.,*
No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705
(D. Or. Nov. 30, 1992) .................................................................................. 12

*Epstein v. MCA, Inc.,* 50 F.3d 644 (9th Cir. 1995),
*rev'd on other grounds sub nom.,*
*Matsushita Elec. Indus. Co. v. Epstein,*
516 U.S. 367 (1996) ................................................................................ 13, 18

*Freedman v. Louisiana-Pacific Corp.,*
922 F. Supp. 377 (D. Or. 1996) .............................................................. *passim*

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ............................................................. 8, 9, 10

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ......................................................................... 10

*Harris v. Palm Springs Alpine Estates, Inc.,*
329 F.2d 909 (9th Cir. 1964) ..................................................................... 6, 17

*Haywood v. Barnes,*
109 F.R.D. 568 (E.D.N.C. 1986) .................................................................... 8

*Hernandez v. Alexander,*
152 F.R.D. 192 (D. Nev. 1993) .................................................................... 13

*In re Accelr8 Tech. Corp. Sec. Litig.,*
147 F. Supp. 2d 1049 (D. Colo. 2001) ......................................................... 16

*In re Adobe Sys., Inc. Sec. Litig.,*
139 F.R.D. 150 (N.D. Cal. 1991) .................................................................... 5

*In re Alco Int'l Group, Sec. Litig.,*
158 F.R.D. 152 (S.D. Cal. 1994) ................................................... 3, 8, 10, 13

*In re AmeriFirst Sec. Litig.,*
139 F.R.D. 423 (S.D. Fla. 1991) .................................................................. 15

*In re Applied Micro Circuits Corp. Sec. Litig.,*
No. 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492
(S.D. Cal. July 15, 2003) .............................................................................. 14

*In re Asbestos Sch. Litig.,*
104 F.R.D. 422 (E.D. Pa. 1984),
*aff'd in part and vacated in part,*
789 F.2d 996 (3d Cir. 1986) ........................................................................... 9

*In re Blech Sec. Litig.,*
187 F.R.D. 97 (S.D.N.Y. 1999) ................................................................. 6, 8

Page

*In re Cirrus Logic Sec.*,
 155 F.R.D. 654 (N.D. Cal. 1994) ................................................................. 6, 9

*In re Consol. Memorex Sec. Cases*,
 61 F.R.D. 88 (N.D. Cal. 1973) ......................................................................... 13

*In re DJ Orthopedics, Inc.*,
 No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534
 (S.D. Cal. Nov. 17, 2003) ................................................................................. 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
 (N.D. Cal. June 5, 2006) .......................................................................... 4, 6, 7, 12

*In re Emulex Corp.*,
 210 F.R.D. 717 (C.D. Cal. 2002) ........................................................... 5, 7, 14, 17

*In re Indep. Energy Holdings PLC. Sec. Litig.*,
 210 F.R.D. 476 (S.D.N.Y. 2002) ................................................................. 13, 17

*In re Magma Design Automation Sec. Litig.*,
 No. C 05-2394 CRB, 2007 U.S. Dist. LEXIS 62641
 (N.D. Cal. Aug. 16, 2007) ................................................................................. 4

*In re Micron Techs., Inc.*,
 247 F.R.D. 627 (D. Idaho 2007) ..................................................................... 10

*In re Proxima Corp. Sec. Litig.*,
 No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443
 (S.D. Cal. May 4, 1994) ................................................................................... 10

*In re Res. Am. Sec. Litig.*,
 202 F.R.D. 177 (E.D. Pa. 2001) ..................................................................... 15

*In re Seagate Tech. II Sec. Litig.*,
 843 F. Supp. 1341 (N.D. Cal. 1994) ............................................................... 14

*In re Seagate Techs. Sec. Litig.*,
 115 F.R.D. 264 (N.D. Cal. 1987) ..................................................................... 8

*In re THQ, Inc. Sec. Litig.*,
 No. CV 00-1783 AHM (Ex) 2002 U.S. Dist. LEXIS 7753
 (C.D. Cal. Mar. 22, 2002) .............................................................................. 5, 9

*In re U.S. Fin. Sec. Litig.*,
 64 F.R.D. 443 (S.D. Cal. 1974) ...................................................................... 9, 13

*In re Unioil Sec. Litig.*,
 107 F.R.D. 615 (C.D. Cal. 1985) .............................................................. 14, 18, 19

*In re United Energy Corp. Solar Power Modules*

Page

*Tax Shelter Invs. Sec. Litig.*,
   122 F.R.D. 251 (C.D. Cal. 1988)................................................................12, 14

*In re Worlds of Wonder Sec. Litig.*,
   No. C 87 5491 SC, 1990 U.S. Dist. LEXIS 8511
   (N.D. Cal. Mar. 26, 1990).....................................................................................3

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ..............................................................................11

*Levine v. SkyMall, Inc.*,
   No. CIV 99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705
   (D. Ariz. May 24, 2001) ......................................................................................15

*Lubin v. Sybedon Corp.*,
   688 F. Supp. 1425 (S.D. Cal. 1988) ....................................................................12

*McPhail v. First Command Fin. Planning, Inc.*,
   247 F.R.D. 598 (S.D. Cal. 2007)...................................................................passim

*Mersay v. First Republic Corp.*,
   43 F.R.D. 465 (S.D.N.Y. 1968)...........................................................................11

*Nursing Home Pension Fund v. Oracle Corp.*,
   No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS 94470
   (N.D. Cal. Dec. 20, 2006).....................................................................................7

*Perez-Funez v. Dist. Dir., Immigration & Naturalization Serv.*,
   611 F. Supp. 990 (C.D. Cal. 1984)....................................................................6, 7

*Rodriguez v. Carlson*,
   166 F.R.D. 465 (E.D. Wash. 1996) .......................................................................8

*Schaefer v. Overland Express Family of Funds*,
   169 F.R.D. 124 (S.D. Cal. 1996)...................................................................passim

*Schneider v. Traweek*,
   No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596
   (C.D. Cal. Aug. 7, 1990) .................................................................................5, 10

*Schwartz v. Harp*,
   108 F.R.D. 279 (C.D. Cal. 1985)...........................................................................7

*Sherman v. Griepentrog*,
   775 F. Supp. 1383 (D. Nev. 1991) ........................................................................7

*Smith v. Krispy Kreme Doughnut Corp.*,
   No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2389
   (M.D.N.C. Jan. 10, 2007) ....................................................................................12

Page

*Tatz v. Nanophase Techs. Corp.*,
No. 01 C 8840, 2003 U.S. Dist. LEXIS 9982
(N.D. Ill. June 13, 2003) ............................................................................................ 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
__ U.S. __, 127 S. Ct. 2499 (2007) .............................................................................. 5

*Trattner v. Am. Fletcher Mortgage Investors*,
74 F.R.D. 352 (S.D. Ind. 1976) .................................................................................. 7

*Weeks v. Bareco Oil Co.*,
125 F.2d 84 (7th Cir. 1941) ....................................................................................... 18

*Wehner v. Syntex Corp.*,
117 F.R.D. 641 (N.D. Cal. 1987) ............................................................................. 6, 8

*Weinberger v. Jackson*,
102 F.R.D. 839 (N.D. Cal. 1984) ....................................................................... 8, 10, 12

*Weinberger v. Thornton*,
114 F.R.D. 599 (S.D. Cal. 1986) ............................................................................... 18

*Yaffe v. Powers*,
454 F.2d 1362 (1st Cir. 1972) ................................................................................... 19

*Yamner v. Boich*,
No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849
(N.D. Cal. Sept. 15, 1994) ....................................................................................... 7, 9

*Yslava v. Hughes Aircraft Co.*,
845 F. Supp. 705 (D. Ariz. 1993) ............................................................................... 9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78i(b) .................................................................................................................. 2, 11
§78t(a) .................................................................................................................. 2, 11

17 C.F.R.
§240.10b-5 ............................................................................................................... 2

Federal Rules of Civil Procedure
Rule 23 ............................................................................................................. *passim*
Rule 23(a) ......................................................................................................... *passim*
Rule 23(a)(1) ............................................................................................................ 6
Rule 23(a)(2) ......................................................................................................... 8, 9
Rule 23(a)(3) ....................................................................................................... 10, 11
Rule 23(a)(4) ....................................................................................................... 11, 12
Rule 23(b)(3) ................................................................................................... *passim*
Rule 23(g) .............................................................................................................. 12

PLAINTIFFS' NOTICE AND MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF - C-04-4802-JW

- vi -

1

2                                                                                    **Page**

3   **SECONDARY AUTHORITIES**

4   1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
          §3:10 (4th ed. 2008) ...........................................................................................................9

5   5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
6          §8816 (4th ed. 1977)..........................................................................................................10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

2    PLEASE TAKE NOTICE that on January 12, 2009 at 9:00 a.m., or as soon thereafter as the

3    matter may be heard by the above-entitled Court, located at 280 South First Street, 4th Floor, San

4    Jose, CA  95113, in the courtroom of the Honorable James Ware, movants will and hereby do move

5    this Court for an Order certifying this matter as a class action pursuant to Fed. R. Civ. P. 23(a) and

6    23(b)(3), appointing lead plaintiff City of Dearborn Heights Act 345 Police and Fire Retirement

7    System and named plaintiff Dr. Melvin M. Owen as the class representatives and the law firm of

8    Coughlin Stoia Geller Rudman & Robbins LLP as Class counsel.  This motion is based on this

9    Notice of Motion for Class Certification, the accompanying Memorandum of Points and Authorities,

10   the supporting Request for Judicial Notice filed herewith, the supporting Declaration of Laurie L.

11   Largent filed herewith and exhibits attached thereto, all pleadings and papers filed herein, arguments

12   of counsel, and any other and further evidence that may be presented to the Court on reply and at the

13   time of the hearing.

14                          **STATEMENT OF ISSUES TO BE DECIDED**

15      1.      Whether this matter should be certified as a class action.

16      2.      Whether movants should be appointed as the Class representatives.

17      3.      Whether Coughlin Stoia Geller Rudman & Robbins LLP should be appointed as

18   Class counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### I.   INTRODUCTION

This is a securities class action against defendant IMPAX Laboratories, Inc. ("Impax" or the "Company") and individual defendants Barry R. Edwards, Cornel C. Spiegler, Dr. Charles Hsiao, Dr. Larry Hsu, David S. Doll, and David J. Edwards (collectively, "defendants") for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §240.10b-5.

Lead plaintiff City of Dearborn Heights Act 345 Police and Fire Retirement System ("Dearborn Heights") and named plaintiff Dr. Melvin M. Owen ("Owen") (collectively, "plaintiffs") seek an Order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of a Class defined as all persons and entities who received, purchased or otherwise acquired Impax securities from May 5, 2004 through November 3, 2004 (the "Class Period").[1]  Lead plaintiff Dearborn Heights and named plaintiff Owen seek the appointment as the designated representatives of the plaintiff Class, and seek the appointment of lead counsel Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as Class counsel.  On July 7, 2008, this Court denied defendants' motion to dismiss the Fourth Amended Consolidated Complaint (the "Complaint").  Dkt. No. 169. By Order dated August 15, 2008, the Court denied defendants' motion for leave to file a motion for reconsideration of its July 7, 2008 Order.   Dkt. No. 187.[2]

The Complaint alleges that defendants violated §§10(b) and 20(a) of the Exchange Act by deliberately manipulating Impax's reported financial results for 1Q04 and 2Q04 by improperly recognizing revenues on bupropion product sales and failing to adequately reserve for future

---

[1]      Excluded from the Class are all the defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any defendant has or had a controlling interest, at all relevant times.

[2]      On August 27, 2008, defendants filed a Petition for a Writ of Mandamus and requested an immediate stay of discovery, which is currently pending before the Ninth Circuit.

1    estimated sales returns and credits in violation of Generally Accepted Accounting Principles

2    ("GAAP").  *See generally* the Complaint.  As a result of defendants' fraud, Impax's stock traded at

3    artificially inflated prices during the Class Period.  *Id.*  Each individual defendant took full advantage

4    of the artificially inflated prices by selling their Impax stock during the Class Period for total

5    proceeds of ***over $32 million***.  ¶¶5, 265-266.[3]  When defendants revealed their fraud, the

6    consequences were severe.  On August 4, 2004, when defendants partially disclosed to the market

7    that bupropion sales were much lower then expected, Impax's stock declined 14.10% from $13.97 to

8    $12.00.  ¶289.  Then on November 3, 2004, when Impax announced delay of the release of its 3Q04

9    financials because defendants could no longer conceal their false accounting and had to admit

10   uncertainties in bupropion revenue recognition, Impax's stock lost $2.93 or 23% of its value, causing

11   plaintiffs and the Class to suffer millions of dollars in economic losses.  ¶¶398-399.  Within days

12   thereafter, Impax announced that it would be restating its 1Q04 and 2Q04 financial results, thereby

13   admitting that its publicly issued financial statements for the two quarters were false and not

14   prepared in conformity with GAAP.  ¶¶8, 86, 88, 144.

15           In a long and virtually unbroken line of cases, the Ninth Circuit and its district courts have

16   endorsed the use of class action procedures in adjudicating claims under the federal securities laws:

17           [C]lass actions commonly arise in securities fraud cases as the claims of separate
             investors are often too small to justify individual lawsuits, making class actions the
18           only efficient deterrent against securities fraud.

19   *In re Worlds of Wonder Sec. Litig.*, No. C 87 5491 SC, 1990 U.S. Dist. LEXIS 8511, at *4-*5 (N.D.

20   Cal. Mar. 26, 1990)[4]; *see also McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615

21   (S.D. Cal. 2007) (stating that "the Ninth Circuit has stated a preference for resolving securities

22   claims via class action as a means of deterring fraud"); *In re Alco Int'l Group, Sec. Litig.*, 158 F.R.D.

23   152, 155 (S.D. Cal. 1994) (stating that "the Ninth Circuit recognizes the superior and significant role

24   [that] class action suits play in ensuring the integrity of the market").

25   _____

26   [3]      All paragraph references ("¶__") are to the Complaint.

27   [4]      All citations and internal quotations and footnotes are omitted and all emphasis is added
     unless otherwise noted.

28

1    This action satisfies all of the requirements of Fed. R. Civ. P. 23(a) that: (1) the proposed

2    Class is so numerous that joinder of all members is impracticable; (2) there are questions of fact and

3    law common to the Class which predominate; (3) the claims or defenses of the representative parties

4    are typical of the claims or defenses of the Class; and (4) the representatives will fairly and

5    adequately protect the interests of the Class.[5]  This action also satisfies the two core requirements for

6    certification under Fed. R. Civ. P. 23(b)(3), namely, that the common questions of law and fact

7    predominate and that a class action is the superior means to resolve the issues raised by this case.

8    Certifying this case as a class action will permit plaintiffs and thousands of other investors

9    similarly situated who suffered substantial damages when acquiring Impax securities during the

10   Class Period, to efficiently and effectively prosecute this action.  Accordingly, this case should be

11   certified as a class action.

12   **II.    ARGUMENT**

13       **A.    This Case Appropriately Calls for Class Action Treatment Under
             Rule 23**

14   The Complaint details a scheme that defrauded thousands of similarly situated individuals.

15   The Ninth Circuit and its district courts have repeatedly endorsed the use of class action procedures

16   to resolve claims under the federal securities laws.  As one court has stated, "[t]he law in the Ninth

17   _____

18   [5]    This Court has already determined that the Complaint sufficiently alleges the elements of a
     securities fraud claim.  *See* Dkt. No. 169 (Order denying defendants' motion to dismiss the

19   Complaint); Dkt. No. 187 (Order denying defendants' motion for leave to file motion for
     reconsideration).  Questions raised by a class certification motion are purely procedural – the Court

20   does not examine the merits of the plaintiff's case when considering a motion for class certification.
     *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or

21   history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of
     a suit in order to determine whether it may be maintained as a class action."); *In re Dynamic Random*

22   *Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841, at *26
     (N.D. Cal. June 5, 2006) (citing *Eisen*, 417 U.S. 156); *Blackie v. Barrack*, 524 F.2d 891, 901 n.17

23   (9th Cir. 1975); *In re Magma Design Automation Sec. Litig.*, No. C 05-2394 CRB, 2007 U.S. Dist.
     LEXIS 62641, at *4 (N.D. Cal. Aug. 16, 2007) ("It is axiomatic, however, that 'arguments

24   evaluating the weight of evidence or the merits of a case are improper at the class certification
     stage.'") (quoting *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1227 (9th Cir. 2007)).  In the Ninth

25   Circuit and its district courts, "[i]n determining whether Rule 23 is satisfied, the Court must accept
     the truth of the allegations in the plaintiff's complaint."  *McPhail*, 247 F.R.D. at 608 (citing *Blackie*,

26   524 F.2d at 901 n.17); *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D. Or. 1996)
     ("In ruling on a motion to certify, the court accepts as true the allegations made in support of

27   certification, and does not consider the merits of the case.").

28

1  Circuit is very well established that the requirements of Rule 23 should be liberally construed in

2  favor of class action cases brought under the federal securities laws." *Schneider v. Traweek*,

3  No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. Aug. 7, 1990). Courts

4  recognize that any doubt as to the propriety of certification should be resolved in favor of certifying

5  the class because denying class certification will almost certainly terminate the action and be

6  detrimental to the members of the class. *Blackie*, 524 F.2d at 901. "[C]lass actions commonly arise

7  in securities fraud cases as the claims of separate investors are often too small to justify individual

8  lawsuits, making class actions the only efficient deterrent against securities fraud. . . . Accordingly,

9  the Ninth Circuit and courts in this district hold a liberal view of class actions in securities

10  litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *Schaefer v.*

11  *Overland Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996) (stating that "[c]ourts

12  have generally found that actions for securities fraud actions [sic] are usually best maintained as

13  class actions").

14      The U.S. Supreme Court has long recognized, and recently affirmed, that private actions are

15  an important enforcement mechanism to supplement governmental regulation. "[M]eritorious

16  private actions to enforce federal antifraud securities laws are an essential supplement to criminal

17  prosecutions and civil enforcement actions" by the U.S. Department of Justice and the SEC. *Tellabs,*

18  *Inc. v. Makor Issues & Rights, Ltd.*, __ U.S. __, 127 S. Ct. 2499, 2504 (2007); *see also Basic Inc. v.*

19  *Levinson*, 485 U.S. 224, 231 (1988) (private actions for violations of the Exchange Act "constitute[]

20  an essential tool for enforcement of the 1934 Act's requirements"). Moreover, in enacting the

21  Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress reaffirmed the importance of

22  private enforcement of the securities laws:

23          Private securities litigation is an indispensable tool with which defrauded investors
            can recover their losses without having to rely upon government action. Such private
24          lawsuits promote public and global confidence in our capital markets and help to
            deter wrongdoing and to guarantee that corporate officers, auditors, directors,
25          lawyers and others properly perform their jobs.

26  H.R. Conf. Rep. No. 104-369, at 31 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730. The passage of the

27  PSLRA has not changed the standard for certifying a class action. *See In re Emulex Corp.*, 210

28  F.R.D. 717 (C.D. Cal. 2002); *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM (Ex), 2002 U.S.

1   Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("[L]ower courts have recognized that '*the*

2   *law in the Ninth Circuit is very well established that the requirements of Rule 23 should be*

3   *liberally construed in favor of class action cases brought under the federal securities laws*.'"); *In*

4   *re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[I]n an alleged securities fraud case,

5   when a court is in doubt as to whether or not to certify a class action, the court should err in favor of

6   allowing the class to go forward.").  As such, and in recognition of the significant role that class

7   actions play in protecting investors, courts liberally construe the requirements under the Federal

8   Rules of Civil Procedure in favor of class certification.  *Blackie*, 524 F.2d at 903 ("'the ultimate

9   effectiveness of [the security anti-fraud laws] may depend on the applicability of the class action

10  device'").  This case satisfies the liberal requirements of Rule 23.

    **B.**    **The Proposed Class Satisfies the Prerequisites of Rule 23(a)**

12      Rule 23(a) sets forth four prerequisites for certifying a class:

13      (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there
        are questions of law or fact common to the class; (3) the claims or defenses of the
14      representative parties are typical of the claims or defenses of the class; and (4) the
        representative parties will fairly and adequately protect the interests of the class.
15
    Fed. R. Civ. P. 23(a).  This case should proceed as a class action because plaintiffs can firmly
16
    establish that their securities claims satisfy these four prerequisites of Rule 23(a), commonly referred
17
    to as numerosity, commonality, typicality and adequacy of representation.  *See*, *e.g.*, *DRAM*, 2006
18
    U.S. Dist. LEXIS 39841, at *25-*26.
19
            **1.**    **The Class Is So Numerous that Joinder of All Members of the**
20                      **Class Is Impracticable**

21      Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

22  "impracticable."  Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean impossible, only that it

23  would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine*

24  *Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *see also Wehner v. Syntex Corp.*, 117 F.R.D.

25  641, 643 (N.D. Cal. 1987).  There is no fixed number of class members which either compels or

26  precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439,

27  448 (N.D. Cal. 1994).  Indeed, classes consisting of 25 members have been held large enough to

28  justify certification.  *See In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez*

1    *v. Dist. Dir., Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).

2    Additionally, the exact size of the class need not be known so long as general knowledge and

3    common sense indicate that the class is large. *Id.*; *see also DRAM*, 2006 U.S. Dist. LEXIS 39841, at

4    *27-*28; *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2006 U.S. Dist. LEXIS

5    94470, at *9 (N.D. Cal. Dec. 20, 2006); *Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985)

6    ("A failure to state the exact number in the proposed class does not defeat class certification . . . and

7    plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.").[6]

8            The numerosity requirement is satisfied in securities actions involving nationally traded

9    securities. *See*, *e.g.*, *Oracle*, 2006 U.S. Dist. LEXIS 94470, at *9; *Yamner v. Boich*, No. C-92-20597

10   RPA, 1994 U.S. Dist. LEXIS 20849, at *7-*8 (N.D. Cal. Sept. 15, 1994).  Throughout the Class

11   Period, Impax securities were actively traded on the National Association of Securities Dealers

12   Automated Quotation System ("NASDAQ") exchange, and while plaintiffs have not yet obtained

13   Impax's transfer records for the time period in question, Impax had more than 58 million shares of

14   its common stock outstanding as of November 3, 2004.  ¶458.

15           Further, in securities litigation, district courts regularly find the numerosity requirement

16   satisfied with respect to a purported class of purchasers or resellers of nationally traded securities on

17   the basis of the number of shares traded during the class period.  *See Emulex*, 210 F.R.D. at 719

18   ("[T]he Class would include hundreds or thousands of purchasers since approximately five million

19   shares of Emulex stock were traded daily during the Class Period.  Individual joinder of members of

20   a class this size would be impracticable."); *Trattner v. Am. Fletcher Mortgage Investors*, 74 F.R.D.

21   352, 356 (S.D. Ind. 1976) (numerosity demonstrated by the fact that stock volume was sufficient to

22   be traded on the American Stock Exchange).  In the present case, Impax traded on the NASDAQ and

23   had an average weekly trading volume of over 4.3 million shares and an average daily trading

24   volume of approximately 916,036 shares during the Class Period.  Declaration of Laurie L. Largent

25

26   [6]      *Accord Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not
     necessary that the members of the class be so clearly identified that any member can be presently
27   ascertained.' . . . The court may draw a reasonable inference of the size of the class from the facts
     before it.") (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

28

1   in Support of Plaintiffs' Motion for Class Certification and Request for Judicial Notice ("Largent

2   Decl."), filed concurrently herewith, Ex. 4.  There were undoubtedly thousands of purchasers of

3   Impax's shares during the Class Period.

4          In order to meet the numerosity requirement for class certification, plaintiffs may rely on

5   reasonable inferences drawn from available facts in order to demonstrate that the class is so

6   numerous that joinder of all class members is impracticable.  *Blech*, 187 F.R.D. at 103.

7          With hundreds or thousands of members, it is clear that a class of this size is so numerous as

8   to make individual joinder impracticable, if not logistically impossible, especially where members of

9   the Class are located throughout the country.  *See Alco*, 158 F.R.D. at 153-54 ("joinder is clearly

10  impractical where a large group of people, dispersed all across the country, are involved").  Plainly,

11  the proposed Class satisfies the numerosity requirement of Rule 23(a).  *See Freedman*, 922 F. Supp.

12  at 398; *Wehner*, 117 F.R.D. at 643; *In re Seagate Techs. Sec. Litig.*, 115 F.R.D. 264, 267 (N.D. Cal.

13  1987); *Weinberger v. Jackson*, 102 F.R.D. 839, 844 (N.D. Cal. 1984).

14          **2.      Questions of Law and Fact Are Common to Members of the**
                      **Class**

15

16         Fed. R. Civ. P. 23(a)(2) requires that there be questions of law or fact common to the class.

17  Like all the requirements of Rule 23(a), the commonality requirement is to be construed liberally:

18  "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive application so that

19  common questions have been found to exist in a wide range of contexts.' . . .  The rule does not

20  require all questions of law and fact to be common."  *Rodriguez v. Carlson*, 166 F.R.D. 465, 472

21  (E.D. Wash. 1996) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986)).

22         It is well established that the commonality requirement is satisfied if the claims of the

23  prospective class share even one central question of fact or law.[7]  *See*, *e.g.*, *Hanlon*, 150 F.3d at

24  _____

25  [7]      *See*, *e.g.*, *In re DJ Orthopedics, Inc.*, No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS
    21534, at *12 (S.D. Cal. Nov. 17, 2003) (noting "[s]everal circuits have held that even a single
26  common issue is sufficient"); *accord Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 145 (N.D.
    Cal. 2004), *aff'd*, 474 F.3d 1214 (9th Cir. 2007), *cert. denied*, 931 A.2d 1095 (Md. 2007) ("Indeed,
27  the necessary showing to satisfy commonality is 'minimal.'") (quoting *Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1020 (9th Cir. 1998)).

28

1   1019-20; *Dukes*, 474 F.3d at 1225 ("The commonality test is qualitative rather than quantitative –

2   one significant issue common to the class may be sufficient to warrant certification."); 1 Herbert B.

3   Newberg & Alba Conte, *Newberg on Class Actions* §3:10 (4th ed. 2008). "All questions of fact and

4   law need not be common to satisfy the rule.  The existence of shared legal issues with divergent

5   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

6   remedies within the class." *Hanlon*, 150 F.3d at 1019; *McPhail*, 247 F.R.D. at 609 (quoting *Hanlon*,

7   150 F.3d at 1019); *In re U.S. Fin. Sec. Litig.*, 64 F.R.D. 443, 448 (S.D. Cal. 1974) (based on the

8   language of §10(b), "the relevant inquiry is the existence of a broad course of fraudulent conduct");

9   *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("'A common

10  question is one which arises from a common nucleus of operative facts'") (quoting *In re Asbestos*

11  *Sch. Litig.*, 104 F.R.D. 422, 429 (E.D. Pa. 1984), *aff'd in part and vacated in part*, 789 F.2d 996 (3d

12  Cir. 1986)).

13          This action will require the Court to address a series of questions that will affect all Class

14  members.  For example, as alleged in the Complaint, common questions of law and fact exist as to:

15          (a)     Whether the federal securities laws were violated by defendants' acts;

16          (b)     Whether statements made by defendants to the investing public during the
            Class Period omitted or misrepresented material facts about the business, financial
17          and operational results of Impax; and

18          (c)     Whether defendants acted with the requisite state of mind.

19  *See Yamner*, 1994 U.S. Dist. LEXIS 20849, at *9 ("[t]hese are the standard questions upon which

20  federal courts have based the grant of class certification in numerous securities actions").

21          Underlying these common questions is a common nucleus of operative facts pertaining to

22  defendants' omissions and scheme to inflate the price of Impax's stock, causing members of the

23  Class to purchase Impax securities at inflated prices. Courts routinely recognize that securities fraud

24  actions alleging such a common course of conduct satisfy the commonality requirements of Fed. R.

25  Civ. P. 23(a)(2).  *See THQ*, 2002 U.S. Dist. LEXIS 7753, at *11; *Cirrus*, 155 F.R.D. at 657.[8]

26  _____

27  [8]      In securities cases, such as this one, there is a presumption of reliance where Impax was
28  traded on an efficient market which reacted to the public information about the Company. *Binder v.*

PLAINTIFFS' NOTICE; MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF - C-04-4802-JW                                        - 9 -

3.      **Plaintiffs' Claims Are Typical of Those of the Class**

Plaintiffs' claims satisfy the typicality requirement of Fed. R. Civ. P. 23(a)(3) if they arise

from the same event or course of conduct that gives rise to claims of other Class members and the

claims asserted are based on the same legal theory:

> Plaintiffs have sufficiently demonstrated that the named class representatives' claims
> are typical of those of the entire "global" class because the "typicality" prerequisite
> of Rule 23(a)(3) is satisfied when all members of the class are victims of the same
> course of conduct.

*Schneider*, 1990 U.S. Dist. LEXIS 15596, at *21; *see also Schaefer*, 169 F.R.D. at 128-29; *In re*

*Proxima Corp. Sec. Litig.*, No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443, at *54-*56 (S.D.

Cal. May 4, 1994); *Freedman*, 922 F. Supp. at 399.

In *Hanlon*, the Ninth Circuit explained that "[u]nder [Rule 23's] permissive standards,

representative claims are 'typical' if they are reasonably co-extensive with those of absent class

members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  The purpose of the

"typicality" requirement is to ensure that the named representatives' interests "align" with those of

the class.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *cf. Alco*, 158 F.R.D. at

154 (finding that "factual differences must be such that the interests of the class are placed in

jeopardy in order to defeat certification").

Typicality does ***not*** require the representatives' claims to be identical (or even "substantially

identical") to the class members' claims:

> 'Typicality refers to the nature of the claim or defense of the class
> representative, and not to the specific facts from which it arose or the relief sought.
> Accordingly, differences in the amount of damage, the size or manner of [stock]
> purchase, the nature of the purchaser, and even the specific document influencing the
> purchase will not render a claim atypical in most securities cases.'

*Weinberger*, 102 F.R.D. at 844 (quoting 5 Herbert B. Newberg & Alba Conte, *Newberg on Class*

*Actions* §8816, at 850 (4th ed. 1977)) (bracket in original); *see also Armstrong v. Davis*, 275 F.3d

---

*Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (holding that the presumption of reliance is available
when "a plaintiff alleges that a defendant made material representations or omissions concerning a
security that is actively traded in an 'efficient market'"); *In re Micron Techs., Inc.*, 247 F.R.D. 627,
633 (D. Idaho 2007).  Thus, this action satisfies the commonality requirement of Fed. R. Civ.
P. 23(a).

1  849, 869 (9th Cir. 2001) ("We do not insist that the named plaintiffs' injuries be identical with those

2  of the other class members, only that the unnamed class members have injuries similar to those of

3  the named plaintiffs and that the injuries result from the same, injurious course of conduct.");

4  *McPhail*, 247 F.R.D. at 609-10.  Rather, Rule 23(a)(3) requires only that there be no express conflict

5  between the representative parties and the class "over the very issue in litigation" and that the

6  representatives' "interests are not antagonistic to those of the class."  *Mersay v. First Republic Corp.*,

7  43 F.R.D. 465, 468-69 (S.D.N.Y. 1968); *accord Adam v. Silicon Valley Bancshares*, 884 F. Supp.

8  1398 (N.D. Cal. 1995).

9       Here, the typicality requirement is satisfied because the claims of all Class members derive

10  from the same legal theories and allege the same set of operative facts.  Dearborn Heights and Owen,

11  like the other Class members, allege that they purchased artificially inflated Impax securities during

12  the Class Period, and suffered damages as a consequence of defendants' false and misleading

13  statements about the Company's finances in violation of §§10(b) and 20(a) of the Exchange Act.

14  Specifically, Dearborn Heights purchased 9,900 shares of Impax's stock during the Class Period.

15  Largent Decl., Ex. 1.  Likewise, Owen purchased 1,000 shares of Impax's stock during the Class

16  Period.  *Id.*, Ex. 2.  As Dearborn Heights and Owen purchased Impax's stock during the Class

17  Period, they are typical of the Class members they are seeking to represent.  All members of the

18  Class were victims of a common course of conduct by defendants.  As a result, Dearborn Heights'

19  and Owen's claims are typical of those of the Class.

20            **4.**      **Dearborn Heights and Owen Will Fairly and Adequately**
                            **Protect the Interests of the Class**

21

22       Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

23  interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts have established a two-prong test for this

24  requirement.  First, counsel for the class representatives must be competent to undertake the

25  particular litigation at hand.  *See McPhail*, 247 F.R.D. at 610-11 ("'the named representatives must

26  appear able to prosecute the action vigorously through qualified counsel'").  Second, there can be no

27  antagonism or disabling conflict between the interests of the named class representatives and the

28  members of the class.  *See, e.g.*, *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

1  1978); *Schaefer*, 169 F.R.D. at 130; *In re United Energy Corp. Solar Power Modules Tax Shelter*

2  *Invs. Sec. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1988); *DRAM*, 2006 U.S. Dist. LEXIS 39841, at

3  *36. "The burden is on the defendants to prove that the representation will be inadequate." *Epitope,*

4  *Inc., Sec. Litig.*, No. 92-759-RE, 1992 U.S. Dist. LEXIS 22705, at *10 (D. Or. Nov. 30, 1992).

5        Defendants cannot meet this burden because plaintiffs easily satisfy both prongs of the

6  "adequacy" test.  First, plaintiffs have retained attorneys with extensive experience in the area of

7  securities litigation.  Lead counsel Coughlin Stoia have successfully prosecuted numerous securities

8  class actions and other complex actions on behalf of injured investors in this District and across the

9  country.  *See* Largent Decl., Ex. 3.  There can be no legitimate dispute that plaintiffs' counsel is

10  more than competent to prosecute this litigation.

11        The second requirement is also satisfied here because there is no antagonism between the

12  proposed Class representatives and the absent Class members.  *See Lubin v. Sybedon Corp.*, 688 F.

13  Supp. 1425, 1461 (S.D. Cal. 1988); *Weinberger*, 102 F.R.D. at 844-45.  In fact, Dearborn Heights

14  and Owen, the proposed Class representatives, have the same claims as each Class member.  The

15  proposed Class representatives, like the members of their proposed Class, seek to prove statutory

16  violations of the Exchange Act giving rise to damages.  The interests of the proposed Class

17  representatives in obtaining the maximum possible recovery are, therefore, coextensive with the

18  interests of the members of the Class.

19        Since their interests are not antagonistic to those of the other members of the Class and their

20  counsel are fully qualified to prosecute this action, the proposed Class representatives have

21  demonstrated their adequacy pursuant to Rule 23(a)(4).[9]

22

23  ───────────────

[9]     Rule 23(g) requires a court to appoint class counsel when certifying a class. Fed. R. Civ. P.
24  23(g).  Here, lead counsel have done substantial work in investigating and prosecuting claims in this
action, including investigating, filing complaints and briefing multiple motions to dismiss and
25  motions for reconsideration.  In addition, as set forth above, lead counsel are experienced in handling
complex litigation, especially the types asserted in this action, and have extensive knowledge of the
26  applicable securities laws.  Finally, lead counsel have devoted considerable resources to this action
during the course of this four-year litigation.  These facts suffice to find that such counsel have
27  sufficiently represented the interests of the Class.  *See Smith v. Krispy Kreme Doughnut Corp.*,
No. 1:05CV00187, 2007 U.S. Dist. LEXIS 2389, at *8-*9 (M.D.N.C. Jan. 10, 2007).

28

1    **C.    The Proposed Class Satisfies Rule 23(b)(3)**

2            In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies Rule

3    23(b)(3), which requires that the proposed class representatives establish that common questions of

4    law or fact predominate over individual questions, and that a class action is superior to other

5    available methods of adjudication. *See McPhail*, 247 F.R.D. at 612-13; *Hernandez v. Alexander*,

6    152 F.R.D. 192, 193-94 (D. Nev. 1993). As shown above, common questions of law and fact

7    predominate in this case and a class action is the superior, if not the only, method available to fairly

8    and efficiently litigate this securities action. *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668-69 (9th Cir.

9    1995), *rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367

10   (1996); *Schaefer*, 169 F.R.D. at 130-31.

11           **1.    Common Questions of Law and Fact Predominate over
                      Individual Questions**
12

13           Where a complaint alleges a "common course of conduct" of misrepresentations, omissions

14   and other wrongdoings that affect all members of the class in the same manner, common questions

15   predominate. *Blackie*, 524 F.2d at 905-08; *Alco*, 158 F.R.D. at 154. In assessing whether common

16   questions predominate, the Court's inquiry should be directed primarily toward the issue of liability.

17   *See Blackie*, 524 F.2d at 902; *In re Consol. Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal.

18   1973). Indeed, "'when determining whether common questions predominate courts focus on the

19   liability issue . . . and if the liability issue is common to the class, common questions are held to

20   predominate over individual questions.'" *In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D.
     476, 486 (S.D.N.Y. 2002).[10]
21

22           As discussed above, there are a host of common questions of law and fact as to the Class

23   which plaintiffs seek to certify. These questions clearly predominate over individual questions

24   ---
     [10]     It is well-settled that the calculation of damages – an inherently individualized issue that
25   courts have repeatedly found does not defeat predominance – will not defeat class certification. *See
     Blackie*, 524 F.2d at 905 ("The amount of damages is invariably an individual question and does not
26   defeat class action treatment."); *McPhail*, 247 F.R.D. at 609-10; *Alco*, 158 F.R.D. at 155 ("In
     particular, individual questions as to the amount of damages is not a bar to certification . . . . If
27   factual differences of this nature were a bar to class certification then class actions would be stripped
     of its utility."); *U.S. Fin.*, 64 F.R.D. at 448 n.5.
28

1    because defendants' alleged conduct affected all Class members in the same manner and, through

2    false statements and omissions, artificially inflated the price of Impax's common stock.  It is difficult

3    to discern liability issues in this case that are not common to all members of the Class.  *See, e.g.*,

4    *Freedman*, 922 F. Supp. at 399-400; *Schaefer*, 169 F.R.D. at 130-31; *United Energy*, 122 F.R.D. at

5    256; *Emulex*, 210 F.R.D. at 721 (granting motion for class certification where "[t]he predominant

6    questions of law or fact at issue in this case are the alleged misrepresentation Defendants made

7    during the Class Period and are common to the class"); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622

8    (C.D. Cal. 1985) ("As plaintiffs' claim is based on a common nucleus of misrepresentations,

9    material omissions and market manipulations, the common questions predominate over any

10   differences between individual class members with respect to damages, causation or reliance.").  The

11   critical issues of fact and law raised in this action are common to all members of the Class and they

12   will predominate in this case.  Once these common questions are resolved, all that will remain is the

13   purely mechanical act of computing the amount of damages suffered by each Class member.

14          In contrast, there are no significant (let alone predominant) individual issues even with

15   respect to issues such as reliance.  Plaintiffs' claims arising under §10(b) of the Exchange Act

16   require no proof of individual reliance because plaintiffs are entitled to a presumption of reliance

17   when defendants allegedly artificially inflated the price of Impax's stock by issuing false and

18   misleading statements and by failing to disclose material facts which defendants had a duty to

19   disclose.  *See Basic*, 485 U.S. at 247; *see also Cameron v. E. M. Adams & Co.*, 547 F.2d 473 (9th

20   Cir. 1976); *Blackie*, 524 F.2d at 905; *Schaefer*, 169 F.R.D. at 128; *In re Seagate Tech. II Sec. Litig.*,

21   843 F. Supp. 1341, 1356-57 (N.D. Cal. 1994).

22          Plaintiffs are entitled to a fraud-on-the-market presumption because Impax traded in an

23   efficient market.  "A motion for class certification is an inappropriate forum" for a factual

24   determination regarding the efficiency or inefficiency of the market during the Class Period.  *In re*

25   *Applied Micro Circuits Corp. Sec. Litig.*, No. 01CV0649 K (AJB), 2003 U.S. Dist. LEXIS 14492, at

26   *11-*12 (S.D. Cal. July 15, 2003).  Nonetheless, it cannot be disputed that Impax traded on an

27   efficient market.  In *Binder*, 184 F.3d at 1065, the Ninth Circuit adopted the five-factor test for

28   efficiency set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286 (D.N.J. 1989), as follows:

[F]irst, whether the stock trades at a high weekly volume; second, whether securities analysts follow and report on the stock; third, whether the stock has market makers and arbitrageurs; fourth, whether the company is eligible to file SEC registration from S-3, as opposed to form S-1 or S-2; and fifth, whether there are "empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price."

*Binder*, 184 F.3d at 1065.

The market for Impax's stock during the Class Period easily satisfies each of these factors:

- **High Weekly Volume**.  Here, Impax traded on the NASDAQ stock exchange and the average daily volume of shares traded during the Class Period was approximately 916,036 shares and the weekly volume was over 4.3 million shares. ¶454(e); Largent Decl., Ex. 4.[11]  This volume of trading creates a strong presumption of efficiency.  *Cammer*, 711 F. Supp. at 1286 ("Turnover measured by average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one . . . .").

- **Financial Analysts and Market Makers**.  During the Class Period, Impax was followed by at least eight financial analysts.  ¶454(d); Largent Decl., Ex. 5.  Further, at least two of the analysts were also market makers for the stock.  Largent Decl., Ex. 6.  This is more than sufficient.  *Levine*, 2001 U.S. Dist. LEXIS 24705, at *14-*19 (court found eight analysts sufficient).[12]

---

[11]     Many courts have adopted a rebuttable presumption that the market for any stock traded on the NASDAQ is efficient.  *Cammer*, 711 F. Supp. at 1292; *Levine v. SkyMall, Inc.*, No. CIV 99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705 (D. Ariz. May 24, 2001) (same); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 498 (S.D. Fla. 2003) (same).

[12]     *See also Cheney*, 213 F.R.D. at 499 (coverage by two analysts and news media sufficient); *Blatt*, 2002 U.S. Dist. LEXIS 18466, at *48 (coverage by one analyst who was not even independent held to be sufficient); *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 431 (S.D. Fla. 1991) (six analysts sufficient); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 189 (E.D. Pa. 2001) (five sufficient); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8840, 2003 U.S. Dist. LEXIS 9982, at *20-*21 (N.D. Ill.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- **Form S-3 Registration Statements**.  Impax filed Form S-3 statements from 1997 through 2004, further supporting the efficiency of the market for Impax's stock.  Largent Decl., Ex. 7.  That is because the Form S-3 is an abbreviated disclosure form, which may only be used when the SEC '"belie[ves] that the market operates efficiently for these companies, *i.e.*, [all public information] has already been disseminated and accounted for by the market place.'"  *Cammer*, 711 F. Supp. at 1284.  Accordingly, "the existence of Form S-3 status is an important factor weighing in favor of a finding that a market is efficient."  *Id.* at 1285.

- **The Reaction of Impax's Stock Price**.  Empirical facts demonstrate a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price.  The immediate stock price fluctuations after Impax's public disclosures also support the conclusion that Impax's stock traded on an efficient market.  For example, when defendants announced on August 4, 2004 that bupropion sales were much lower than expected, Impax's stock price declined 14.10% from $13.97 to $12.00.  ¶289.  Similarly, when Impax announced on November 3, 2004 that there would be a delay in the release of its 3Q04 financials, Impax's stock price fell 23% in one day on a volume of 6.77 million shares.  ¶399.  The reaction of Impax's stock price to unexpected information demonstrates that the market for its stock was efficient in transmitting and absorbing

June 13, 2003) (seven sufficient); *In re Accelr8 Tech. Corp. Sec. Litig.*, 147 F. Supp. 2d 1049, 1057 (D. Colo. 2001) (two sufficient).

material information and that plaintiffs are justified in relying on the fraud-

on-the-market presumption.

The fact that every Class member may not be identically situated is immaterial.  The fact that different members of the Class may have invested at different times and may have been exposed to different misrepresentations and/or omissions committed by defendants, does not preclude a finding that common issues predominate because plaintiffs have alleged a continuous course of conduct. *Harris*, 329 F.2d at 914-15; *see Blackie*, 524 F.2d at 902 (endorsing the approach taken by the court of appeals in *Harris*, 329 F.2d 909); *see also Indep. Energy*, 210 F.R.D. at 486 (holding that predominance requirement was easily satisfied in cases where claims were based on a common legal theory of material misrepresentations and omissions, even though damage amounts might vary).

In sum, the issues of law and fact which flow from defendants' wrongful activity clearly predominate over any individual issues because the Complaint alleges a continuous course of conduct committed by defendants and directed against the members of the Class.

### 2. A Class Action Is Superior to Other Available Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving a large number of purchasers of securities injured by violations of the securities laws.  Class actions are a "particularly appropriate and desirable" way of resolving securities claims. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *accord Freedman*, 922 F. Supp. at 400; *Emulex*, 210 F.R.D. at 721 ("[A] class action is superior to individual litigation for adjudicating the [securities] controversy."). Class certification is both useful and necessary and the class action device offers judicial efficiencies because it permits common claims and issues to be tried only once, with binding effect on all parties.  Class representation is the only way to afford relief to those whose claims are too small to permit them to bring individual suits. To deny class certification would be to "clos[e] the door of justice to all small

1   claimants.  This is what we think the class suit practice was to prevent."  *Weeks v. Bareco Oil Co.*,

2   125 F.2d 84, 90 (7th Cir. 1941).

3       To determine the issue of "superiority," Rule 23(b)(3) enumerates the following factors for a

4   court to consider:

5       (A) [T]he class members' interest in individually controlling the prosecution . . . of
        separate actions;  (B) the extent and nature of any litigation concerning the
6       controversy already begun by . . . class members;  (C) the desirability . . . of
        concentrating the litigation of the claims in the particular forum; and (D) the likely
7       difficulties in managing a class action.

8   Fed. R. Civ. P. 23(b)(3).

9       Each of these factors is satisfied in this case.  First, the number of Class members is too

10  numerous and the typical claim is too small for each individual Class member to maintain a separate

11  action.  The class action device is the only viable vehicle by which the vast majority of persons

12  injured by the misrepresentations or omissions about Impax's finances during the Class Period may

13  obtain a remedy.  As the Ninth Circuit stated in *Epstein*, "it is difficult to imagine a case where class

14  certification would be more appropriate.  Without it, thousands of identical complaints by former [ ]

15  shareholders would have to be filed – the very result the class action mechanism was designed to

16  avoid."  *Epstein*, 50 F.3d at 668; *see also Freedman*, 922 F. Supp. at 400-01; *Weinberger v.*

17  *Thornton*, 114 F.R.D. 599, 605 (S.D. Cal. 1986); *Unioil*, 107 F.R.D. at 622.  Second, because of

18  these barriers to asserting claims, there has been no extensive litigation by any individuals.  Third,

19  the nationwide geographical dispersion of the Class members, based upon Impax's sale of its stock

20  on the national NASDAQ exchange, makes it desirable that litigation of the claims involved be

21  concentrated in this forum.  Finally, plaintiffs can foresee no management difficulties which would

22  preclude this action from being maintained as a class action, and are confident that any potential

23  management problems can be addressed and resolved by the parties or by this Court.[13]

24  _____

25  [13]     Certainly, possible management problems are not, standing alone, grounds for denying this
26  motion.  In *In re Sugar Indus. Antitrust Litig.*, MDL Dkt. No. 201, 1976 U.S. Dist. LEXIS 14955
    (N.D. Cal. May 21, 1976), the court stated:

27       [D]enial of class certification because of conjured manageability problems is
28       disfavored among both the courts and the legal commentators because a court

1  Further, judicial economy and the best interests of the Class members favor class

2  certification. The Supreme Court has endorsed the superiority of the class action device in this

3  context:

4  The aggregation of individual claims in the context of a classwide suit is an
   evolutionary response to the existence of injuries unremedied by the regulatory
5  action of government. Where it is not economically feasible to obtain relief within
   the traditional framework of a multiplicity of small individual suits for damages,
6  aggrieved persons may be without any effective redress unless they may employ the
   class-action device.

7

8  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). In this case, the class action device is

9  the only available mechanism that provides an adequate remedy to investors injured by

10 misrepresentations and omissions made by defendants. Any notion that such claims could be

11 litigated individually is wholly unrealistic and contrary to the intent and purpose behind the

12 enactment of Rule 23. The class action device is, therefore, the superior method for adjudicating the

13 claims of the proposed Class representatives and of all those similarly situated. For the reasons

14 enumerated above, the proposed Class satisfies the requirements of Rule 23(b)(3).

**III.  CONCLUSION**

15 For the foregoing reasons, plaintiffs request entry of an Order certifying this action as a class

16 action pursuant to Fed. R. Civ. P. 23, appointing Dearborn Heights and Owen as the designated

17 Class representatives, and appointing lead counsel Coughlin Stoia as Class counsel.

18 DATED: September 16, 2008                    Respectfully submitted,

19
                                               COUGHLIN STOIA GELLER
20                                               RUDMAN & ROBBINS LLP
                                               AZRA Z. MEHDI
21                                             DANIEL J. PFEFFERBAUM
                                               SUZANNE H. KAPLAN
22

23
                                                      /s/ Azra Z. Mehdi
24                                                    AZRA Z. MEHDI

25  _____

26  refusing to certify a class action on the basis of vaguely perceived manageability
    obstacles is acting counter to the policy behind Rule 23 . . . .

27  *Id*. at *75; *accord Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972).

28

1

2      100 Pine Street, Suite 2600
       San Francisco, CA  94111
3      Telephone:  415/288-4545
       415/288-4534 (fax)

4      COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
5      LAURIE L. LARGENT
       655 West Broadway, Suite 1900
6      San Diego, CA  92101
       Telephone:  619/231-1058
7      619/231-7423 (fax)

8      Lead Counsel for Plaintiffs

9      VANOVERBEKE MICHAUD &
          TIMMONY, P.C.
10     MICHAEL J. VANOVERBEKE
       THOMAS C. MICHAUD
11     79 Alfred Street
       Detroit, MI  48201
12     Telephone:  313/578-1200
       313/578-1201 (fax)

13     Additional Counsel for Plaintiffs

14     T:\CasesSF\IMPAX Labs\BRF 00053848 Class Cert.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                          <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that on September 16, 2008, I electronically filed the foregoing with the

3 Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5 mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6 participants indicated on the attached Manual Notice List.

7          I further certify that I caused this document to be forwarded to the following designated

8 Internet site at:  http://securities.csgrr.com/.

9          I certify under penalty of perjury under the laws of the United States of America that the

10 foregoing is true and correct.  Executed on September 16, 2008.

11

12                                        /s/ Azra Z. Mehdi
                                        AZRA Z. MEHDI

13

14                             COUGHLIN STOIA GELLER
                               RUDMAN & ROBBINS LLP

15                             100 Pine Street, 26th Floor
                            San Francisco, CA  94111

16                             Telephone:  415/288-4545
                            415/288-4534 (fax)

17

18                             E-mail: amehdi@csgrr.com

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:04-cv-04802-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Dale E. Barnes , Jr**
  dale.barnes@bingham.com,teresa.bowen@bingham.com,lisa.lee@bingham.com

- **Joseph Otto Click**
  click@blankrome.com,smith-sh@blankrome.com

- **Patrick J. Coughlin**
  PatC@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Suzanne Heald Kaplan**
  shkaplan@csgrr.com

- **Louis H. Kozloff**
  Kozloff@blankrome.com

- **Laurie L. Largent**
  llargent@csgrr.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **Elizabeth Pei Lin**
  elin@milberg.com,schang@milberg.com,cchaffins@milberg.com

- **Tricia Lynn McCormick**
  triciam@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Azra Z. Mehdi**
  azram@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@csgrr.com,khuang@csgrr.com,GDarwish@csgrr.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing

program in order to create notices or labels for these recipients.

**Kerry Brainard**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Tim P. Harris**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037

**Michael Joseph**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Hardy Vieux**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037