COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
AZRA Z. MEHDI (220406)
DANIEL J. PFEFFERBAUM (248631)
SUZANNE H. KAPLAN (247067)
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)
amehdi@csgrr.com
dpfefferbaum@csgrr.com
shkaplan@csgrr.com
    – and –
LAURIE L. LARGENT (153493)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
llargent@csgrr.com

Lead Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re IMPAX LABORATORIES, INC. SECURITIES LITIGATION | Master File No. C-04-4802-JW (RS) |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| ALL ACTIONS. | |

DATE:          October 29, 2008
TIME:          9:30 a.m.
COURTROOM:  The Honorable
                    Richard G. Seeborg

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ................................................................................1

4   II.     RELEVANT FACTUAL BACKGROUND................................................2

5   III.    RELEVANT PROCEDURAL BACKGROUND .........................................4

6           A.      History of the Case.........................................................4

7           B.      . Meet and Confer Process ..............................................4

8           C.      Defendants' Production to Date ......................................5

9   IV.     LEGAL STANDARD ..........................................................................6

10  V.      ARGUMENT ....................................................................................6

11          A.      Defendants' Blanket Objections as to Relevancy Are Improper ...........................6

12                  1.      Documents Related or Referring to Post-Class Period Events Are
13                          Relevant and Discoverable ......................................................9

                            a.      Discovery Regarding Impax's Communications with the
14                                  Office of the Chief Accountant of the SEC Is Relevant to
15                                  Plaintiffs' Claims .........................................................9

                            b.      Discovery Regarding Impax's Delayed and Delinquent
16                                  SEC Filings Is Relevant to Plaintiffs' Claims...............12

17                          c.      Discovery Regarding Impax's Delisting from the
18                                  NASDAQ Is Relevant to Plaintiffs' Claims ..................13

                            d.      Discovery Regarding Impax's Communications with
19                                  Deloitte, Grant Thornton and FTI Consulting Is Relevant to
                                    Plaintiffs' Claims ........................................................14
20
            B.      Defendants' Arbitrary Time Limitations Are Improper Under the Facts
21                  and Circumstances of This Case ....................................................15

22          C.      Defendants' Refusal to Produce Documents Related to Accounting and
                    Sales Is Improper ........................................................................17
23
            D.      Defendants' Refusal to Produce Documents Related to Compensation Is
24                  Improper.....................................................................................18

25          E.      Defendants' Refusal to Produce Documents Related to Additional
                    Individual Requests Is Improper.....................................................19
26
                    1.      Request No. 13...........................................................19
27
                    2.      Request No. 42...........................................................19
28

1

2                                                                                                **Page**

3                    3.      Request No. 44.....................................................................................20

4          F.      Defendants' Objections that Plaintiffs' Requests Are Vague, Overly Broad
                   and Unduly Burdensome Are Improper.................................................................20

5

6          G.      Defendants' Confidentiality Objections Are Improper.........................................21

           H.      Defendants' Privilege Objections Are Improper ..................................................22
7
   VI.     PLAINTIFFS' RULE 30(b)(6) DEPOSITION IS DELAYED BY
8          DEFENDANTS' REFUSAL TO PRODUCE DOCUMENTS .........................................22

9  VII.    CONCLUSION.............................................................................................................23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*A. Farber & Partners, Inc. v. Garber*,
      234 F.R.D. 186 (C.D. Cal. 2006)........................................................................8

5

6
*Bob Barker Co. v. Ferguson Safety Prods.*,
      No. C 04 048 13 JW (RS), 2006 U.S. Dist. LEXIS 14789
      (N.D. Cal. Mar. 9, 2006)..............................................................................6, 8

7

8
*Burlington N. v. U.S. Dist. Court*,
      408 F.3d 1142 (9th Cir. 2005) ......................................................................22

9
*Cellpro v. Baxter Int'l, Inc.*,
      No. C92-7150, 1992 U.S. Dist. LEXIS 22807
      (W.D. Wash. Dec. 28, 1992)..........................................................................20

10

11
*Dawe v. Corr. USA*,
      No. CIV-5-07-1790 LKK EFB, 2008 U.S. Dist. LEXIS 51122
      (E.D. Cal. Apr. 23, 2008)...............................................................................21

12

13
*Dura Pharms., Inc. v. Broudo*,
      544 U.S. 336 (2005) .........................................................................................4

14

15
*Flanagan v. Benicia Unified Sch. Dist.*,
      No. CIV S-07-0333 LKK, GGH, 2008 U.S. Dist. LEXIS 39386
      (E.D. Cal. May 14, 2008)................................................................................21

16

17
*In re Advanced Interventional Sys. Sec. Litig.*,
      No. SACV 92-723-AHS ...................................................................................8

18
*In re Control Data Corp. Sec. Litig.*,
      No. 3-85-1241, 1988 WL 92085 (D Minn. Feb. 22, 1988)...............................9

19

20
*In re Daou Sys., Inc. Sec. Litig.*,
      411 F.3d 1006 (9th Cir. 2005) .........................................................................4

21
*In re Seagate Tech. II Sec. Litig.*,
      No. C-89-2493(A)-VRW, 1993 U.S. Dist. LEXIS 18065
      (N.D. Cal. June 10, 1993) .......................................................................6, 9, 15

22

23
*In re U.S. Aggregates, Inc. Sec. Litig.*,
      235 F. Supp. 2d 1063 (N.D. Cal. 2002) ...........................................................9

24

25
*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
      No. 2:05-cv-01532-RLH-GWF, 2007 U.S. Dist. LEXIS 17540
      (D. Nev. Mar. 12, 2007)...................................................................6, 8, 11, 12

26

27
*Metzler Inv. GMBH v. Corinthian Colls. Inc.*,
      534 F.3d 1068 (9th Cir. 2008) ..........................................................................4

28

PLTFS' NOTICE OF MTN & MTN TO COMPEL PRODUCTION OF DOCS FROM IMPAX
DEFENDANTS & MEM OF POINTS & AUTHORITIES IN SUPPORT THEREOF - C-04-4802-JW (RS)

- iii -

1

2                                                                                    **Page**

3   *Miller v. Pancucci,*
        141 F.R.D. 292 (C.D. Cal. 1992) ........................................................................7

4   *Narayan v. EGL, Inc.,*
        No. C05-04181 RMW (HRL), 2006 U.S. Dist. LEXIS 81125
5       (N.D. Cal. Oct. 24, 2006) ................................................................................22

6   *Oppenheimer Fund, Inc. v. Sanders,*
        437 U.S. 340 (1978) ....................................................................................7, 10

7   *Paulsen v. Case Corp.,*
        168 F.R.D. 285 (C.D. Cal. 1996) ....................................................................21

9   *Rambus Inc. v. Samsung Elecs. Co.,*
        No. C-0502298 RMW, 2008 U.S. Dist. LEXIS 54196
10      (N.D. Cal. July 16, 2008) ..........................................................................19, 20

11  *Wolk v. Green,*
        No. C06-5025 BZ, 2007 U.S. Dist. LEXIS 83148
12      (N.D. Cal. Oct. 29, 2007) ..........................................................................12, 21

13  *Wynne v. McCormick & Schmicks's Seafood Rests., Inc.,*
        No. C06-3153 CW (BZ), 2006 U.S. Dist. LEXIS 88989
14      (N.D. Cal. Nov. 28, 2006) ................................................................................7

15  *Youngblood v. Gates,*
        112 F.R.D. 342 (C.D. Cal. 1985) ......................................................................7

16

17  **STATUTES, RULES AND REGULATIONS**

18  Civil Local Rules
        Local Rule 37-2.................................................................................................1

19  Federal Rules of Civil Procedure
        Rule 26(b)(5).....................................................................................................22
20      Rule 30(b)(6)..............................................................................................2, 7, 22
        Rule 37(a)(3)(B).................................................................................................6
21      Rule 37(a)...........................................................................................................1
        Rule 26(b)(1).......................................................................................................7
22      Rule 34...........................................................................................................6, 22

23  Federal Rules of Evidence
        Rule 401 ..............................................................................................................7

24

25

26

27

28

1   TO:   ALL PARTIES AND THEIR ATTORNEYS OR RECORD

2          PLEASE TAKE NOTICE that on October 29, 2008 at 9:30 a.m., plaintiffs City of Dearborn

3   Heights Act 345 Police and Fire Retirement System and Dr. Melvin M. Owen will, and do hereby,

4   respectfully move this Court for an order compelling defendants IMPAX Laboratories, Inc.

5   ("Impax" or the "Company"), Barry R. Edwards, Cornel C. Spiegler, Dr. Charles Hsiao, Dr. Larry

6   Hsu, David S. Doll and David J. Edwards to produce documents relating to allegations in plaintiffs'

7   Fourth Amended Consolidated Complaint for Violations of Sections 10(b) and 20(a) of the

8   Securities Exchange Act of 1934 ("Fourth Amended Complaint") and sought in Plaintiffs' First Set

9   of Requests for Production of Documents to Defendants.

10         This motion to compel is brought pursuant to Fed. R. Civ. P. 37(a) and Civil L.R. 37.  The

11  parties have fulfilled their obligation to meet and confer pursuant to Civil L.R. 37-1(a)-(b), including

12  engaging in multiple telephonic meet and confers and exchanging correspondence, but have reached

13  an impasse on critical threshold issues that necessitate court intervention.  *See* ¶¶5-13 to the

14  Declaration of Daniel J. Pfefferbaum in Support of Plaintiffs' Motion to Compel Production of

15  Documents from Impax Defendants ("DJP Decl."), filed concurrently herewith.  This motion is

16  based upon this Motion, the Memorandum of Points and Authorities, the DJP Declaration, Plaintiffs'

17  Civil Local Rule 37-2 Statement, the [Proposed] Order submitted herewith, the pleadings and

18  evidence contained in the underlying record, and any other information submitted before or during

19  the hearing on this matter.

20  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
    COMPEL PRODUCTION OF DOCUMENTS**

21  **I.     INTRODUCTION**

22         On July 7, 2008, the Court upheld the Fourth Amended Complaint[1] in its entirety and lifted

23  the Private Securities Litigation Reform Act of 1995 ("PSLRA") discovery stay.  Dkt. No. 169;

24  Since then and given the age of the case filed almost four years ago, plaintiffs have diligently

25

26  _____

27  [1]     For the Court's convenience, a copy of the Fourth Amended Complaint is filed herewith as
    Exhibit 1 to the DJP Declaration.

28

1  pursued very pointed discovery serving only document requests and a Fed. R. Civ. P. 30(b)(6) notice

2  of deposition.  Exs. 2-3. [2]  The parties agreed to an expedited ten-month fact discovery schedule,

3  which was endorsed by the Honorable James Ware in his Scheduling Order.  Dkt. Nos. 167, 170.

4  Despite plaintiffs' good faith efforts to work with defendants on the appropriate scope of discovery,

5  defendants have significantly hampered plaintiffs' discovery efforts by flatly refusing to produce

6  documents responsive to the vast majority of plaintiffs' requests on the basis of relevance.  As

7  detailed below, the Fourth Amended Complaint's particularized allegations, and the unique facts and

8  circumstances of this case, mandate discovery given that: defendants' improper revenue recognition

9  for its bupropion hydrochloride ("bupropion") product sales caused the Company to restate 1Q04

10  and 2Q04 financial results; there is continuing uncertainty as to the propriety even of that

11  restatement and Impax's accounting related to bupropion and under its agreement with its marketing

12  partner Teva Pharmaceuticals ("Teva"); and this continuing uncertainty has subsequently led to

13  Impax's inability to issue and file financial statements for FY04-FY07 and parts of FY08.  Due to

14  defendants' blanket refusal to produce responsive documents, plaintiffs respectfully request that this

15  Court compel defendants to comply with their obligations to produce the requested discovery.

16  **II.      RELEVANT FACTUAL BACKGROUND**

17       Impax is a generic pharmaceutical drug manufacturer that went public in 1999.  ¶13.[3]  As is

18  common in the industry, Impax had marketing agreements for its products with various larger

19  companies.  ¶69.  Pursuant to the June 2001 Strategic Alliance Agreement ("SAA") with Teva,

20  Impax began selling bupropion products in 1Q04.  ¶73.  Bupropion is Impax's formulation of the

21  generic version of Wellbutrin (an anti-depressant) and Zyban (a smoking cessation agent). ¶3. After

22  18 consecutive quarters of negative earnings per share, Impax announced revenues of $38.85 million

23  for its first-ever-profitable quarter on May 5, 2004, primarily because of bupropion sales.  ¶¶4, 73,

24  75, 80.  In 2Q04, Impax boasted revenues of $30.8 million.  ¶280.

25

26  [2]      All exhibits herein are attached to the DJP Declaration.

27  [3]      All paragraph ("¶") references herein are to the Fourth Amended Complaint unless otherwise
28  noted.

1       Impax has since admitted that its reported revenues for bupropion sales were artificially

2   inflated and that it improperly accounted for revenue under the SAA with Teva.  ¶¶149, 196, 199,

3   219, 285-286, 332.  The Company restated its first and second quarter financials on November 16

4   and 17, 2004, respectively.  *Id.*  However, the Company's 2004 revenue recognition problems are

5   still unsettled and it will likely have to restate the financials for 2004 again.  *See* ¶¶405-410; *see also*

6   Ex. 15 at 20.

7       Impax has not filed any financial statements with the Securities and Exchange Commission

8   ("SEC") since November 2004, effectively secreting its financials from investors for 46 consecutive

9   months.  ¶¶405-410.  Impax has admitted that its delinquent SEC filings are all related to the same

10  factual core – accounting and revenue recognition under the SAA.  Ex. 13 at 17.  Deloitte & Touche

11  LLP ("Deloitte"), Impax's auditor for 2004, identified the SAA as a material weakness in Impax's

12  internal controls over financial reporting as of December 31, 2004, and Impax has been unable to

13  obtain Deloitte's sign-off on 2004 financials ever since.  ¶¶416-417.  Further, Deloitte chose not to

14  stand for reelection as Impax's auditor for 2005 and the Company appointed Grant Thornton LLP

15  ("Grant Thornton") in Deloitte's place.  ¶¶416-418.  The events during the Class Period (May 5,

16  2004 through November 3, 2004) continue to haunt the Company, which has failed to file not only

17  the annual financial results for 2004, but for at least three years thereafter.  ¶8.

18      In addition to Impax's disagreements with its own auditor, the Office of the Chief

19  Accountant ("OCA") of the SEC has been engaged in a protracted disagreement with Impax over its

20  highly questionable accounting methodology under the SAA for several years.  ¶¶406-410.  The

21  OCA consistently disagreed with Impax's revenue recognition policies and refused to sign off on

22  any policy that Impax's own auditors refused to approve.  ¶409.  Impax chose not to conform to the

23  OCA's requirements regarding accountant approval of Company submissions, opting instead to

24  make repeated submissions to the OCA that its own accountants refused to support.  ¶¶406-410.

25      The National Association of Securities Dealers Automated Quotation System ("NASDAQ")

26  halted all trading in Impax's stock on August 8, 2005, because of its failure to file its 2004 Form 10-

27  K.  ¶411.  On December 29, 2006, the SEC suspended trading in Impax shares for the same reasons.

28  ¶414.  On May 23, 2008, the SEC revoked the registration of Impax's common stock, noting that

"Impax has been less than forthright in disclosing to the public that . . . it has been unable to obtain auditor approval for accounting for financial elements of the [SAA]." Ex. 13 at 17. Without current SEC filings, Impax has been unable to reestablish trading in its stock, leaving investors with essentially worthless pieces of paper.

## III.    RELEVANT PROCEDURAL BACKGROUND

### A.    History of the Case

On November 12, 2004, plaintiffs filed their initial complaint alleging that Impax made false and misleading statements regarding its accounting treatment and revenue recognition policies related to bupropion sales under the SAA.  Dkt. No. 1.  After five motions to dismiss, four amendments to the complaint and a motion for reconsideration, on July 7, 2008, the Court denied defendants' motion to dismiss the Fourth Amended Complaint in its entirety and lifted the discovery stay.  Dkt. No. 169.  The parties agreed to, and the Court ordered, a ten-month fact discovery schedule.  Dkt. Nos. 167, 170.

After filing the Answer to the Fourth Amended Complaint, defendants yet again filed a motion for leave to file a motion for reconsideration of the Court's July 7, 2008 Order, based on the Supreme Court's decision in *Metzler Inv. GMBH v. Corinthian Colls. Inc.*, 534 F.3d 1068 (9th Cir. 2008), and for an Order staying proceedings. Dkt. No. 175.  On August 15, 2008, the court, citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005), and *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005), denied defendants' motion for leave to file a motion for reconsideration, allowing discovery to proceed as to all claims.  Dkt. No. 187.

On August 28, 2008, defendants petitioned the Ninth Circuit for a writ of mandamus ordering the Court to dismiss plaintiffs' claims and seeking another stay of discovery.  Ex. 18.  The Ninth Circuit has yet to respond to defendants' petition.

On September 16, 2008, plaintiffs filed their motion for class certification.  Dkt. No. 191.

### B.    . Meet and Confer Process

On July 16, 2008, plaintiffs served their First Set of Requests for Production of Documents on defendants.  Ex. 2.  Defendants served their objections to plaintiffs' requests on August 15, 2008.  Ex. 4.  The parties had a telephonic meet and confer on August 20, 2008, that lasted approximately

1    two hours regarding defendants' objections to plaintiffs' requests for production.  DJP Decl., ¶5.  On

2    August 26, 2008, plaintiffs sent a letter to defendants, outlining the discussion on the call and the

3    parties' respective positions asking for a further meet and confer the following week on September

4    5, 2008.  DJP Decl., ¶5, Ex. 5.  To accommodate defendants' request, the meet and confer was

5    scheduled for September 9, 2008.  DJP Decl., ¶6, Ex. 6.

6          On the morning of the scheduled September 9, 2008 meet and confer, defendants sent a letter

7    responding to plaintiffs' August 26, 2008 letter regarding the parties' previous meet and confer.  DJP

8    Decl., ¶7, Ex. 7.  The parties conducted the September 9, 2008 meet and confer which lasted

9    approximately 45 minutes during which the parties discussed defendants' positions taken in the

10   September 9, 2008 letter, which were largely the same as those taken in their objections.  DJP Decl.,

11   ¶8.  The discussion centered mostly on defendants' relevance objections which defendants raised

12   with respect to the vast majority of plaintiffs' requests.  *Id.*  Plaintiffs sent a letter to defendants on

13   September 9, 2008, to follow up on the call.  DJP Decl., ¶9, Ex. 8.  Defendants responded by a letter

14   of September 15, 2008, essentially reiterating their prior position.  DJP Decl., ¶10, Ex. 9.  Plaintiffs

15   reached out again on September 17, 2008, leaving the door open for further discussion, but

16   informing defendants of plaintiffs' intent to move the Court. *Id.* at ¶11, Ex. 10.

17         On September 23, 2008, plaintiffs received another letter from defendants reiterating their

18   prior objections, mischaracterizing plaintiffs' explanations and offers of compromise and providing

19   no indication of a desire to move from their positions.  DJP Decl., ¶12, Ex. 11.

20         Plaintiffs informed defendants by letter of September 24, 2008 that exchanging

21   correspondence without any good faith attempt to resolve issues was not productive and that

22   plaintiffs were filing a motion to compel.  DJP Decl. ¶13, Ex. 12.

23   **C.    Defendants' Production to Date**

24         At the parties' August 20, 2008 meet and confer, defendants stated that they would produce

25   an initial volume of documents by August 25, 2008, a second volume of production by the first week

26   of September 2008, and a third production to follow sometime thereafter.  DJP Decl., ¶5, Ex. 5.  On

27   August 26, 2008, plaintiffs received a disk from defendants, containing approximately 5,000 pages

28   which appear to be at least some portion of the documents Impax produced to the SEC.  On

1   September 11, 2008, defendants notified plaintiffs that they intended to produce a second production

2   of documents by the end of the following week.  Plaintiffs received a production of approximately

3   11,000 additional pages from defendants on September 19, 2008.[4]

4   **IV.    LEGAL STANDARD**

5           A party seeking discovery may move for an order compelling an answer, designation,

6   production, or inspection . . . if . . . a party fails to respond that an inspection will be permitted – or

7   fails to permit inspection – as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3)(B).  Motions to

8   compel production of documents are proper and should be granted when, as here, defendants make

9   boilerplate relevancy objections, impose arbitrary temporal limitations on documents to be searched

10  and produced and provide wholly inadequate bases for their objections.  *See Bob Barker Co. v.*

11  *Ferguson Safety Prods.*, No. C 04 048 13 JW (RS), 2006 U.S. Dist. LEXIS 14789, at *9-*10 (N.D.

12  Cal. Mar. 9, 2006) (J. Seeborg) (granting in part motion to compel); *In re Seagate Tech. II Sec.*

13  *Litig.*, No. C-89-2493(A)-VRW, 1993 U.S. Dist. LEXIS 18065, at *2 (N.D. Cal. June 10, 1993)

14  (denying defendants' motion for protective order); *Koninklijke Philips Elecs. N.V. v. KXD Tech.,*

15  *Inc.*, No. 2:05-cv-01532-RLH-GWF, 2007 U.S. Dist. LEXIS 17540, at*12 (D. Nev. Mar. 12, 2007)

16  (granting motion to compel production of documents).

17  **V.     ARGUMENT**

18          **A.     Defendants' Blanket Objections as to Relevancy Are Improper**

19          In response to the vast majority of plaintiffs' requests, defendants offer the generic,

20  boilerplate objections that the documents plaintiffs seek are "neither relevant nor reasonably

21  calculated to lead to the discovery of relevant information or admissible evidence."  *See* Ex. 4

22  (Defendants' Responses to Request Nos. 2-18, 21-33, 35, 38-42, 44-46 and 50).[5]  The Court should

23  ───────────────────

24  [4]      Plaintiffs are in the process of reviewing and evaluating defendants' production to date, and

25  will endeavor to meet and confer in good faith with defendants regarding the sufficiency of their
    production.  Plaintiffs reserve the right to move this Court based on the sufficiency of this

26  production, if necessary.

27  [5]      Other than challenging defendants' failure to articulate specific objections in connection with
    Request Nos. 2-3, 5-7, 14-16, 30-31, 35 and 38-41, plaintiffs' motion only partially addresses these

28  requests due to defendants' agreement to produce a limited amount of documents (subject to their

1   overrule these objections on the grounds that they are not only boilerplate and lacking in specificity,

2   but because the documents sought are clearly relevant to plaintiffs' claims.  Plaintiffs' requests seek

3   documents which are within the scope of permitted discovery under the Federal Rules of Civil

4   Procedure.

5        Rule 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter,

6   that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at

7   the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

8   evidence."  Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has "any tendency to make the

9   existence of any fact that is of consequence to the determination of the action more probable or less

10  probable than it would be without the evidence."  Fed. R. Evid. 401.  It is well-established that the

11  Supreme Court and courts in the Ninth Circuit construe relevancy broadly and liberally, particularly

12  at the discovery stage.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Permitted

13  discovery includes "any matter that bears on, or that reasonably could lead to other matter that could

14  bear on, any issue that is or may be in the case.");[6] *Wynne v. McCormick & Schmicks's Seafood*

15  *Rests., Inc.*, No. C06-3153 CW (BZ), 2006 U.S. Dist. LEXIS 88989, at *1 n.1 (N.D. Cal. Nov. 28,

16  2006); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) ("relevancy should be construed

17  liberally and with common sense"); *see also Youngblood v. Gates*, 112 F.R.D. 342, 344 (C.D. Cal.

18  1985) ("The scope of discovery in civil cases is extremely broad and relevancy objections, while

19  permissible, will not be sustained where discovery sought is relevant to the subject matter.").

20       Plaintiffs have propounded narrow discovery requests that are directly related to the

21  allegations in the Fourth Amended Complaint.  For example, Request No. 2 seeks documents

22  reviewed in response to plaintiffs' Rule 30(b)(6) deposition notice.  Request Nos. 3-6 are related to

23  the SAA, accounting under the SAA, communications with the SAA partners regarding bupropion

24  _____

25  objections).  Plaintiffs intend to review the production and evaluate its sufficiency, but reserve the

26  right to raise any deficiencies with the Court.

27  [6]     Here, as elsewhere, all citations and internal quotations and footnotes are omitted unless
    otherwise noted.

28

1   and profits under the SAA.  Request No. 7 is related to Impax's exclusivity agreement for sale of

2   bupropion with Teva and Andryx.  Request No. 8 seeks documents sufficient to show marketing,

3   distribution and sales agreements for Impax products.  Request Nos. 9-13 are related to Impax's

4   accounting, revenue recognition and accrual of reserves.  Request Nos. 14-18 are related to market

5   share, inventory shelf-life and returns of bupropion.  Request Nos. 21 and 29 are related to the OCA.

6   Request Nos. 22-24 are related to Impax's restatements, delinquent SEC filings and the SEC's

7   revocation of Impax's registration.  Request Nos. 25-27 are related to NASDAQ and its delisting of

8   Impax's securities.  Request Nos. 28 and 44-46 are related to Impax's auditors.  Request Nos. 30-31

9   are related to insider trading.  Request Nos. 32-33 relate to improper compensation.  Request Nos.

10  35-36 and 38-42 are related to Impax's document preservation efforts.  Request No. 50 is related to

11  Impax's committee meeting minutes.

12        Defendants' relevancy objections are improper because they do not set forth any argument or

13  explanation as to why the requested documents are irrelevant.  *See A. Farber & Partners, Inc. v.*

14  *Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006); *Koninklijke*, 2007 U.S. Dist. LEXIS 17540, at *12.

15  Where a responding party simply repeats the same objections to each discovery request – even if not

16  boilerplate – the objections are improper.  *Ferguson*, 2006 U.S. Dist. LEXIS 14789, at *9-*10.

17  Defendants have merely repeated the same boilerplate objection in response to each request and

18  reiterated throughout the meet and confer process – without any supporting argument or explanation

19  – that the documents sought by plaintiffs are not relevant.  This is exactly the type of objection

20  which courts deem improper.

21        Plaintiffs' requests are wholly within the scope of permissible discovery and defendants

22  should be compelled to produce documents responsive to Request Nos. 2-18, 21-33, 35, 38-42, 44-

23  46 and 50 over their improper, boilerplate relevancy objections.  Moreover, as the Ninth Circuit

24  courts recognize, it is plaintiffs who determine what information is necessary to pursue their claims,

25  not defendants.  *See In re Advanced Interventional Sys. Sec. Litig.*, No. SACV 92-723-AHS

26  (RWRx), 1993 U.S. Dist. LEXIS 21398, at *6 (C.D. Cal. May 17, 1993) ("Defendants do not

27  possess the authority to determine what Plaintiffs 'need to pursue their claims.'  Rather, the Federal

28  Rules of Civil Procedure govern whether a party is entitled to discover certain matter.").

1.    **Documents Related or Referring to Post-Class Period Events Are Relevant and Discoverable**

Defendants refuse to produce documents related to the following critical post-Class Period events: (i) communications with the OCA of the SEC (Request No. 21) and Impax's communications with Deloitte, Grant Thornton and FTI Consulting, Inc. ("FTI Consulting") (Request No. 29); (ii) Impax's delayed and delinquent SEC filings (Request Nos. 21-23, 26, 28, 50); and (iii) the delisting of Impax common stock from the NASDAQ (Request Nos. 24, 27, 50). It is axiomatic that post-Class Period evidence is discoverable. In *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1068 n.3 (N.D. Cal. 2002), the court permitted discovery into post-class period events, finding that the information sought was relevant to establishing defendants' motivation. In permitting post-class period discovery in *Seagate II*, the court stated, "Although plaintiffs' subpoenas request documents beyond the actual class period, courts have routinely cautioned against erecting artificial and arbitrary restrictions on discovery." 1993 U.S. Dist. LEXIS 18065, at *2. The *Seagate II* court approvingly cited *In re Control Data Corp. Sec. Litig.*, No. 3-85-1241, 1988 WL 92085, at *3 (D Minn. Feb. 22, 1988), which held: "'There are numerous instances in securities fraud litigation where post-offering statements, documents, or conduct have been treated as admissible evidence on the issue of scienter, intent, and knowledge []. Although [the defendant] relies on the certified class period as the relevant time frame, there is no rule fixing discovery in class action litigation to the class period.'" *Seagate II*, 1993 U.S. Dist. LEXIS 18065, at *4 (brackets in original). Significantly, here the relationship of post-Class Period events to defendants' Class Period conduct is powerful and direct.

a.    **Discovery Regarding Impax's Communications with the Office of the Chief Accountant of the SEC Is Relevant to Plaintiffs' Claims**

Request Nos. 21 and 29 each seeks, at least in part, documents related to defendants' communications with the OCA regarding Impax's restatement of 1Q04 and 2Q04 earnings and other delinquent SEC filings (Request No. 21) or any communication defendants had with their auditors Deloitte, Grant Thornton or FTI Consulting regarding communications with the OCA (Request No. 29). Discovery related to Impax's communications with the OCA bears directly on plaintiffs' claims

1    and is therefore within the scope of permissible discovery.  *See Sanders*, 437 U.S. at 351.  Since the

2    end of the Class Period, Impax has been in extensive and ongoing discussions with the OCA

3    regarding the proper accounting method in connection with of the SAA for the time period beginning

4    in 2004, which includes the Class Period.  ¶¶406-410.  This includes the appropriate revenue

5    recognition model for product sales, including bupropion, accrual of reserves, Teva's loan to Impax,

6    market exclusivity, and cost sharing between Impax and Teva.  Ex. 14, Appendix at 1.  Defendants

7    refuse to produce any responsive documents.

8         Discovery related to the Company's communications with the OCA is relevant  because these

9    communications concern the Class Period events underlying plaintiffs' allegations.  From May 2005

10   to February 2007, Impax has made three submissions to, and held three conference calls with, the

11   OCA regarding accounting under the SAA.  Ex. 15 at 9-19.  In its first submission, which was

12   deficient with respect to the facts and accounting and did not contain an opinion of Deloitte, Impax

13   only sought the OCA guidance with respect to issues related to revenue recognition for product sales

14   under the SAA.  *Id.* at 9-11.  Subsequently, the scope of communications with the OCA was

15   expanded to include a review of more than ten elements of the SAA.  Ex. 19 at 2.  As late as 2006,

16   the OCA suggested that Impax pull out a "blank sheet of paper" and re-evaluate the entirety of its

17   accounting under the SAA.  Ex. 15 at 17.

18        According to the SEC's Division of Enforcement Brief in Opposition to Impax Laboratories

19   Petition for Review, dated July 23, 2007, finalization of the 2004, 2005 and 2006 audits would

20   require: (i) the approval by the OCA of Impax's proposed accounting method under the SAA; (ii) the

21   Company's adoption and implementation of this model on past and present accounting; (iii) the

22   preparation of financial statements; (iv) the likely restatement of prior financials; and (v)

23   commencement of year-end reviews by Deloitte and Grant Thornton.  Ex. 15 at 20.  It appears that in

24   July 2007, the OCA informed Impax that it had accepted the Company's proposed method of

25   accounting.  Ex. 16 at 9.  The Company represented that it would only take eight to twelve weeks to

26   prepare financial statements after the OCA approved its accounting methodology.  Ex. 19 at 3, 18.

27   However, as of September 2008, over 60 weeks later, Impax has failed to release any certified

28   financials, including the 2004 Form 10-K.

1   Impax's communications with the OCA contain information relevant to plaintiffs' factual
2   allegations, including falsity, materiality and scienter and to rebut defendants' affirmative defenses.
3   Documents sought by plaintiffs' requests are relevant to show how the Company accounted for
4   bupropion sales during 2004 under the SAA, whether this methodology was appropriate, the
5   Company's failure to accrue reserves or properly account for returns, chargeback or rebates, the
6   complexity of the SAA (or the lack thereof), alternate proposals for accounting under the SAA,
7   whether Impax had knowledge of the flaws in its accounting methods, whether Impax should have
8   been aware of their flawed accounting method, material weaknesses in Impax's internal controls,
9   the opinions of the Company's auditors on Impax's accounting methods and the findings of the OCA
10  upon each of these matters.

11          Plaintiffs' claims are grounded in Impax's improper revenue recognition for bupropion
12  products under the SAA.  The evidence plaintiffs have obtained thus far demonstrates that Impax's
13  communications with the OCA pertain to all accounting under the SAA and impacts Impax's
14  financial statements for 2004 to the present, including the restatement of existing 1Q04 and 2Q04
15  financials as well as the finalization of the 2004 audit.  But for the Company's improper accounting
16  in 1Q04 and 2Q04, Deloitte would have likely signed off on the 2004 year end audit long ago.  Thus,
17  Impax's communications with the OCA are directly relevant to plaintiffs' claims and plaintiffs are
18  entitled to the requested discovery.

19          Despite plaintiffs' explanations as to the relevance of documents responsive to Request Nos.
20  21 and 29, defendants remain cemented in their refusal to produce documents.  Although plaintiffs'
21  requests were narrowly drafted and grounded in allegations from the operative complaint, plaintiffs
22  were willing to compromise during the meet and confer, suggesting that defendants produce a
23  limited number of documents which would substantiate their relevancy objection.  DJP Decl., ¶11,
24  Ex. 10.  Defendants refused, choosing instead to stand on their boilerplate relevancy objections.  *Id.*
25  Defendants' position is untenable.

26          It is defendants' burden to demonstrate that the discovery sought by plaintiffs is not relevant.
27  *Koninklijke*, 2007 U.S. Dist. LEXIS 17540, at *12 (granting motion to compel production of
28  documents).  In order to meet their burden, defendants must "specifically detail the reasons why each

1    request is irrelevant." *Id.*  It is clear in this Circuit that "'[b]oilerplate, generalized objections are

2    inadequate and tantamount to not making any objection at all.'"  *Wolk v. Green*, No. C06-5025 BZ,

3    2007 U.S. Dist. LEXIS 83148, at *1 n.1 (N.D. Cal. Oct. 29, 2007).  Because defendants have not

4    provided any argument supporting their objections – either in their written responses or during the

5    meet and confer process – they have failed to meet their burden.

    **b. Discovery Regarding Impax's Delayed and Delinquent**
6        **SEC Filings Is Relevant to Plaintiffs' Claims**

7       Request Nos. 21-23, 26, 28 and 50 each seeks, at least in part, documents relating or referring

8    to defendants' communications with the OCA, SEC, NASDAQ and the Company's auditors

9    concerning delayed or delinquent SEC filings.  The Company's delay in filing its required periodic

10   financial disclosures with the SEC is a product of its improper accounting and revenue recognition.

11   Similarly, plaintiffs' claims concern the propriety of the Company's recognition of revenue related

12   to bupropion products accounted for under the SAA, including the restatement of 1Q04 and 2Q04

13   earnings.  But for the Company's improper accounting in 1Q04 and 2Q04, the auditors likely would

14   have signed off on the 2004 year-end financials long ago.  The Court should compel defendants to

15   produce the post-Class Period documents sought by plaintiffs as they relate to the events underlying

16   plaintiffs' allegations.

17      Since November 2004, Impax has failed to file any mandatory periodic financial reports with

18   the SEC over a period of 46 months because of ongoing issues related to accounting under the SAA.

19   ¶8.  As discussed above in §V.A.1.a., defendants' failure to make required SEC filings is a product

20   of their inability to establish an acceptable model for revenue recognition for bupropion sales, as

21   well as all other elements, under the SAA.  Any resolution reached by Impax, the OCA and the SEC

22   – if and when Impax applies for re-listing – will affect 1Q04 and 2Q04 financial results as bupropion

23   products were sold under the SAA during this period.  In fact, the SEC Division of Enforcement

24   believes that any resolution of the accounting issues under the SAA will likely lead to the further

25   restatement of 1Q04 and 2Q04 financials. Ex. 15.  Impax's auditor, Deloitte, has refused to sign off

26   on a 2004 year end financial statement because of these unresolved accounting issues.  ¶¶405, 409-

27   410, 416-417.

28

1    Thus, documents and communications made or transmitted to the SEC, OCA, NASDAQ or

2  defendants' auditors are relevant to plaintiffs' claims and plaintiffs' burden of demonstrating falsity,

3  materiality and scienter.  The events which have led to defendants' delayed and delinquent SEC

4  filings are directly related to the revenue recognition for bupropion products under the SAA during

5  1Q04 and 2Q04.  For the same reasons noted above with respect to communications with the OCA,

6  discovery relating to Impax's delayed and delinquent SEC filings is relevant to number of issues in

7  this litigation.  *See* §V.A.1.a., *supra*.

8    In addition, responsive documents are relevant to show the opinions of the SEC, OCA,

9  NASDAQ and defendants' auditors regarding defendants' delayed and delinquent SEC filings, the

10 causes for the delay, and their proposals for a solution, the method of accounting which was

11 employed during 1Q04 and 2Q04, the appropriateness of this method, potential alternative methods,

12 whether or not these third parties believed the Company's accounting was improper, whether these

13 third parties suggested alternative accounting methods, whether defendants resisted restating their

14 1Q04 and 2Q04 financials, the opinions of these third parties on the nature of the SAA and the

15 completeness of defendants' submission to NASDAQ, the SEC and the OCA.

16   Therefore, defendants should be compelled to produce documents responsive to Request Nos.

17 21-23, 26, 28 and 50.

18       **c.    Discovery Regarding Impax's Delisting from the
               NASDAQ Is Relevant to Plaintiffs' Claims**

19   Request Nos. 24, 27 and 50 each seeks, at least in part, documents or communications

20 relating to the Company's delisting from the NASDAQ and the subsequent revocation of its

21 registration by the SEC.  The delisting and revocation are both a product of the Company's inability

22 to file any mandatory periodic disclosures with the SEC for 46 months.  These delayed and

23 delinquent SEC filings are a result of Impax's improper accounting for sales under the SAA,

24 including sales of bupropion during the Class Period.  But for Impax's improper recognition of

25 revenue under the SAA during the Class Period, this sequence of events after the Class Period would

26 not have occurred.  Documents and communications relating to the Company's delisting and

27 revocation of its registration are relevant to the Company's method of accounting for bupropion

28

1   products under the SAA, the Company's delayed and delinquent SEC filings, revenue recognition

2   methods both employed and proposed, the chronology of events related to defendants'

3   communications with the OCA, SEC and NASDAQ and the Company's representations regarding

4   when their accounting would be finalized.   The relevancy of responsive documents is further

5   supported by the limited number of briefs plaintiffs were able to obtain from the SEC, in redacted

6   form, some of which are being filed as exhibits herewith.   The SEC Division of Enforcement has

7   taken the position that Deloitte may never sign off on Impax's 2004 year-end financials and that

8   Impax will likely need to further restate its 2004 financials.   Ex. 15.   Thus, documents responsive to

9   Request Nos. 24, 27 and 50 are relevant to demonstrate falsity, scienter and materiality, and should

10  be produced.

11              **d.    Discovery Regarding Impax's Communications with**
                        **Deloitte, Grant Thornton and FTI Consulting Is**
12                      **Relevant to Plaintiffs' Claims**

13          Request Nos. 28-29, 45-46 and 50 seek documents related to communications with, or

14  services rendered by Impax's auditors Deloitte, Grant Thornton and FTI Consulting.   Although,

15  Deloitte served as Impax's auditor during 2004, Deloitte has refused to sign off on Impax's 2004

16  year end financials withstanding the passage of almost four years.   But for Impax's improper

17  recognition of revenue under the SAA, its 2004 financials would have been finalized years ago.   As

18  it stands, it is entirely unclear whether Deloitte will ever sign off on Impax's 2004 financials, which

19  plaintiffs allege are false and misleading.   Communications between Impax and Deloitte since the

20  end of the Class Period are, therefore, highly relevant to plaintiffs' claims related to revenue

21  recognition under the SAA.

22          Grant Thornton and FTI Consulting were engaged by defendants during the time of the

23  revocation and delisting of Impax's stock.   ¶418; Ex. 13.   But for Impax's improper recognition of

24  revenue under the SAA during the Class Period, this sequence of events after the Class Period would

25  not have occurred.   Defendants' communications with Deloitte, Grant Thornton and FTI Consulting

26  pertain to the Company's method of accounting for bupropion products under the SAA, the

27  Company's delayed and delinquent SEC filings, its delisting from the NASDAQ and revocation by

28  the SEC of its registration.   Responsive documents are relevant to show the opinions of the

1   Company's auditors on revenue recognition methods both employed and proposed; the chronology

2   of events related to defendants' communications with the OCA; the circumstances surrounding

3   Deloitte's failure to approve the Company's submissions to the OCA; Deloitte's decision not to

4   stand for reappointment as the Company's auditor; and the opinions of Grant Thornton and FTI on

5   accounting under the SAA. Responsive documents are thus, relevant to demonstrate falsity, scienter

6   and materiality.

7        Accordingly, defendants' wholesale refusal to produce post-Class Period documents based on

8   their "relevance" objection is improper and the Court should compel defendants to produce

9   documents responsive to plaintiffs' requests.

10       **B.    Defendants' Arbitrary Time Limitations Are Improper Under the**
         **       Facts and Circumstances of This Case**

11       The Court should compel production of relevant and responsive documents created through

12  the present time which are related to revenue recognition for bupropion products in 1Q04 and 2Q04

13  under the SAA. Defendants have limited their search for responsive documents by imposing

14  artificial cut-off dates for their search and production even when responsive documents clearly could

15  be created even up to the present. For instance, defendants object to producing documents created

16  outside of FY04. Ex. 4 (Objections to Request Nos. 4-6, 10, 14 and 30). Such arbitrary restrictions

17  on defendants' search and production are clearly improper, particularly under the facts of this case.

18       As noted in §V.A.1, *supra*, "courts have routinely cautioned against erecting artificial and

19  arbitrary restrictions on discovery" in cases such as this where defendants attempt to confine

20  discovery to the Class Period. *Seagate II*, 1993 U.S. Dist. LEXIS 18065, at *3. In the instant case,

21  defendants have yet to finalize Impax's 2004 year-end financial statements, which incorporate 1Q04

22  and 2Q04 financial results. As explained in §V.A.1 above, information relevant to the Class Period

23  events has been created even up to the present and defendants should not be allowed to impose

24  artificial restrictions on plaintiffs' discovery as outlined below.

25       In response to Request Nos. 4 and 10, defendants refuse to produce documents created after

26  December 31, 2004. Request No. 4 seeks documents and communications related to the accounting

27  for sales, returns, credits, discounts or reserves under the SAA for bupropion. Request No. 10 seeks

28

1  documents and communications relating to recognition of revenue for bupropion, including "any

2  alternative methods of revenue recognition proposed for bupropion regardless of whether those

3  methods were implemented." Defendants' refusal to produce documents created after December 31,

4  2004 is purely arbitrary; relevant and responsive documents are likely being created through the

5  present. As noted in §II, *supra*, Impax's 2004 financials have not been finalized and the SEC

6  Division of Enforcement believes that Impax will likely have to further restate its existing 2004

7  filings. Ex. 15. As discussed above, defendants' inability to finalize the Company's 2004 financials

8  is directly related to Class Period events and pertains directly to revenue recognition and accounting

9  for bupropion under the SAA. Thus documents relevant to plaintiffs' claims, as well as plaintiffs'

10  burden of demonstrating falsity, materiality, knowledge and scienter, are discoverable and should be

11  produced.

12       In response to Request Nos. 12 and 18, defendants refuse to produce documents created after

13  April 15, 2005. Request No. 12 seeks documents and communications related to the accrual of

14  reserves, or lack thereof, for bupropion. Request No. 18 seeks documents and communications

15  related to the return or discounting of bupropion by retailers or Teva. As discussed in §V.A.1a

16  *supra*, defendants' accounting methods for products sold under the SAA are still being finalized,

17  including defendants' accounting for returns and chargebacks and accrual of reserves. In fact, in

18  June 2005 – two months after defendants' arbitrarily imposed discovery cut-off – the Company

19  specifically identified accounting under the SAA, as well as "reserve[s] for shelf stock protection" as

20  material weaknesses in Impax's internal controls. Ex. 16 at 6 n.12. On August 3, 2005, defendants

21  caused Impax to issue a press release discussing the impact on revenue and net income of three

22  different methods of revenue recognition under the SAA for 2004. Ex. 17. As late as 2006, the

23  OCA suggested that Impax pull out a "blank sheet of paper" and re-evaluate the entirety of its

24  accounting under the SAA. Ex. 15 at 17. Clearly, relevant and responsive documents were created

25  after April 15, 2005.

26       Because defendants have offered no substantiated justification for their arbitrary time

27  limitations, the Court should compel the production of relevant, responsive documents created up to

28  the present.

**C.     Defendants' Refusal to Produce Documents Related to Accounting and Sales Is Improper**

Plaintiffs seek limited information about defendants' business practices related to the sale of drugs other than bupropion under the SAA and through distributors other than Teva.  Documents responsive to Request Nos. 8-9 and 11 are likely to demonstrate how and why, if at all, defendants' accounting practices related to bupropion sales under the SAA deviated from their customary business practices.  Thus these documents are relevant to plaintiffs' burden of demonstrating that defendants knew – or were deliberately reckless in not knowing – that their financial statements were false and misleading.

Request No. 8 seeks documents sufficient to show agreements between Impax and any other companies for the marketing, distribution or sales of Impax's products.  Although plaintiffs have narrowed their requests to only documents "sufficient to show" agreements with other companies, defendants have refused to produce even a limited sampling of such documents.  Documents responsive to Request No. 8 are relevant to demonstrating that defendants were aware of their accounting obligations related to returns, credits and chargebacks under agreements with companies other than Teva, as well as plaintiffs' allegations of channel stuffing with respect to bupropion. ¶¶429-430, 442.

Request No. 9 seeks documents and communications relating to the accounting for sales, returns, credits, discounts or reserves on products manufactured by Impax sold or distributed by any company other than Teva.  Responsive documents are relevant to demonstrate that defendants' accounting for bupropion was improper, in violation of Generally Accepted Accounting Principles ("GAAP"), and deviated from their other accounting practices and that defendants knew, or were deliberately reckless in taking to investigate these facts.

Request No. 11 seeks documents and communications related to Impax's recognition of revenue for products other than bupropion sold in conjunction with Teva under the SAA, "relating or referring to any alternative methods of revenue recognition under the SAA regardless of whether those methods were implemented."  Responsive documents are relevant to demonstrate that defendants' accounting for bupropion was improper, in violation of GAAP, and deviated from their

1   other accounting practices, and that defendants were aware of, or reckless in not knowing, these

2   facts.

3          Because documents responsive to Requests 8-9 and 11 bear directly on defendants' scienter

4   and because defendants offer nothing more than boilerplate objections to plaintiffs' requests,

5   defendants should be compelled to produce documents.

6          **D.      Defendants' Refusal to Produce Documents Related to Compensation
                      Is Improper**

7          Request Nos. 32-33 seek information related to compensation of Impax's senior executives

8   and defendant Dr. Larry Hsu's wife in 2004.  At the beginning of the Class Period, the Company

9   announced its decision to defer the payment of 2003 annual bonus for senior executives until 2004.

10  ¶452.  This was in stark contrast to the Company's practice of awarding substantial incentive

11  compensation despite negative earnings in prior fiscal years.  *Id.*  Plaintiffs allege that deferring the

12  2003 annual bonuses allowed defendants to capitalize on Impax's improperly recognized revenue in

13  2004.  ¶¶449-453.  Discovery related to whether Impax's Compensation Committee improperly

14  deferred issuance of bonuses to senior executives until 2004 so that senior executives could receive

15  additional compensation based on artificially inflated revenues in 2004 is relevant to demonstrating

16  scienter.

17         Additionally, plaintiffs allege that Impax paid Dr. Ann Hsu, the wife of Impax's Chief

18  Executive Officer ("CEO"), a consulting agreement worth $204,000 a year, plus an annual bonus of

19  up to $50,000 and options to purchase 80,000 shares of Impax stock.  ¶453.  The hiring of Impax's

20  CEO's wife and her substantial compensation bears all the hallmarks of impropriety and documents

21  pertaining thereto are relevant to ascertaining whether Dr. Larry Hsu was allowed to reap improper

22  financial benefits and further capitalize on defendants' improper accounting during the Class Period.

23  Defendants have offered nothing more than meaningless boilerplate objections to these requests and

24  should be compelled to produce responsive documents.

25

26

27

28

E.     **Defendants' Refusal to Produce Documents Related to Additional Individual Requests Is Improper**

1.     **Request No. 13**

Request No. 13 seeks "[d]ocuments and communications related or referring to the Company's overall reduction in reserves accrued during 1Q04 and 2Q04." Plaintiffs allege that defendants' 67% reduction in reserves in 1Q04 sales was a huge red flag. ¶¶123-125. From an accounting standpoint, this was precisely the opposite of what a company should have done. ¶125. Plaintiffs are entitled to documents underlying defendants' investigation and information available to them at the time of their decision to reduce reserves.

Responsive documents are relevant to allegations in the Fourth Amended Complaint regarding defendants' decision to reduce the Company-wide reserves in 1Q04 and 2Q04 and are relevant to show defendants' fraudulent scheme, materiality, falsity and scienter. *See* ¶¶228-233. Defendants' boilerplate objections on the grounds of breadth, burden and relevance are not supported by specifics or argument and thus the Court should compel the production of responsive documents.

2.     **Request No. 42**

Request No. 42 seeks "[d]ocuments and communications relating or referring to the departure of defendant Barry R. Edwards from [the Company's] employment." Barry Edwards was CEO and a member of Impax's Board of Directors, and had knowledge of the bupropion credits granted to Teva's customers. ¶¶14, 404. Plaintiffs allege that Edwards' departure from Impax was related to defendants' improper accounting under the SAA. ¶¶127, 404. Thus, responsive documents are relevant to demonstrate scienter.

Defendants refuse to produce responsive documents arguing that plaintiffs should just ask Edwards about it at his deposition. Ex. 5. Defendants' objection is meritless as plaintiffs are clearly entitled to discovery of contemporaneous documents related to the departure of Edwards. *See Rambus Inc. v. Samsung Elecs. Co.*, No. C-0502298 RMW, 2008 U.S. Dist. LEXIS 54196, at *14-*15 (N.D. Cal. July 16, 2008). Defendants' "argument also overlooks the reality that a contemporaneous document is often much more persuasive than testimony several years after the

fact and under the cloud of litigation." *Id*. However, given that plaintiffs are entitled to depose Edwards as a defendant in this litigation documents responsive to this request are also relevant to test the veracity of Edwards' deposition testimony. *See Cellpro v. Baxter Int'l, Inc.*, No. C92-7150, 1992 U.S. Dist. LEXIS 22807, at *7-*8 (W.D. Wash. Dec. 28, 1992) (compelling defendants to produce "all contemporaneous documents" over relevance objection because it is "[t]he best way to verify which side is true"). Defendants' boilerplate objection on the grounds of relevance is not supported by specifics or argument and thus the Court should compel the production of responsive documents.

### 3.      Request No. 44

Request No. 44 seeks documents relating to Deloitte's decision not to stand for reappointment as the Company's auditor. Deloitte served as Impax's auditor during 2004 but has refused to sign off on Impax's 2004 year-end financials. ¶¶416-471. Further, Deloitte identified the SAA as a material weakness in Impax's internal controls over financial reporting as of December 31, 2004. *Id.* Finalization of the 2004 audit will likely require the restatement of prior financials. Ex. 15 at 20. At this point, it is unclear whether Deloitte will ever sign off on Impax's 2004 financials. Documents responsive to this request are relevant to allegations that defendants improperly accounted for sales, reserves and revenue under the SAA; defendants decided to use an accounting methodology in face of disagreement by Deloitte as to the proper methodology for recognizing revenue under the SAA; and defendants' material weaknesses in their internal controls that Deloitte's identification of such weaknesses and defendants' efforts to address them. Defendants' boilerplate objections on the grounds of breadth, burden and relevance are not supported by specifics or argument and thus the Court should compel the production of responsive documents.

### F.      Defendants' Objections that Plaintiffs' Requests Are Vague, Overly Broad and Unduly Burdensome Are Improper

Defendants object to Request Nos. 2, 5, 12-14, 16-18, 22-23, 30, 35, 38-41 and 50, reciting that each request is vague, overly broad, unduly burdensome and irrelevant. Defendants similarly object to Request Nos. 3-4, 6-11, 15, 21, 24-29, 31-33 and 44-46, reciting that each request is overly broad, unduly burdensome and irrelevant. These objections to almost every single one of plaintiffs'

1   requests are by definition boilerplate and are therefore tantamount to no objection at all. *Wolk*, 2007

2   U.S. Dist. LEXIS 83148, at *1 n.1.

3          "[I]n light of the broad construction given to discovery requests, the objecting party has a

4   heavy burden to show why discovery should be denied, by clarifying and explaining its objections,

5   and providing support therefor." *Flanagan v. Benicia Unified Sch. Dist.*, No. CIV S-07-0333 LKK,

6   GGH, 2008 U.S. Dist. LEXIS 39386, at *11-*12 (E.D. Cal. May 14, 2008). Despite their burden

7   under the law, defendants have made absolutely no effort during the meet and confers to explain

8   their objections or provide any support for their refusal to produce responsive documents.

9   Defendants' boilerplate "vague, overly broad and unduly burdensome" objections are entirely

10  insufficient to warrant the proper withholding of documents on such bases and plaintiffs' motion to

11  compel should be granted.

12          **G.     Defendants' Confidentiality Objections Are Improper**

13          Defendants object to Request Nos. 10-11, 21-29 and 50 claiming that each request calls for

14  confidential information.  Rather than specify which particular documents cannot be produced on the

15  basis of legitimate confidentiality concerns, defendants simply refuse to produce documents

16  responsive to Request Nos. 10-11, 21-29 and 50.  Defendants' conclusory assertions that the

17  requested documents are confidential, without any explanation as to why disclosure of the

18  information would be harmful, are improper and offer no basis for their refusal to produce

19  documents.  *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996) (compelling discovery).

20  "[u]nder no circumstances may [defendant] unilaterally withhold documents on the basis of an

21  unsupported boilerplate objection." *Dawe v. Corr. USA*, No. CIV-5-07-1790 LKK EFB, 2008 U.S.

22  Dist. LEXIS 51122, at *31 (E.D. Cal. Apr. 23, 2008).

23          Furthermore, objections to production of an entire category of documents because they are

24  "confidential" are especially improper in cases such as this where the parties have agreed that

25  documents will be produced pursuant to a stipulated protective order.  *See id.* (noting that defendant

26  could produce documents subject to protective order); *Paulsen*, 168 F.R.D. at 289 (refusal to

27  produce improper where defendant could seek protective order).  Although defendants' boilerplate

28  confidentiality objections describe absolutely no trade secrets, confidential research, development or

1   commercial information, or other potentially harmful information sought by plaintiffs' requests, the

2   parties are negotiating a stipulated protective order, which will provide for the appropriate protection

3   of such materials, allowing them to be redacted or filed under seal.  *See* Ex. 20.

4         **H.**     **Defendants' Privilege Objections Are Improper**

5         Defendants also object to Request Nos. 3, 19-20, 24, 26-27, 29-31, 36-37 and 47-49 on the

6   grounds of attorney-client privilege or attorney work product privilege.  These objections are

7   improper because they are overly broad and fail to provide plaintiffs with any basis whatsoever for

8   evaluating defendants' refusal to produce documents.  Objections to production of particular

9   documents because they may be privileged are appropriate where necessary, however, a blanket

10  objection to an entire category of documents is entirely improper.  *Burlington N. v. U.S. Dist. Court*,

11  408 F.3d 1142, 1149 (9th Cir. 2005) ("boilerplate objections or blanket refusals inserted into a

12  response to a Rule 34 request for production of documents are insufficient to assert a privilege").

13  Legitimate assertions of privilege regarding responsive documents must be accompanied by a

14  detailed privilege log indicating the basis for such privilege.  *Narayan v. EGL, Inc.*, No. C05-04181

15  RMW (HRL), 2006 U.S. Dist. LEXIS 81125, at *5-*6 (N.D. Cal. Oct. 24, 2006); Fed. R. Civ. P.

16  26(b)(5).  Defendants have neither provided any privilege log nor indicated when a privilege log will

17  be forthcoming.  Plaintiffs have no basis to evaluate defendants' claim of privilege.  Accordingly,

18  defendants should be compelled to produce responsive documents, subject to the parties' stipulated

19  protective order along with a detailed privilege log as required by the Federal Rules.

20  **VI.**    **PLAINTIFFS' RULE 30(b)(6) DEPOSITION IS DELAYED BY**
            **DEFENDANTS' REFUSAL TO PRODUCE DOCUMENTS**

21

22        Plaintiffs served Impax with a 30(b)(6) deposition notice on July 17, 2008.  During the meet

23  and confer process, counsel for defendants notified plaintiffs that the individual defendants will

24  testify on behalf of the corporate entity as persons most knowledgeable regarding various subject

25  matters.  However, defendants' refusal to produce documents responsive to the vast majority of

26  plaintiffs' document requests including Request No. 2, which requests production of documents

27  reviewed and relied upon in connection with the Fed. R. Civ. P. 30(b)(6) notice, continues to

28  forestall Impax's 30(b)(6) depositions indefinitely.

1    VII.    CONCLUSION

2           For all the reasons detailed above, plaintiffs respectfully request that the Court grant their

3    motion and compel defendants to produce responsive documents within 14 days of such Order.

4    DATED:  September 24, 2008                    Respectfully submitted,

5                                                  COUGHLIN STOIA GELLER
                                                     RUDMAN & ROBBINS LLP
6                                                  AZRA Z. MEHDI
                                                   DANIEL J. PFEFFERBAUM
7                                                  SUZANNE H. KAPLAN

8

9                                                  _____
                                                        s/ Daniel P. Pfefferbaum
                                                        DANIEL P. PFEFFERBAUM
10

11                                                 100 Pine Street, Suite 2600
                                                   San Francisco, CA  94111
12                                                 Telephone:  415/288-4545
                                                   415/288-4534 (fax)

13                                                 COUGHLIN STOIA GELLER
                                                     RUDMAN & ROBBINS LLP
14                                                 LAURIE L. LARGENT
                                                   655 West Broadway, Suite 1900
15                                                 San Diego, CA  92101
                                                   Telephone:  619/231-1058
16                                                 619/231-7423 (fax)

17                                                 Lead Counsel for Plaintiffs

18                                                 SULLIVAN, WARD, ASHER & PATTON, P.C.
                                                   CYNTHIA J. BILLINGS
19                                                 25800 Northwestern Highway
                                                   1000 Maccabees Center
20                                                 Southfield, MI  48075-1000
                                                   Telephone:  248/746-0700
21                                                 248/746-2760 (fax)

22                                                 Additional Counsel for Plaintiffs

23   T:\CasesSF\IMPAX Labs\MOT00054315-2.doc

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

     I hereby certify that on September 24, 2008, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4

addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have

5

mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6

participants indicated on the attached Manual Notice List.

7

     I certify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.  Executed on September 24, 2008.

9

10

                                s/ Daniel J. Pfefferbaum
                                 DANIEL J. PFEFFERBAUM

11

                                 COUGHLIN STOIA GELLER

12

                                    RUDMAN & ROBBINS LLP
                                 100 Pine Street, 26th Floor

13

                                 San Francisco, CA  94111
                                 Telephone:  415/288-4545

14

                                 415/288-4534 (fax)

15

                                 E-mail:dpfefferbaum@csgrr.com

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 5:04-cv-04802-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Dale E. Barnes , Jr**
  dale.barnes@bingham.com,teresa.bowen@bingham.com,lisa.lee@bingham.com

- **Joseph Otto Click**
  click@blankrome.com,smith-sh@blankrome.com

- **Patrick J. Coughlin**
  PatC@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Suzanne Heald Kaplan**
  shkaplan@csgrr.com

- **Louis H. Kozloff**
  Kozloff@blankrome.com

- **Laurie L. Largent**
  llargent@csgrr.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **Elizabeth Pei Lin**
  elin@milberg.com,schang@milberg.com,cchaffins@milberg.com

- **Tricia Lynn McCormick**
  triciam@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Azra Z. Mehdi**
  azram@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@csgrr.com,khuang@csgrr.com,GDarwish@csgrr.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing

program in order to create notices or labels for these recipients.

**Kerry Brainard**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Tim P. Harris**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037

**Michael Joseph**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Hardy Vieux**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037