BLANK ROME LLP
MICHAEL JOSEPH (*pro hac vice*)
JOSEPH O. CLICK (*pro hac vice*)
HARDY VIEUX (*pro hac vice*)
TIMOTHY P. HARRIS (*pro hac vice*)
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Telephone: 202.772.5800
Facsimile: 202.572.5858
          -and-
LOUIS H. KOZLOFF (*pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, Pennsylvania 19103-6998
Telephone: 215.569.5500
Facsimile: 215.569.5555

BINGHAM MCCUTCHEN LLP
DALE BARNES (SBN 99273)
Three Embarcadero Center
San Francisco, California 94111
Telephone: 415.393.2522
Facsimile: 415.393.2286

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re IMPAX LABORATORIES, INC. SECURITIES LITIGATION | ) ) ) Master File No. C-04-4802-JW |
| | ) |
| This Document Related to: | ) CLASS ACTION |
| | ) |
| ALL ACTIONS | ) DEFENDANTS' OPPOSITION TO ) PLAINTIFFS' MOTION TO ) COMPEL PRODUCTION OF ) DOCUMENTS FROM IMPAX ) DEFENDANTS |
| | ) |
| | ) DATE:        October 29, 2008 ) TIME:        9:30 a.m. ) COURTROOM: The Honorable )                    Richard G. Seeborg |
| | ) |
| | ) |

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

TABLE OF CONTENTS

**PAGE**

TABLES OF AUTHORITIES ................................................................................ iii

I.      INTRODUCTORY STATEMENT ........................................................1

II.     FACTUAL BACKGROUND ................................................................2

        A.    The Allegations of the Fourth Amended Complaint .....................2

        B.    Post-Class Period Events ...........................................................3

III.    ARGUMENT ........................................................................................5

        A. Post-Class Period Events Resulting from Impax's Inability to File SEC
           Periodic Reports are Unrelated to the Alleged Misrepresentations
           Concerning 1Q04 and 2Q04 Financial Results .................................6

              1.   The 4th AC Alleges Defendants Made False Statements
                   Concerning 1Q04 and 2Q04 Financial Results Because
                   Impax Failed to Accurately Record Revenue for Sales of
                   Bupropion for Two Specific Reasons .................................7

              2.   Accounting For Price Adjustments and Reserve Accrual for
                   2004 Sales Under the SAA Was Resolved in March of 2005
                   and Did Not Contribute to Impax's Failure to Timely File its
                   2004 10-K or Other SEC Reports .....................................8

              3.   Plaintiffs Cannot Conduct Discovery on Post-Class Period
                   Events That Are Unrelated to the Issues Alleged as the Basis
                   for Impax's False and Misleading Statements ..................9

        B. Defendants Have Not Arbitrarily or Improperly Limited Discovery to
           Documents Related to Bupropion Sales in 2004 .............................11

              1.   Defendants Have Agreed to Produce All Responsive
                   Documents Concerning Accounting for Impax's Bupropion
                   Sales in 2004 .................................................................12

              2.   Documents Concerning Accounting Methods Impax May
                   Have Considered Using after 2004 to Account for Product
                   Sales During 2004 Are Not Relevant or Reasonably
                   Calculated to Lead to Admissible Evidence .....................14

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**Blank Rome LLP**
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

C.  Documents Regarding Impax's Accounting Policies for Sales of
    Products Other Than Bupropion Through Distributors Other Than
    Teva..................................................................................................15

D.  Production of Documents Concerning Compensation Paid to Impax
    Executives is Unwarranted ..............................................................15

E.  Defendants' Objections to Request No. 13 are Proper and Should be
    Sustained ........................................................................................17

F.  Defendants' Objections to Request No. 42 are Proper and Should be
    Sustained ........................................................................................18

G.  Defendants' Objection to Request No. 44 are Proper and Should be
    Sustained ........................................................................................19

H.  Defendants' Objections Concerning Plaintiffs' Vague, Overly Broad
    and Unduly Burdensome Requests Are Appropriate.......................20

I.  Defendants' Objections Based on Privilege Are Appropriate .........22

J.  Defendants Properly Objected to Producing Documents "Reviewed
    and Relied Upon" in Connection with the Future Rule 30(b)(6)
    Deposition of Impax .......................................................................22

CONCLUSION............................................................................................................23

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

ii

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

## TABLE OF AUTHORITIES

**PAGE**

**CASES**

Bly-Magee v. California, 236 F.3d 1014 (9th Cir. 2001) ....................................................10

Bob Barker Co. v. Ferguson Safety Products, Inc., Number C 04 048 13 JW (RS),
2006 U.S. Dist. LEXIS 14789 (N.D. Cal. 2006) .......................................11, 12, 14, 17

California Dept of Soc. Servs. v. Leavitt, 523 F.3d 1025
(9th Cir. 2008)......................................................................................................................5

Elvig v. Calvin Presbyterian Church, 375 F.3d 951 (9th Cir. 2004) ...................................5

In re: Initial Public Offering Sec. Litigation, 241 F. Supp. 2d 281
(S.D.N.Y. 2003)..................................................................................................................10

In re Seagate Technology II Sec. Litigation, No. C-89-2493(a)-VRW, 1993 U.S. Dist.
LEXIS 18065 (N.D. Cal. June 10, 1993)....................................................................11

Sparling v. Daou (In re Daou System, Inc. Sec. Litigation.), 411 F.3d 1006 (9th Cir.
2005) .......................................................................................................................................9

Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625 (9th Cir. 2005)............................5

In re United States Aggregates, Inc. Sec. Litigation, 235 F. Supp. 2d 1063 (N.D. Cal.
2002) ....................................................................................................................................11

Use Techno Corp. v. Kenko USA, Inc., No. 06-02754, 2007 WL 3045996
(N.D. Cal. Oct. 18, 2007)................................................................................13, 22, 23

**COURT RULES**

Federal Rule of Civil Procedure 26 .....................................................................................5

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**Blank Rome LLP**
Watergate  600 New Hampshire Ave, NW  Washington, DC 20037

Defendants Impax Laboratories, Inc. ("Impax"), Barry R. Edwards, Cornel C. Spiegler, Charles Hsiao, Larry Hsu, David S. Doll, and David J. Edwards (collectively, the "Defendants") hereby oppose Plaintiffs' Motion to Compel Production of Documents from Impax Defendants.

## I.   INTRODUCTORY STATEMENT

In this securities fraud class action, Plaintiffs allege that Impax Laboratories, Inc. and certain of its current or former officers or directors, defrauded investors when it issued first- and second-quarter financial results in May and August 2004, respectively, that overstated Impax's sales revenues.  Impax disclosed that those revenues were overstated on November 9, 2004 when it announced that it was restating those results.  Thus, this case concerns only Impax's first- and second-quarter 2004 financial statements and no others.  Plaintiffs' first round of discovery included 50 separate document requests, and since August of this year, Defendants have produced to Plaintiffs over 15,000 pages of responsive documents.  Defendants are continuing to review tens of thousands of potentially responsive documents, including significant amounts of electronically stored information, and will produce additional responsive, non-privileged documents it identifies in a timely manner.

This discovery dispute does not concern any documents relevant to the issues in this case. Instead, it largely concerns a fishing expedition by Plaintiffs for documents that were created years after Impax's first and second-quarter financial statements were issued and the alleged fraud committed.  In May 2008, the SEC issued an Opinion and Order revoking the registration of Impax's common stock under section 12 of the Securities Exchange Act.  That revocation resulted from Impax's failure to file its periodic SEC reports that was, in turn, caused by Impax's need to develop a new revenue recognition policy for revenue related to a strategic alliance and distribution agreement.  As noted in the SEC's Opinion and Order, since March 2005, Impax has been working with its outside auditors and the SEC's Office of Chief Accountant (OCA) to resolve highly complex and technical accounting issues and develop a policy acceptable to the auditors and the OCA under recent accounting pronouncements.  The SEC's Order and Opinion, as well as an Order and Opinion

issued by an SEC Administrative Law Judge (ALJ), make clear that those accounting issues, and Impax's failure to file its periodic reports, have nothing to do with any issue in this case.

The parties are scheduled to participate in a mediation on November 4. Plaintiffs' overly broad discovery requests and this Motion to Compel (which is scheduled to be heard a mere five days before the mediation) thus appear intended to create undue leverage for Plaintiffs. The Court should reject such tactics and deny the Motion to Compel.

## II.    FACTUAL BACKGROUND

### A.    The Allegations of the Fourth Amended Complaint

The material allegations of the current Fourth Amended Consolidated Complaint (4th AC) are the same as those of the prior five complaints and are summarized as follows.

Impax is a generic drug manufacturer. In early 2004 it received FDA approval to market bupropion, the generic version of the anti-depressant Wellbutrin®, and Impax's partner under a Strategic Alliance Agreement (SAA), Teva Pharmaceuticals (Teva), immediately began to sell the drug. (4th AC, ¶¶ 3, 170.) In a May 5, 2004 press release Impax reported that the first quarter of 2004 (1Q04) was its first-ever profitable quarter, with revenue of $38.8 million, of which bupropion accounted for $23.9 million. (4th AC, ¶ 80.) Impax also reported a profit in the second quarter of 2004 (2Q04), with bupropion accounting for $8.1 million of its $30.8 million revenue. (4th AC, ¶ 280.)

On November 9, 2004, Impax released its third-quarter results and for the first time announced that it was also restating its 1Q04 and 2Q04 results, reducing 1Q04 revenue from the previously reported $38.8 million to $34.5 million and reducing 2Q04 revenue from the previously reported $30.8 million to $30.5 million. (4th AC, ¶ 144.) The restatement of first- and second-quarter results was due to previously unreported "customer credits" that Teva had granted on its bupropion sales.[1] That same day, November 9, Impax stock closed at $11.85, up $0.60 from the

_____

[1]    See the Court's January 3, 2007 Order, at 3 (Dkt. No. 110) (summarizing allegations of the Second Amended Consolidated Complaint).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

previous day's close of $11.25. The day after that, the stock closed up almost another dollar, at $12.73. (4th AC, ¶ 148.) And on November 11, two days after the announcement of the restated results, the stock closed at $13.30, more than $2 higher than the closing price the day before the announcement and $.30 higher than the closing price on November 3, before the announcement delaying release of third-quarter results. (4th AC, ¶ 148.)

Plaintiffs, suing on behalf of all persons who purchased Impax stock between May 5 (the date of the announcement of first-quarter results) and November 3, 2004 (when Impax announced a delay in the release of third-quarter results) (4th AC, ¶ 2), allege that Impax's original 1Q04 and 2Q04 results were fraudulently overstated and that those who purchased the stock during this class period were injured thereby.[2]

Although the 4th AC mentions certain post-class period events (discussed below), it makes no attempt to connect those events to the alleged fraud in this case. This is because, as discussed below, no connection exists.

### B.   Post-Class Period Events

On May 23, 2008, the SEC issued an Opinion and Order revoking the registration of Impax's common stock under section 12 of the Securities Exchange Act due to Impax's failure to file its periodic reports required by the SEC. The SEC Opinion and Order were based upon the Opinion and findings of an SEC ALJ following an administrative hearing. According to both Opinions, the relevant facts leading to the revocation are as follows.[3]

---

[2]   While Plaintiffs allege this fraud 19 different ways (4th AC ¶¶ 80, 154, 183, 192, 204, 213, 237, 246, 271, 280, 293, 306, 316, 326, 338, 348, 362, 372 and 389), the alleged fraudulent statements relate solely to the first- and second-quarter results that were restated on November 9, 2004.

[3]   The ALJ's Initial Opinion and the SEC's May 23, 2008 Order are respectively Exhibits 13 and 16 to the Declaration of Daniel J. Pfefferbaum in Support of Plaintiffs' Motion to Compel (Pfefferbaum Decl.).

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

Blank Rome LLP

Watergate 600 New Hampshire Ave., NW Washington, DC 20037

In March 2005, shortly before Impax was due to file its 2004 annual report on SEC Form 10-K, Impax's auditors, Deloitte & Touche (Deloitte), informed Impax that it would not be able to render an opinion on the Company's financial statements because Deloitte's accounting professionals were unable to determine whether Impax was properly accounting for items under the SAA under recent accounting pronouncements.  Deloitte advised Impax to seek guidance from the SEC's OCA with regard to the proper accounting methods.  The ALJ Opinion and SEC Opinion chronicle Impax's substantial efforts from March 2005 to July 2007 to devise a method for accounting for revenues under the SAA that is acceptable to both Deloitte and the OCA. (Pfefferbaum Decl., Ex. 13, at 4-8 and Ex. 16, at 4-9.)  During this period, Impax was not able to file any of its periodic SEC reports, which, in August 2005, resulted in NASDAQ delisting its stock.[4]

Significantly, however, the ALJ and SEC Opinions make clear that Impax's efforts at devising a new accounting method have absolutely no connection to any issue in this case.  The ALJ specifically found that "Impax restated its financials for the first two quarters of 2004, <u>for reasons that are unrelated to the issues presented here</u>."  (Pferrerbaum Decl., Ex.13, at 3 (emphasis added).) The SEC similarly found that "Impax and Teva executed two amendments to the [SAA] in March 2005 that purportedly resolved <u>certain unrelated accounting issues that had resulted in Impax's restatement of financial information</u>."  (<u>Id.</u>, Ex. 16, at 3, n.7 (emphasis added).)[5]  Moreover, nothing in either of these opinions even suggests that Impax's failure to file its financial statements and the resultant consequences has anything to do with Impax's issuance of 1Q04 and 2Q04 financial results in May and August 2004, or the November 2004 restatement of those results.

The lack of any connection between the requested documents and the issues in this case has been further established by Plaintiffs themselves and the Court.  Allegations concerning Impax's

---

[4]  Until the SEC's registration revocation Order in May of this year, Impax's stock traded on the Pink Sheets.

[5]  Impax has produced documents concerning these two amendments, and will continue to produce any additional documents it finds in its continuing review of tens of thousands of documents potentially responsive to Plaintiffs' requests.

4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

1  failure to file its periodic reports and delisting from NASDAQ first appeared in the First Amended

2  Complaint that Plaintiffs filed in September 2005 (Dkt. No. 56.)  In granting Impax's Motion to

3  Dismiss that complaint, the Court correctly noted in its March 3, 2006 Order (Dkt. No. 74, at 17)

4  that "at oral argument, Plaintiffs' counsel acknowledged that these facts are not the source of

5  Plaintiffs' economic loss."  In other words, there is no connection between these post-class period

6  events and any damages suffered by Plaintiffs as a result of the alleged fraud.  It is thus not

7  surprising that none of the Court's other various opinions on substantive motions in this case even

8  mention the alleged post-class period events.

9  ## III.    ARGUMENT

10         Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain

11  discovery of any matter, not privileged, that is relevant to the claim or defense of any party, … .

12  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to

13  lead to the discover of admissible evidence."  Fed. R. Civ. P. 26.  Under this standard, relevant

14  information includes information that is "reasonably calculated to lead to the discovery of admissible

15  evidence."  Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005).  Since

16  its amendment in 2000, Rule 26(b)(1) "limit[s] the breadth of discovery that can occur absent court

17  approval."  Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 968 (9th Cir. 2004).  "Under Rule

18  26(b)(1) … discovery must now relate more directly to a 'claim or defense' than it did previously,

19  and 'if there is an objection that discovery goes beyond material relevant to the parties' claims or

20  defenses, the court would become involved."  Id. (quoting Rule 26 advisory committee notes).[6]

21         Relevance for purposes of discovery is determined by reference to the claims asserted in the

22  complaint.  Thus, in Surfvivor Media, the Ninth Circuit held that in a patent infringement case, the

23  district court properly limited discovery to on those items specifically identified in the complaint as

24  infringing the plaintiffs' patent.  Surfvivor Media, 406 F.3d at 635.

---

25
26         [6]  Indeed, courts may deny discovery where the material sought is relevant, but only "minimally" so.  California Dept. of Soc. Servs. v. Leavitt, 523 F.3d 1025, 1034 (9th Cir. 2008).

27
28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

**Blank Rome LLP**
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

1    As discussed below, virtually all of the discovery requests about which Plaintiffs complain

2  are overbroad, seek information that has no relevance to the claims set forth in the 4th AC, and are

3  not even reasonably calculated to lead to the discovery of relevant information or admissible

4  evidence.

5    **A.    Post-Class Period Events Resulting from Impax's Inability to File SEC Periodic**
        **Reports are Unrelated to the Alleged Misrepresentations Concerning 1Q04 and**
6       **2Q04 Financial Results**

7    The principal dispute in Plaintiffs' Motion is whether documents concerning Impax's

8  inability to file annual and quarterly SEC reports beginning with its 2004 10-K are within the

9  permissible scope of discovery in this matter.  The relevant Requests seek documents concerning

10  communications with the OCA, the SEC, NASDAQ, Impax's auditors and others concerning the

11  company's delayed SEC filings (Request Nos. 21-23, 26, 28 , 29 and 50), communications

12  concerning the SEC's revocation of registration of Impax securities and NASDAQ's delisting of

13  Impax securities (Request Nos. 24, 27 and 50) and other matters related to Impax's dealings with the

14  OCA, SEC and NASDAQ (Request Nos. 46 and 50).

15    The documents sought in each of these Requests are well beyond the permissible scope of

16  discovery in this case.  The company's inability to timely file its 2004 10-K report and subsequent

17  periodic reports is unrelated to the purported fraud alleged in the 4th AC, which is based solely on

18  Impax's 1Q04 and 2Q04 financial results, issued in May and August 2004, and the restatement of

19  those results in November 2004.  Thus according to Plaintiffs' allegations, the alleged fraud began in

20  May 2004 and ended in November 2004.  Nonetheless, Plaintiffs attempt to conflate the restatement

21  of 1Q04 and 2Q04 financial results and the subsequent inability to timely file periodic reports with

22  the SEC with conclusory assertions, such as "the events during the Class Period . . . continue to

23  haunt the Company" (Mot., at 3) and "delayed and delinquent SEC filings are a result of Impax's

24  improper accounting for sales under the SAA, including sales of bupropion during the Class Period."

25  (Id., at 13.)  Neither these assertions nor similar conclusory statements in Plaintiffs' Motion explain

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP

Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

how or why the alleged fraud during the class period is related to Impax's subsequent inability to file its SEC periodic reports.  This is because no connection exists.

1.      **The 4th AC Alleges Defendants Made False Statements Concerning 1Q04 and 2Q04 Financial Results Because Impax Failed to Accurately Record Revenue For Sales of Bupropion for Two Specific Reasons**

It is undisputed, and in fact the 4th AC alleges, that Impax's first- and second-quarter financial statements overstated revenue because Teva failed to timely inform Impax of credits that Teva gave to its customers for product sales it made in the first quarter of 2004.  Impax did not know of Teva's credits until the third quarter of 2004.  (See 4th AC, ¶¶ 196, 217, 384.)  Plaintiffs thus attempt to make out a case of fraud by alleging that Impax's initial statements of 1Q04 and 2Q04 financial results were inflated because Impax improperly recognized revenue on sales of bupropion for two reasons: (1) the prices for bupropion sales were not fixed and determinable because Impax did not have information about credits and price adjustments between Teva and its customers, and (2) Impax did not have information upon which to accrue appropriate product return reserves.  (4th AC, ¶¶ 84, 89-94, 104-109.)[7]  In fact, Plaintiffs state that Defendants' alleged improper recognition of revenue for bupropion in 1Q04 and 2Q04 when the prices for products Teva sold to its customers were not fixed and determinable is "the heart of this case."  (Id., ¶ 91.)

Defendants deny that they made knowingly false or misleading statements concerning Impax's financial results in 1Q04 and 2Q04.  Impax restated those results, but did so shortly after Teva informed Impax for the first time in the third quarter of 2004 that it had made price adjustments to sales of bupropion going back to the first quarter of 2004.  Defendants do not dispute Plaintiffs' right to conduct discovery concerning accounting for sales of bupropion under the SAA in 2004.

---

[7]  The alleged improper accounting for pricing credits and adjustments and return reserves that are identified as the basis for the first alleged false and misleading statement – Impax's May 5, 2004 press release – that are discussed in the cited paragraphs of the 4th AC are repeated throughout the 4th AC as the basis for the other eighteen alleged false and misleading statements regarding 1Q04 and 2Q04 financial results.  (See 4th AC, ¶¶ 158-59, 187-88, 196, 198, 208-09, 218-19, 241-42, 250-51, 275-76, 284, 287-88, 297-98, 310-11, 320-21, 330-31, 342-43, 353-54, 366-67, 376-77, 393-94.)

---

7

**Blank Rome LLP**
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

1    Indeed, Defendants have produced thousands of pages of documents concerning this issue and will

2    continue to produce documents on this topic if any are discovered in Defendants' review of tens of

3    thousands of additional potentially responsive documents.  But, the SEC and ALJ Opinions make

4    clear that Impax's restatement of first- and second-quarter financial results has nothing to do with

5    Impax's failure to file its subsequent SEC periodic reports and the events that followed.

6            **2.      Accounting For Price Adjustments and Reserve Accrual for 2004 Sales
                        Under the SAA Was Resolved in March of 2005 and Did Not Contribute
7                       to Impax's Failure to Timely File its 2004 10-K or Other SEC Reports**

8            Issues concerning accounting for bupropion sales in 2004 and price adjustments and reserves

9    for these sales that caused Impax to restate 1Q04 and 2Q04 financial results were resolved in March

10   2005.  To conclusively resolve the issues concerning credits, adjustments and reserves that arose

11   during 2004, Impax and Teva agreed to the net sales figures and margin allocable to Impax for 2004

12   sales under the SAA and agreed not to make further adjustments to the agreed amounts.  (See

13   Kozloff Decl.,[8] Ex. 1.)  Impax refers to this agreement as the "2004 Close-Out Letter."  (Id.)  In

14   addition, Impax and Teva amended the SAA to assure that issues of the type that lead to the

15   restatement—i.e., the failure of Teva's reports to accrue for returns, price adjustments, etc.—would

16   not occur again.  Therefore, as of March 2005, to the extent prices for sales under the SAA had not

17   been fixed and determinable, they became fixed and determinable under the 2004 Close-Out Letter.

18   And, to the extent Impax had not previously been able to determine the appropriate return reserve for

19   sales under the SAA, the 2004 Close-Out Letter rectified this situation for all 2004 sales.[9]

20   Accordingly, the alleged accounting improprieties that Plaintiffs alleged caused Impax to overstate

21   1Q04 and 2Q04 financial results were resolved and did not factor into Impax's delay in filing its

22   subsequent SEC periodic reports.

23           [8]  The "Kozloff Declaration" refers to the Declaration of Louis H. Kozloff in Support of
24   Defendants' Opposition to Plaintiffs' Motion to Compel filed concurrently with Defendants'
     Opposition.

25           [9]  Defendants have produced numerous documents concerning the Close-Out Letter and the
26   amendments, and will produce additional documents that are discovered in their review of tens of
     thousands of additional potentially responsive documents.

27                                                      8

Blank Rome LLP
Watergate 600 New Hampshire Ave., NW Washington, DC 20037

1   More importantly, the SEC and ALJ Opinions in the proceedings concerning revocation of

2   Impax's registration make clear that the reasons alleged by Plaintiffs for Impax's overstated 1Q04

3   and 2Q04 revenues had no role in Impax's inability to file its subsequent SEC periodic reports.  In

4   its Initial Decision in those proceedings, the ALJ found that "Impax restated its financials for the

5   first two quarters of 2004, for reasons that are unrelated to the issues presented here." (See

6   Pfefferbaum Decl. Ex. 13, at 3 (emphasis added).)  The SEC itself further found the lack of a

7   connection between the 1Q04 and 2Q04 restatements and Impax's untimely periodic reports by

8   explaining that the March 2005 amendments to the SAA and the 2004 Close-Out Letters' agreement

9   on net sales and margins allocable to Impax under the SAA for 2004 resolved the "unrelated

10  accounting issues that had resulted in Impax's restatement of financial information." (Id., Ex. 16, at

11  3, n.7 (emphasis added).)  Nothing in the SEC and ALJ Opinions even suggests that Impax's failure

12  to file its subsequent SEC periodic reports has any connection to the alleged fraud in this case.

13  Accordingly, Plaintiffs' statement, repeated throughout their Motion, that "but for" Impax's

14  improper accounting in 1Q04 and 2Q04, subsequent events such as Impax's communication with the

15  OCA, delinquent SEC filings, NASDAQ delisting or revocation of SEC registration (Plfs.'s Mot., at

16  11, 12, 13, 14) is belied by the findings of the SEC's ALJ after an administrative hearing on Impax's

17  filing failures, and the SEC itself.  This demonstrates that no connection exists between Impax's

18  restatement of 1Q04 and 2Q04 financial results and delayed SEC filings and all that followed.

19          **3.      Plaintiffs Cannot Conduct Discovery on Post-Class Period Events That
20                   Are Unrelated to the Issues Alleged as the Basis for Impax's False and
                    Misleading Statements**

21  Under the Private Securities Litigation Reform Act of 1995 ("PLSRA"), Plaintiffs are

22  required to plead falsity with particularity.  See Sparling v. Daou (In re Daou Sys., Inc. Sec. Litig.),

23  411 F.3d 1006, 1014 (9th Cir. 2005).  As noted, the 4th AC identifies the two reasons why Plaintiffs

24  allege Impax's statements on 1Q04 and 2Q04 financial results were incorrect.  Plaintiffs thus have

25  identified the basis for their claims, and their particular allegations of falsity frame the scope of

26  discovery.  Plaintiffs cannot speculatively cast about to obtain discovery on other matters unrelated

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP

Watergate 600 New Hampshire Ave., NW Washington, DC 20037

1  to their claims in the hope that they will uncover some new fraud.  See Bly-Magee v. California, 236

2  F.3d 1014, 1018 (9th Cir. 2001) (stating that fraud must be pled with particularity to give notice to

3  defendants of the specific fraudulent conduct against which they must defend, but also "to deter the

4  filing of complaints as a pretext for the discovery of unknown wrongs." (emphasis added)); see also

5  In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 326 (S.D.N.Y. 2003) ("The claim's

6  particularity narrows the potential scope of discovery.").

7         And the Court should make no mistake that Plaintiffs' Requests for Documents concerning

8  the events following Impax's failure to timely file its 2004 10-K and subsequent periodic reports is a

9  fishing expedition seeking exactly this type of irrelevant information.  Indeed, Plaintiffs' Motion

10  makes a point of stating that Impax's discussions with the OCA and evaluation of its revenue

11  recognition policy for sales under the SAA likely will lead to further restatements of 2004 financial

12  results.  (Plfs.' Mot., at 2, 12, 14.)  In other words, Plaintiffs seek discovery, not to prove the case of

13  fraud alleged in the 4th AC, but based on a hope that when Impax becomes current with its

14  delinquent SEC periodic reports, Plaintiffs may be first to make new claims of fraud.  It is hard to

15  imagine a clearer statement of the purpose behind these requests.[10]  Plaintiffs thus are not seeking to

16  litigate this case, but a new case that has not been filed and for which they have no factual basis.

17         Accordingly, Defendants' objections to Plaintiffs' Requests for Documents concerning

18  Impax's inability to timely file SEC reports, and resulting communications with OCA, revocation of

19  Impax's SEC registration and NASDAQ delisting are justified.  These post-class period events have

20  no relation to the allegations of fraud set forth in the 4th AC.  Defendants have not, as Plaintiffs

21  contend, drawn an arbitrary line cutting off discovery of post-class period events.  (See Plfs.' Mot.,

22

23
_____

24      [10]  Defendants note that even if Impax does end up restating its 1Q04 and 2Q04 financial
    statements, the SEC and ALJ Opinions make clear that this will be the result of a change in

25  accounting method based on recent accounting pronouncements and discussions with outside
    accounting experts, Impax's auditors and the OCA.  Such a restatement is as far removed from fraud

26  as can possibly be.

27
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
28  PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**Blank Rome LLP**
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

at 9.)  Plaintiffs drew the line when they framed their claim and the corresponding scope of

discovery with particular allegations of fraud.

Finally, Plaintiffs assert that there are instances in which post-class period events can present

admissible evidence on relevant topics such as scienter, intent and knowledge.  See In re Seagate

Tech. Sec. Litig., 1993 U.S. Dist. LEXIS 18065 (N.D. Cal. June 10, 1993).[11]  However, this is not

one of those instances.  There is no relationship, let alone a "powerful and direct" relation as

Plaintiffs contend (Plfs.' Mot., at 9), between the post-class period events and the alleged false and

misleading statements during the class period, as the SEC and ALJ Opinions make clear.  Therefore,

the post-class period events are not within the permissible scope of discovery.  See Bob Barker Co.

v. Ferguson Safety Products, Inc., 2006 U.S. Dist. LEXIS 14789, at *8-9 (N.D. Cal. Mar. 9, 2006)

(Seeborg, M.J.).

In Bob Barker Co., the Court denied a Motion to Compel where the requests sought

information that "was so far removed from [the information] that will ultimately be admissible at

trial that the requests cannot be deemed 'reasonably calculated to lead to the discovery of admissible

evidence.'"  Id., at *8-9.  The same is true with respect to the discovery of post-class period events

Plaintiffs seek here.  Accordingly, the Court should deny Plaintiffs' Motion to Compel regarding

Request Nos. 21-24, 26-29, 46 and 50.

**B.      Defendants Have Not Arbitrarily or Improperly Limited Discovery to Documents Related to Buprorion Sales in 2004**

The 4th AC's fraud claims unarguably focus on, and indeed are limited to, Impax's sales of

Bupropion in 2004.  The class period is May 5, 2004 through November 3, 2004.  (4th AC, ¶ 2).

The alleged false and misleading statements concern Impax's financial results in 1Q04 and 2Q04,

---

[11]  Plaintiffs' citation to In re United States Aggregates, Inc. Sec. Litig., 235 F. Supp. 2d 1063 (N.D. Cal. 2002) to support its argument regarding discovery of post-class period events incorrectly states the holding of the case.  Plaintiffs' assertion that "the court permitted discovery into post-class period events."  (Plfs.' Mot., at 9.)  However, the court did no such thing.  The case does not even involve a motion to compel discovery.  Instead, the cited footnote states that the case involves a motion to strike allegations of post-class period events from the plaintiffs' complaint.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**Blank Rome LLP**

Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

1  which were restated in November 2004.  And Plaintiffs' Requests themselves establish January 1,

2  2004 as the staring point for the relevant time period for their Requests.  (Pfefferbaum Decl., Ex. 2,

3  at 7.)  Plainly, the relevant time period for Plaintiffs' Requests is 2004.  Despite these facts,

4  Document Requests 4, 10, 12, and 18 seek documents concerning sales of and accounting for

5  bupropion products from 2004 to the present.  These Requests are clearly overbroad and seek

6  information that is neither relevant to this case nor reasonably calculated to lead to the discovery of

7  admissible evidence.  See Bob Barker Co., at *8-9.

8         **1.**    **Defendants Have Agreed to Produce All Responsive Documents
              Concerning Accounting for Impax's Buprorion Sales in 2004**

9        As noted, Plaintiffs' Request Nos. 4, 12 and 18 seek documents related to accounting for

10  sales of bupropion under the SAA, including documents related to returns or discounts for bupropion

11  sales and accrual of reserves for these sales.  Accounting for 2004 bupropion sales and the reserves

12  and credits for these sales was completed in March 2005 when Impax and Teva agreed to net sales

13  and Impax's margin allocation for 2004 sales under the SAA in the 2004 Close-Out Letter.

14  Therefore, the relevant time period established by the 4th AC with respect to accounting for Impax's

15  sales of bupropion is January 1, 2004 to April 15, 2005.  Defendants have agreed to produce, and in

16  fact have produced, numerous documents concerning sales of buproprion for this period.  Therefore,

17  Plaintiffs will obtain relevant discovery.  Defendants have not imposed an arbitrary restriction.

18        Further, as to Request No. 4 specifically, Plaintiffs' Motion comes as a complete surprise.

19  Defendants understood that issues related to Request No. 4 were resolved in the meet and confer

20  process when Defendants agreed to produce documents concerning 2004 bupropion sales created

21  before April 15, 2005, so that documents related to negotiation and execution of the 2004 Close-Out

22  Letter would be included.  (Pfefferbaum Decl., Ex. 7, at 4-5.)  Defendants further agreed to

23  reexamine whether April 15, 2005 is the appropriate cut-off date in the event they discover

24  responsive documents concerning accounting for sales of bupropion in 2004 that were created after

25

26

27  12

28  DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

April 15, 2005.  (Pfefferbaum Decl., Ex. 7, at 5-6.)  There were no further discussions of Request No. 4 or the relevant time period in subsequent meet and confer discussions between counsel.[12]

In any event, Plaintiffs' argument concerning Request No. 4 again recites events that occurred after the class period that they contend have a connection to the fraud claims alleged in the 4th AC.  As has been established supra, and by the SEC and ALJ Opinions, those events have no relation to the 4th AC's claims.  Reading Plaintiffs' argument with utmost liberality, however, the only potentially persuasive statement Plaintiffs make – that "defendants' accounting methods for products sold under the SAA are still being finalized, including defendants' accounting for returns and chargebacks and accrual of reserves"  (Plfs.' Mot. at 16.) – is incorrect.  The 2004 Close-Out Letter of March 2005 accomplished this very task.  As noted, Defendants have produced numerous documents concerning the 2004 Close-Out Letter (as well as the amendments to the SAA made in the first-quarter of 2005 to address Teva's reporting of sales, including returns, chargebacks and accrual of reserves) and intend to produce whatever additional non-privileged documents they find

_____

[12]  In fact, Plaintiffs did not raise issues related to this Request in subsequent meet and confer communications, despite the fact that Defendants offered to discuss any Request over which there was disagreement.  (See Kozloff Decl., ¶¶ 8-10; Pfefferbaum Decl., Ex. 8-12 (containing no further discussion of Request No. 4 or the relevant time period for documents related to sales of bupropion in 2004).)

Unfortunately, this is not the only instance where Plaintiffs' Motion to Compel includes issues that were either not discussed or were apparently resolved in the meet and confer process.  Plaintiffs' Motion and Rule 37-2 Statement in Support (Dkt. No. 196) seeks to compel production of documents responsive to Request Nos. 7, 31, 35 and 37 even though these Requests were not addressed in Plaintiffs' initial meet and confer letter (Pfefferbaum Decl., Ex. 5) or in any of the discussions that followed.  (Id., at Ex. 7-12.)  In other instances, after meeting and conferring, Plaintiffs stated that they were satisfied with Defendants' offers of production subject to revisiting issues after review of Defendants' production of documents.  (Id., Ex. 7, at 6 (concerning Request No. 5) and 8 (concerning Request No. 15).)  Plaintiffs' Rule 37-2 Statement even states that Plaintiffs intend to review Defendants' production regarding these Requests to evaluate their sufficiency before raising issues with the Court.  (Dkt. No. 196, at 5 & 17.)  The Court should deny Plaintiffs' Motion with respect to these Requests until Plaintiffs identify the basis for any contention that Defendants' production is deficient and further meet and confer as required under Local Rule 37-1(a).  See Use Techno Corp. v. Kenko USA, Inc., No. 06-02754, 2007 WL 3045996, at *1 (N.D. Cal. Oct. 18, 2007) (denying Motion to Compel for failure to meet and confer).

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

in their review of tens of thousands of additional potentially responsive documents.  Accordingly, Defendants' production of documents from before the class period through and including the 2004 Close-Out Letter in March 2005 is appropriate and based on the rational and appropriate time period.

### 2.   Documents Concerning Accounting Methods Impax May Have Considered Using after 2004 to Account for Product Sales During 2004 Are Not Relevant or Reasonably Calculated to Lead to Admissible Evidence

Defendants have properly objected to Request No. 10 to the extent it seeks documents regarding revenue recognition policies Impax used or considered after December 31, 2004 for the sale of Bupropion or other products under the SAA.  Impax has produced and will produce documents regarding revenue recognition policies used or considered during the class period.  This will allow Plaintiffs to test their theory that Defendants knowingly or recklessly employed improper revenue recognition policies.

However, documents concerning any revenue recognition policy Impax may use or considered using for sales under the SAA after 2004 are neither relevant to the Plaintiffs' allegations of improper revenue recognition during the class period, nor reasonably calculated to lead to the discovery of relevant information or admissible evidence.

Plaintiffs again refer to the post-class period inability of Impax to file SEC periodic reports, which Plaintiffs contend "directly related to Class Period events and pertains directly to revenue recognition and accounting for bupropion under the SAA."  (Plfs.' Mot., at 16.)  However, as stated above, the inability to timely file SEC reports was unrelated to the restatement of financial results on which Plaintiffs' claims are based.  See supra, III.A.  Moreover, other than a conclusory statement that these documents are relevant to demonstrating falsity, materiality, knowledge and scienter, Plaintiffs do not contend how a revenue recognition policy that Impax may end up using, or may have considered using at some time in 2005, 2006, 2007 and 2008, can be relevant to demonstrate that Impax knew that it should have used a particular revenue recognition policy in 2004.  See Bob Barker Co., supra, at *8-9 (denying motion to compel seeking information far removed from what

Blank Rome LLP
Watergate 600 New Hampshire Ave, NW Washington, DC 20037

1    was or could be relevant).  Accordingly, the Court should deny Plaintiffs' Motion with respect to

2    Request No. 10.

3    **C.    Documents Regarding Impax's Accounting Policies for Sales of Products Other Than Buproprion Through Distributors Other Than Teva**

4

5    Plaintiffs seek documents regarding agreements between Impax and companies other than

6    Teva for marketing, sale and distribution of Impax products (Request No. 8), documents concerning

7    accounting for products sold through channels other than the SAA (Request No. 9) and documents

8    regarding Impax's recognition of revenue for products other than buproprion that Impax sold under

9    the SAA (Request No. 11).  Plaintiffs contend that these documents are relevant to scienter – i.e.,

10   whether Defendants knew that Impax's method of recognizing revenue for buproprion sales was

11   improper or were reckless in not knowing these facts.  (Plfs.' Mot. 16-17.)

12   Having considered Plaintiffs' position stated in their Motion, Impax's publicly available

13   documents and documents that Defendants have produced that are responsive to other Requests,

14   Defendants will withdraw their objection to producing documents responsive to these Requests to

15   the extent those documents concern accounting for sales made in 2004 and reflect information in

16   Impax's possession during 2004.  Defendants have already produced documents responsive to these

17   requests and will produce any additional non-privileged responsive documents subject to an

18   objection that documents created after April 15, 2005 (which is after the Teva 2004 Close-Out Letter

19   was finalized) are not discoverable.  In light of Defendants' agreement to produce these responsive

20   documents, the Court should deny Plaintiffs' Motion to Compel on the remaining issues regarding

21   Request Nos. 8, 9 and 11.  Documents that were not available before or during the Class Period

22   cannot be relevant to what Defendants knew or should have known during the Class Period.

23   **D.    Production of Documents Concerning Compensation Paid to Impax Executives is Unwarranted**

24   This Court has already indicated that Plaintiffs' allegations concerning compensation paid to

25   Impax executives and any connection between compensation and the company's financial

26   performance is insufficient to create an inference of scienter at the pleadings stage.  Judge Ware's

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**Blank Rome LLP**

Watergate 600 New Hampshire Ave., NW Washington, DC 20037

1   March 1, 2006 Order Granting Defendants' Motion to Dismiss with Leave to Amend (Dkt. No. 74)

2   addressed this issue head on.  The Court stated that allegations that the Defendants had a motive to

3   commit fraud because it would increase their compensation were insufficient to support a strong

4   inference of scienter.  The Court reasoned,

5

6   > Such legitimate motives concerning compensation as tied to financial
> performance are shared by virtually all corporations and their officers.
> See Lipton, 284 F.3d at 1038 ("if scienter could be pleaded merely by
> alleging that officers and directors possess motive and opportunity to
> enhance a company's business prospects, virtually every company in
> the United States that experiences a downturn in stock price could be
> forced to defend securities fraud actions").

7

8

9

10   (Order Granting Motion to Dismiss, Dkt. No. 74, at 14.)  Accordingly, Plaintiffs' Requests for

11   documents regarding compensation paid to Dr. Ann Hsu (the wife of Impax's CEO Larry Hsu)[13]

12   under a consulting arrangement (Request No. 33), and documents related to the deferral of executive

13   bonuses (Request No. 32) are neither relevant nor even likely to lead to any relevant information or

14   admissible evidence concerning whether the defendants had a financial motivation for making false

15   and misleading statements.

16       Plaintiffs nonetheless attempt to relitigate this issue by justifying their request for

17   information concerning compensation paid to Dr. Hsu with unfounded speculation that this

18   compensation was improper.  Plaintiffs assert that Dr. Hsu was compensated by Impax and that she

19   is Larry Hsu's wife (4th AC, ¶ 453) and then assert (without foundation) that the employment and

20   compensation of Dr. Hsu "bears all the hallmarks of impropriety."  (Plfs.' Mot. Ex. 18.)  Plaintiffs

21   do not allege—and indeed have no factual basis to allege—that Dr. Hsu did not earn this

22   compensation or that it was improper for Impax to compensate her for her services.  Nor do they

23   even attempt to explain what her consulting arrangement and compensation might even possibly

24   have to do with the fraud alleged in the 4th AC.  It thus appears that Plaintiffs' purpose in seeking

25

26   _____
     [13]  During the Class Period, Larry Hsu was Impax's President.

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP
Watergate 600 New Hampshire Ave., NW Washington, DC 20037

1   such information is to harass Impax's CEO by targeting his wife.  The Court should not tolerate such

2   tactics.

3       Plaintiffs' additional attempt, despite the Court's March 2006 holding, to obtain discovery

4   concerning the Impax Board of Director's Compensation Committee's decision to defer payment of

5   executive bonuses earned in 2003 is plain and simple nonsense.  Plaintiffs speculate that Impax's

6   Compensation Committee decided to defer payment of 2003 executive bonuses so that Impax's

7   executives could benefit from "artificially inflated revenues in 2004."  (Plfs.' Mot. 18.)  They

8   nowhere even attempt to explain, however, how Impax's 2004 financial results, and any 2004

9   bonuses earned thereon, would have any effect on Impax's 2003 financial results and bonuses earned

10  thereon.  Moreover, the information Plaintiffs cite in their attempt to justify obtaining discovery cuts

11  against Plaintiffs' claim.  The decision to defer 2003 bonus payments was made during the

12  Compensation Committee's meetings in 2003, before Impax even obtained FDA approval to market

13  bupropion, which was the event that swung Impax's financial performance from a loss to a profit in

14  the first quarter of 2004.  (Kozloff Decl., Ex. 2, April 12, 2004 Proxy Statement, at 12, 14, (reporting

15  on activities of the Compensation Committee in 2003); Ex. 3 and 4 (press releases announcing FDA

16  approval of Impax's generic version of Wellbutrin® 100mg and 150mg).

17      In short, Plaintiffs' speculation is insufficient to reopen the Court's March 2006 holding or

18  create an inference of scienter sufficient to launch Plaintiffs' fishing expedition.  Accordingly,

19  Defendants' objection to Request No. 32 is proper in that the Request seeks documents that are

20  neither relevant nor reasonably calculated to lead to the discovery of relevant information or

21  admissible evidence.  See Bob Barker Co., at *8-9.

22      **E.    Defendants' Objections to Request No. 13 are Proper and Should be Sustained**

23      Request No. 13 seeks documents relating to Impax's "overall reduction in reserves accrued

24  during 1Q04 and 2Q04."  This is based on Plaintiffs' misconception that Impax "decided" to reduce

25  its reserves in the first quarter of 2004 when sales increased.  They point to a 67.1% quarterly

26  reduction in reserves in 1Q04 (from 37.7% to 12.4% of sales) while Impax enjoyed a 173% increase

27

---

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

1   in sales.  Plaintiffs allege that the decrease in reserves in 1Q04 in the face of an increase in sales

2   should have been a red flag indicating that Impax's accounting methodologies were improper.  (4th

3   AC, ¶¶ 123 & 435.)

4          What Plaintiffs contend was a significant and alarming reduction in reserves is, as they well

5   know, the result of an apples to oranges comparison.  Impax's 173% increase in sales from the

6   fourth quarter of 2003 to the first quarter of 2004 occurred because Impax began selling bupropion

7   under the SAA during the first quarter of 2004.  As the 4th AC itself alleges, Impax's 1Q04 sales

8   revenue increased significantly as a result.  However, accruals for reserves, as a *percentage of*

9   *revenue*, did not increase because, as Impax explained in its 1Q04 and 2Q04 financial statements,

10  Impax reported the "net sales" reported by Teva, an amount that already took account of such

11  accruals.  Stated differently, Impax included the net sales that Teva reported on its financial

12  statements' line item for gross sales revenue; Teva's net sales figure had already deducted the

13  reserve accruals.  (Dkt. No. 173, Defendants' Answer to Fourth Amended Consolidated Class Action

14  Complaint, ¶¶ 435 & 442.)  Therefore, it is no surprise that reserves <u>as a percentage</u> of sales revenue

15  would drop from the fourth quarter of 2003 to the first quarter of 2004.  Reserves in the fourth

16  quarter 2003, in which Impax made no product sales under the SAA and for which Impax accrued

17  reserves on its books (the apples), would necessarily be a higher percentage of sales than in the first

18  quarter 2004, when Impax had significantly higher sales under the SAA under which gross revenue

19  were net of reserves (the oranges).

20         Therefore, Plaintiffs' rational for requiring production of documents responsive to Request

21  No. 13 that Impax made a "decision to reduce reserves" in 1Q04 and 2Q04 from previous quarters

22  is, as Plaintiffs know, unsupported by the facts.  There was no "decision" to reduce reserves as to

23  amount, and the "reduction" in reserves as a *percentage of revenue* was expected.  Therefore, it

24  would not raise red flags about Impax's accounting methodology.  Accordingly, the documents

25  sought by Request No. 13 will not serve to establish facts related to fraud, falsity, scienter or

26

27

28

**Blank Rome LLP**
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

1    materiality.  The Court should sustain Defendant objections to this Request and deny Plaintiffs'

2    Motion to Compel.

3        **F.      Defendants' Objections to Request No. 42 are Proper and Should be Sustained**

4            Request No. 42 seeks documents concerning the departure of Defendant Barry R. Edwards

5    from employment as Impax's CEO in October of 2006.  The Court has already determined that

6    Mr. Edwards' resignation as Impax's CEO, which was announced over eighteen months after the

7    restatement of 1Q04 and 2Q04 financial results, did not raise an inference that Mr. Edwards acted

8    with scienter with respect to Impax's 1Q04 and 2Q04 financial results.  (Dkt. No. 127, Order

9    Denying Defendants Motion to Dismiss Third Amended Consolidated Complaint, at 14.)  In this

10   Order, the Court found that the Plaintiffs' Third Amended Consolidated Complaint failed to allege

11   facts that tied Mr. Edwards' resignation to the financial restatements eighteen months earlier.  (Id.)

12   The same is true of the 4th AC.  Plaintiffs' assertion that Mr. Edwards' resignation was "likely"

13   related to the restatements (4th AC, ¶ 404), is belied by the Court's July 2007 Order.  Accordingly,

14   the Court should sustain Defendants' Objections to Request No. 42 and deny the Motion to Compel.

15       **G.      Defendants' Objections to Request No. 44 are Proper and Should be Sustained**

16           In Request No. 44, Plaintiffs seek documents concerning the reason Deloitte decided not to

17   stand for reappointment as Impax's auditor in November of 2005.  Plaintiffs contend that documents

18   responsive to this Request are relevant to the allegations that Defendants improperly accounted for

19   sales, reserves and revenue under the SAA "because defendants decided to use an accounting

20   methodology in face of disagreement with Deloitte as to the proper methodology for recognizing

21   revenue under the SAA."  (Plfs.' Mot., at 20.)  However, Plaintiffs offer no support for the allegation

22   that defendants used an accounting methodology "in face of disagreement with Deloitte," nor can

23   they because no such disagreement exists.  Indeed, in the SEC 8-K report filed by Impax that

24   announced Deloitte's decision not to stand for reappointment, Impax certified that there was an

25   absence of any disagreements on accounting principles between Impax and Deloitte.  (Kozloff Decl.,

26

27

28

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

Blank Rome LLP
Watergate 600 New Hampshire Ave., NW Washington, DC 20037

1  Ex. 5.)  As Plaintiffs also know, in an amended Form 8-K filing, Impax included a letter from

2  Deloitte in which Deloitte confirmed that there were no disagreements.  (Kozloff Decl., Ex. 6.)

3      Plaintiffs' Motion also attempts to justify this discovery by reference to the same post-class

4  period events involving Impax's failure to timely file SEC periodic reports which, as discussed

5  above, were unrelated to the alleged accounting improprieties that caused Impax to restate its 1Q04

6  and 2Q04 financial results and that are at issue in Plaintiffs' 4th AC.  Accordingly, the Court should

7  deny Plaintiffs' Motion to Compel with respect to Request No. 44.

8      **H.  Defendants' Objections Concerning Plaintiffs' Vague, Overly Broad and Unduly Burdensome Requests Are Appropriate**

9  Defendants asserted valid objections to the overbroad or vague nature of Plaintiffs' Requests

10  where applicable.  Many of Plaintiffs' Requests sought what would be voluminous documents

11  concerning aspects of Impax's business that are in no way related to the issues in this litigation.  For

12  the most part, Defendants have not withheld documents based on these objections in their production

13  of documents to date.  However, Defendants' collection and review of potentially responsive

14  documents is continuing and given the voluminous amount of documents and electronically stored

15  information Defendants have collected and are in the process of reviewing for production, it may

16  become necessary for Defendants to rely on the overbroad nature of the requests and the burden on

17  Defendants of producing the requested information.  Defendants asserted objections based on the

18  overbroad nature of Plaintiffs' Requests to preserve their objections in the event production of the

19  responsive document presents an undue burden.  As stated above, Defendants are continuing to

20  review tens of thousands of documents for responsiveness to Plaintiffs' Requests.  Defendants will

21  supplement their objections with specific information concerning the overbroad nature of the

22  Requests and undue burden of production if it becomes necessary for Defendants rely on these

23  objections to protect themselves from undue burden.

24      In addition, Defendants have not merely asserted boilerplate objections and refused to

25  explain the basis for these objections.  In fact, counsel discussed specific instances of overbroad and

26  vague Requests in the meet and confer process, and Defendants' counsel understood that agreements

27  ────────────────────────────────
28
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

Blank Rome LLP

Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

were reached regarding the scope of Plaintiffs' Requests and Defendants' obligation to respond.  For example, Request No. 5 sought documents and communications concerning the formulation, dosing and production of bupropion from January 1, 2001 to the present.  Defendants agreed to produce responsive documents for the relevant time period subject to objections regarding the overbroad nature of the request.  During the parties' meet and confer conference on August 20, 2008, Defendants explained that the Request was overbroad and unduly burdensome because documents concerning the formulation, dosing and production of buprorion would include a broad range of technical or scientific information unrelated to the matters in the case.  Plaintiffs in fact agreed that they were not seeking production of these broad categories of documents, and no further discussions of Request No. 5 took place during the meet and confer process.  (Pfefferbaum Decl., Ex. 7, at 6; Kozloff Decl., ¶¶ 9-10.)  Accordingly, Defendants understood the issues regarding Request No. 5 to be resolved and that Plaintiffs would not pursue a motion to compel discovery concerning this Request.  Nonetheless, Plaintiffs' Motion seeks to compel production of documents responsive to this Request.  (Plfs.' Mot., at 20-21; Rule 37-2 Statement, at 5-6.)

The meet and confer process regarding Request No. 13 provides an example of Defendants explaining the basis for their objection that Plaintiffs' requests are vague and uncertain.  As discussed above, Request No. 13 seeks documents concerning Impax's "overall reduction in reserves accrued during 1Q04 and 2Q04."  Defendants identified the phrase "overall reduction in reserves" as the uncertain term, and the Plaintiffs attempted to clarify the Request by stating that it referred to what Plaintiffs believed was the company's "decision" to reduce reserve accruals for sales in 2004.  With this clarification, Defendants explained that Impax did not reduce its reserve accrual.  Reserves were a smaller percentage of sales in 1Q04 because that quarter was the first quarter in which Impax sold products under the SAA under which gross revenue was net of reserves.  See supra, III.E.  Although this did not resolve Plaintiffs' and Defendants' disagreement regarding Request No. 13, it should have.  Plaintiffs cannot claim that Defendants did not explain the basis for their objection.

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037

**I.      Defendants' Objections Based on Privilege Are Appropriate**

Plaintiffs attempt to overrule Defendants' privilege objections is baseless.  Defendants without question are entitled to assert objections and withhold privileged documents containing confidential attorney-client communications or protected attorney work product.  Plaintiffs' Motion on this topic should be stricken because Plaintiffs have failed to comply with the meet and confer requirements of Federal Rule of Civil Procedure 37(a)(2)(B) and Local Rule 37-2 before moving to compel production of privileged documents.  Privilege issues were never discussed during the meet and confer process.  (See Kozloff Decl., ¶ 11.)  Therefore, the Court should deny Plaintiffs' Motion to the extent it seeks production of privileged documents.  See Use Techno Corp. v. Kenko USA, Inc., No. C-06-02754 EDL, 2007 WL 3045996, at *1 (N.D. Cal. Oct. 18, 2007) (denying motion to compel for failure to meet and confer).

Moreover, if Plaintiffs had fulfilled their obligation to meet and confer before filing this Motion, it is likely that it would not have been necessary for Plaintiff to involve the Court on this issue.  Defendants have not asserted a blanket privilege objection to producing documents responsive to Plaintiffs' Requests.  Defendants have withheld documents based on privilege only in the limited circumstances where a document contains privileged materials.  Plaintiffs' claim that Defendants have not stated when a privilege log would be provided.  Defendants entire first production of responsive documents on August 25, 2008 totaling over 5,000 pages did not contain privileged materials, therefore it was not necessary to provide a corresponding privilege log.  Defendants are finalizing their privilege log for their September 19, 2008 production of over 11,000 pages of documents.  Defendants will provide the privilege log to Plaintiffs by October 13, 2008.

**J.      Defendants Properly Objected to Producing Documents "Reviewed and Relied Upon" in Connection with the Future Rule 30(b)(6) Deposition of Impax**

Request No. 2 seeks documents that Defendants reviewed and relied upon in responding to Plaintiffs' Rule 30(b)(6) deposition of Impax.  Defendants agreed to produce responsive documents, subject to their valid objections, at the Rule 30(b)(6) deposition, as provided under Rule 30(b)(2), which calls for production of documents at the deposition.  Plaintiffs have not met and conferred

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

concerning production of documents responsive to Request No. 2.  Accordingly, the Court should

deny Plaintiffs' Motion related to Request No. 2.  See Use Techno Corp., 2007 WL 3045996, at *1.

**IV.    CONCLUSION**

      For all of the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiffs' Motion to Compel Production of Documents.

Dated:  October 8, 2008             BLANK ROME LLP

                               BINGHAM MCCUTCHEN LLP


                                s/ Louis H. Kozloff
                               JOSEPH O. CLICK (*pro hac vice*)
                               LOUIS H. KOZLOFF (*pro hac vice*)

                               *Counsel for Defendants*

**Blank Rome LLP**
**Watergate  600 New Hampshire Ave., NW  Washington, DC 20037**

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM THE IMPAX DEFENDANTS – C-04-4802-JW (RS)

**CERTIFICATE OF SERVICE**

  I certify that on October 8, 2008, I electronically filed with the Clerk of the Court using the ECF System a copy of Defendants' Opposition to Plaintiffs' Motion to Compel Production of Documents from Impax Defendants; Declaration of Louis H. Kozloff in Support of Opposition to Motion to Compel and Proposed Order.  Service will by made electronically through the ECF system to all parties registered for electronic filing.

  I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 8, 2008.


        s/ Louis H. Kozloff
        Louis H. Kozloff

Blank Rome LLP
Watergate  600 New Hampshire Ave., NW  Washington, DC 20037