1    COUGHLIN STOIA GELLER
       RUDMAN & ROBBINS LLP
2    AZRA Z. MEHDI (220406)
     DANIEL J. PFEFFERBAUM (248631)
3    SUZANNE H. KAPLAN (247067)
     100 Pine Street, Suite 2600
4    San Francisco, CA  94111
     Telephone:  415/288-4545
5    415/288-4534 (fax)
     amehdi@csgrr.com
6    dpfefferbaum@csgrr.com
     shkaplan@csgrr.com
7           – and –
     LAURIE L. LARGENT (153493)
8    655 West Broadway, Suite 1900
     San Diego, CA  92101
9    Telephone:  619/231-1058
     619/231-7423 (fax)
10   llargent@csgrr.com

11   Lead Counsel for Plaintiffs

12   [Additional counsel appear on signature page.]

13               UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                     SAN JOSE DIVISION

16   In re IMPAX LABORATORIES, INC.        )    Master File No. C-04-4802-JW
     SECURITIES LITIGATION                 )
17   _____ )   CLASS ACTION
                                           )
18   This Document Relates To:             )    PLAINTIFFS' REPLY BRIEF IN SUPPORT
                                           )    OF MOTION TO COMPEL PRODUCTION
19        ALL ACTIONS.                     )    OF DOCUMENTS FROM IMPAX
     _____ )   DEFENDANTS
20
                                                DATE:          October 29, 2008
21                                              TIME:          9:30 a.m.
                                                COURTROOM:     The Honorable
22                                                             Richard G. Seeborg

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................3

      A.    Plaintiffs' Allegations Warrant Production of the Discovery Sought ....................3

            1.    Documents Related to Post-Class Period Events Are Relevant and
                  Discoverable ...............................................................................................4

            2.    The 2004 Close-Out Letter Did Not Resolve Defendants' Fraud...............6

            3.    Defendants' "Newly Announced Accounting Pronouncements"
                  Excuse Regarding Impax's Failure to File Audited Financials Is
                  Unsupported by the Facts.............................................................................7

            4.    Plaintiffs' Requests Are Narrowly Tailored and Directly Related to
                  Allegations in the Complaint .......................................................................8

      B.    Relevant and Responsive Documents Have Been Created Since April 15,
            2005 and Are Discoverable.....................................................................................9

      C.    The Accounting Methods Defendants Considered Are Relevant and
            Discoverable ..........................................................................................................10

      D.    Documents Related to Employee Compensation Are Relevant and
            Discoverable ..........................................................................................................11

      E.    Plaintiffs' Individual Requests Are Proper and Defendants Should Be
            Compelled to Produce the Requested Documents ..................................................12

            1.    Request No. 13...........................................................................................12

            2.    Request No. 42...........................................................................................13

            3.    Request No. 44...........................................................................................13

      F.    Defendants Have Not Sustained Their Burden with Respect to Their
            Boilerplate Objections ...........................................................................................15

III.  CONCLUSION.....................................................................................................15

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ..........................................................................................12

5

*Ferdik v. Bonzelet,*
    963 F.2d 1258 (9th Cir. 1992) ........................................................................................12

6

7

*Monroe v. Maricopa County Sheriff's Office,*
    No. CV 07-2628-PHX-MHM (DKD), 2008 U.S. Dist. LEXIS 37572
    (D. Ariz. Apr. 25, 2008).................................................................................................12

8

9

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978)..........................................................................................................3

10

*Wynne v. McCormick & Schmicks' Seafood Rests., Inc.,*
    No. C06-3153 CW (BZ), 2006 U.S. Dist. LEXIS 88989
    (N.D. Cal. Nov. 28, 2006)................................................................................................3

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   I.      INTRODUCTION

2          After lengthy meet and confers, plaintiffs filed a motion seeking to compel defendants'

3   production of certain highly relevant and responsive documents that defendants adamantly refuse to

4   produce claiming that such documents are not relevant.  In their opposition, not only have defendants

5   failed to meet their burden demonstrating that the requested discovery is irrelevant, their arguments

6   underscore the direct relevance of the information sought in the contested requests.  Moreover, after

7   hiding the ball for almost four years, Impax Laboratories, Inc.'s ("Impax" or the "Company") most

8   recent Securities and Exchange Commission ("SEC") filing – which for the first time shows FY04

9   financial results – provides insight into why defendants are afraid to produce the requested

10  documents.  The documents will likely demonstrate that plaintiffs' allegations that Impax improperly

11  recognized revenue on bupropion sales under its agreement with Teva Pharmaceutical Industries Ltd.

12  ("Teva") are true.  Given these facts, defendants' only recourse appears to be to improperly and

13  narrowly construe the Fourth Amended Complaint's ("Complaint") allegations, claiming

14  "irrelevance," to avoid production of highly relevant documents.

15         Plaintiffs allege that defendants violated the federal securities laws by making false and

16  misleading statements concerning their recognition of revenue related to Impax's blockbuster drug

17  bupropion during FY04.  After 18 consecutive quarters of losses, Impax announced its first

18  profitable quarter in 1Q04 with net income of $9 million based almost entirely on bupropion sales.

19  ¶¶4, 86.[1]  Defendants announced net income of $572,000 and $700,000 for 2Q04 and 3Q04,

20  respectively.  ¶286.  In November 2004, the Company was forced to restate its 1Q04 and 2Q04

21  earnings downward by $3.8 million and $251,000, respectively, to $5.2 million for 1Q04 and

22  $321,000 for 2Q04.  ¶¶86, 286.  For 47 months, since the November 16, 2004 filing of the 3Q04

23  results, the Company failed to file any mandated periodic financial disclosures with the SEC.

24  Significantly, it appears that Impax's auditor for FY04, Deloitte & Touche LLP ("Deloitte"), still has

25  not signed off on Impax's revenue recognition methods.  Impax's accounting problems have led to

26  _____

27  [1]      All paragraph ("¶") references are to the Complaint.

28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW       - 1 -

1   protracted discussions with the Office of the Chief Accountant ("OCA") of the SEC, the delisting of

2   Impax securities from the NASDAQ and subsequent revocation of Impax's registration by the SEC.

3   Plaintiffs' Motion to Compel Production of Documents from Impax Defendants at 2-4.

4          Defendants failed to release any year-end financials for 2004 until October 10, 2008, when

5   defendants filed a Registration Form 10 under §12(g) ("2008 Registration Statement") with the SEC,

6   which shows that FY04 boasts the largest loss in Company history.  Instead of catapulting the

7   Company to profitability, defendants' improper revenue recognition on bupropion sales has been

8   disastrous for the Company.[2]  The 2008 Registration Statement contains FY05-FY07 financials

9   audited by Grant Thornton LLP ("Grant Thornton") and annual numbers for FY04, but importantly,

10  the financials for FY04 are unaudited.  *Id.*  Notably, this filing neither includes a quarterly

11  breakdown of the FY04 financials, nor does the filing indicate whether Deloitte will ever sign off on

12  FY04 financials.

13         The newly disclosed unaudited FY04 financials transform Impax's first three profitable

14  quarters (1Q04-3Q04) into the largest annual loss in the Company's history – almost $49 million.  In

15  a further attempt to circumvent relevant discovery, defendants refuse to produce documents created

16  after April 15, 2005 arguing that all 2004 accounting issues were resolved by the 2004 Close-Out

17  Letter signed by Impax and Teva on March 24, 2005 ("Close-Out Letter").  As detailed in §II.A.2

18  below, the Close-Out Letter did not resolve the improper revenue recognition issues.  This latest

19  filing supports plaintiffs' claims that defendants did not have adequate information to properly

20  recognize revenue during the class period and only reinforces the relevancy of post-class period

21  events and documents relating thereto.  The Company is employing a different and previously

22  undisclosed revenue recognition method to address the improper accounting for bupropion used

23  during the class period.  However, because defendants' filing does not elaborate on how Impax

24  ────────────────

25  [2]      The 2008 Registration Statement is approximately 800 pages long.  Rather than burden the
    Court with the entire lengthy filing, plaintiffs have attached only the relevant pages as an exhibit for
26  the Court's reference.  *See* Exhibit A to the Declaration of Daniel J. Pfefferbaum in Further Support
    of Plaintiffs' Motion to Compel Production of Documents from Impax Defendants ("DJP Reply
27  Decl."), filed concurrently herewith.  (Plaintiffs would be pleased to provide the entire document to
    the Court upon request.)

28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW        - 2 -

1  arrived at this almost $49 million loss, discovery sought by plaintiffs is crucial to understanding

2  Impax's FY04 financials – which further demonstrates why plaintiffs are entitled to the discovery

3  sought.  The revised accounting method defendants have employed appears to be precisely in line

4  with what plaintiffs allege defendants should have done – deferred the recognition of revenue until

5  they had all the information necessary to properly recognize the revenue.

6          The arguments set forth in plaintiffs' motion to compel, and defendants' failure to meet their

7  burden in opposition, are more than sufficient to support the grant of plaintiffs' motion.  In addition,

8  the 2008 Registration Statement, which completely re-writes the financial record for FY04,

9  conclusively demonstrates that documents created from 2005 to the present are highly relevant to

10 plaintiffs' claims.  Therefore, plaintiffs' motion should be granted.

11 **II.    ARGUMENT**

12         **A.    Plaintiffs' Allegations Warrant Production of the Discovery Sought**

13         It is well-established that discovery regarding "any matter that bears on, or that reasonably

14 could lead to other matter that could bear on, any issue that is or may be in the case" is permitted.

15 *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Wynne v. McCormick & Schmicks'*

16 *Seafood Rests., Inc.*, No. C06-3153 CW (BZ), 2006 U.S. Dist. LEXIS 88989, at *1 n.1 (N.D. Cal.

17 Nov. 28, 2006).  Relevancy is construed broadly and liberally, particularly at the discovery stage.

18 *Oppenheimer*, 437 U.S. at 351.  Based on an unreasonably narrow and tortured interpretation of

19 plaintiffs' allegations, defendants argue that the discovery sought is irrelevant.

20         Defendants attempt to improperly confine the scope of plaintiffs' discovery to information

21 already publicly disclosed, namely Impax's November 2004 restatement, based on its failure to

22 account for customer credits issued in 1Q04 and 2Q04.  Defendants' Opposition to Plaintiffs'

23 Motion to Compel Production from Impax Defendants ("Defs' Brf.") at 6.  However, plaintiffs'

24 allegations are not limited simply to defendants' failure to account for customer credits on bupropion

25 sales.  Rather, plaintiffs' allegations relate to the ***amount*** and ***timing*** of revenue recognized by

26 defendants on bupropion sales and the effect of those issues on quarterly and yearly earnings.  ¶¶89-

27 125, 223-233, 400-448.  Plaintiffs allege that defendants made 19 false and misleading statements

28 related to the Company's improper recognition of revenue for the sale of bupropion products under

the Strategic Alliance Agreement ("SAA") during 2004.  ¶¶80, 154, 183, 192, 204, 213, 237, 246, 271, 280, 293, 306, 316, 326, 338, 348, 362, 372, 389.  As set forth in the Complaint, defendants improperly recognized revenue on Impax's best-selling drug bupropion before the price of the product was fixed and determinable (¶¶91-94), failed to accrue reserves for returns (¶¶104-125), failed to account for credits (¶¶95-103), failed to obtain the approval of the Company's independent auditor of the accounting methodology applied to bupropion sales (¶¶416-418) and failed to file required financial disclosures for four years, beginning with the annual financial results for FY04 (¶405).  Plaintiffs' allegations, as upheld by the Court, are not limited in the manner described by defendants.  Thus, plaintiffs are entitled to the discovery sought.

### 1.   Documents Related to Post-Class Period Events Are Relevant and Discoverable

Plaintiffs seek discovery related to certain post-class period events including Impax's failure to file audited FY04 financial results, communications with its auditors, the OCA, and NASDAQ regarding accounting for 2004, as well as discovery related to the Company's woefully tardy SEC filings.  *See* DJP Decl., Ex. 2 (Request Nos. 21-24, 26-29 and 50).[3]  Defendants' basis for refusing to produce these documents is inherently contradictory.  On the one hand, they claim "defendants do not dispute Plaintiffs' right to conduct discovery concerning accounting for sales of bupropion under the SAA in 2004"; on the other hand, they object to discovery concerning the effect of defendants' accounting on Impax's FY04 financials.  Defs' Brf. at 7-9.  In light of Impax's most recent filing showing a 2004 loss of almost $49 million, defendants' contention, that class period accounting had no effect on fiscal year-end financials, rings hollow.

Impax has admitted that its reported revenues for bupropion sales in 1Q04 and 2Q04 were artificially inflated and that it improperly accounted for revenue under the SAA with Teva.  ¶¶149, 196, 199, 219, 285-286, 332.  The Company restated its 1Q04 and 2Q04 financials on November 16 and 17, 2004, respectively, reducing net income by almost $4 million, but limited the admission to

---

[3]    "DJP Decl." refers to the Declaration of Daniel J. Pfefferbaum in Support of Plaintiffs' Motion to Compel Production of Documents from Impax Defendants, filed on September 25, 2008.

1    defendants' failure to account for customer credits.[4]   *Id.*   Far from settling the issues of revenue

2    recognition for bupropion sales, the November 2004 restatement merely placed a Band-Aid upon the

3    Company's fatal accounting problems and could not prevent the de-registration of Impax's stock.

4         Defendants' cherry-picked quotes by the SEC that the November 2004 restatement related to

5    different issues, are unavailing.  Defs' Brf. at 9.  Rather than help defendants stave off discovery, the

6    SEC's statements highlight precisely plaintiffs' point.   As plaintiffs have alleged, Impax's

7    accounting issues under the SAA go far beyond defendants' failure to account for credits.  In fact,

8    the OCA suggested that Impax pull out a "blank sheet of paper" and re-evaluate the entirety of its

9    accounting under the SAA.  DJP Decl., Ex. 15 at 17.  That is precisely what the 2008 Registration

10   Statement appears to have done, and what plaintiffs have alleged.

11        Impax's 2008 Registration Statement confirms plaintiffs' allegations that defendants

12   improperly and prematurely recognized revenue during 1Q04 and 2Q04 and that defendants'

13   accounting problems remain unresolved even after the November 2004 restatement.   Publicly

14   available documents prior to October 10, 2008, indicate that the first three quarters of FY04 were

15   profitable.  However, the 2008 Registration Statement, employing a different method of revenue

16   recognition extended backwards through the class period, shows that the Company had its largest

17   annual loss ever – almost $49 million – in FY04.  While this figure is not audited by Deloitte, and

18   the Company has not provided quarterly data for FY04, this new filing effectively restates 1Q04 and

19   2Q04 financials, and in fact, the Company's revenue recognition methodology under the SAA.

20   Plaintiffs have consistently maintained that accounting issues related to the class period were not

21   resolved by the November 2004 restatement and the 2008 Registration Statement only bolsters

22   plaintiffs' contention.  Therefore, defendants should be compelled to produce documents relating to

23   2004 financials up to the time these financial issues are resolved.

24

25

26   _____

27   [4]       Not surprisingly, defendants have agreed to produce discovery related to those admissions,
     but nothing more.

28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW          - 5 -

### 2.    The 2004 Close-Out Letter Did Not Resolve Defendants' Fraud

Relying on the 2004 Close-Out Letter signed March 24, 2005, defendants have stubbornly refused to produce any documents related to events that occurred after April 15, 2005, including Impax's communications with the OCA, SEC and NASDAQ.  Although defendants claim the Close-Out Letter "conclusively resolve[d] the issues concerning credits, adjustments and reserves that arose during 2004," the facts belie this claim.  Defs' Brf. at 8.  Importantly, defendants have not produced the Close-Out Letter to plaintiffs as they claim in their brief.[5]

As an initial matter, the Close-Out Letter is a private contractual agreement between Impax and Teva, which is no substitute for public disclosures.  Defendants state that "to the extent prices for sales under the SAA had not been fixed and determinable, they became fixed and determinable under the 2004 Close-Out Letter.  And, to the extent Impax had not previously been able to determine the appropriate return reserve for sales under the SAA, the 2004 Close-Out Letter rectified this situation for all 2004 sales." *Id.*  While the Close-Out Letter may have resolved certain details of sales or return transactions between Impax and Teva, it did not resolve Impax's problems with the proper method of revenue recognition or lead to the filing of audited FY04 financials.  In fact, Impax's continued delinquent filings for an additional three years led to the SEC's May 23, 2008 decision to revoke its registration of all Impax securities.  DJP Decl., Ex. 16.  Thus, the Close-Out Letter may have provided some details necessary to allow Impax to recognize revenue under Financial Accounting Standards No. 48, but it was only a starting point for defendants' attempt to properly recognize revenue for FY04.  Defendants continue to hide the details from the public and the class in this litigation that was directly injured by defendants' misrepresentations.

The 2008 Registration Statement further undermines defendants' claim that the Close-Out Letter resolved accounting issues related to plaintiffs' claims.  This filing drastically modifies all

---

[5]    On October 10, 2008, plaintiffs sent a letter asking defendants to identify the Bates numbers of the document they claim to have produced.  Defendants have not done so.  The 2008 Registration Statement lists various documents amending the SAA as exhibits, including the Close-Out Letter, yet these documents are not currently available to investors on the Company's or the SEC's website.  Therefore, plaintiffs do not have the documents defendants rely on in their brief.  Regardless, the 2008 Registration Statement eviscerates defendants' claims regarding the Close-Out Letter.

1   previously reported financial figures for 2004 using a different method of accounting, effectively

2   restating all of the 2004 financial results, including 1Q04 and 2Q04.  Under the Company's revised

3   accounting method, all revenue earned under the SAA is deferred and then recognized over the life

4   of the agreement – which the Company estimates to be 18 years.  DJP Reply Decl., Ex. A.  Impax's

5   decision to defer revenue recognition under the SAA is consistent with the declaration of plaintiffs'

6   forensic accountant attached to the Complaint, which states that where future returns of bupropion

7   could not be estimated, defendants did not have adequate information to properly recognize revenue,

8   and thus it would require deferral.  DJP Reply Decl., Ex. B.

9       Simply put, discovery into the events which transformed the Company's first three profitable

10   quarters into the largest loss in Impax's history is directly relevant to plaintiffs' claims as well as

11   necessary to demonstrate falsity, materiality and scienter.  The Court should deny defendants'

12   objections to the extent that they rely on the Close-Out Letter to limit plaintiffs' discovery – there is

13   ample evidence that relevant documents were created as recently as the filing of the 2008

14   Registration Statement.

15           **3.      Defendants' "Newly Announced Accounting Pronouncements"
                         Excuse Regarding Impax's Failure to File Audited Financials**

16           **Is Unsupported by the Facts**

17       After four years of proceedings, defendants now introduce a new excuse for their failure to

18   timely file periodic financial disclosures: compliance with "recent accounting pronouncements."

19   Defs' Brf. at 1, 4.  Defendants  provide *no evidence* in support of their argument – nor do they cite to

20   any accounting pronouncement that is "new."  Thus, the Court should disregard this entire argument

21   as without merit.

22       In its May 23, 2008 Opinion revoking Impax's registration, the SEC never once refers to new

23   accounting pronouncements, but instead attributes the Company's failure to file to its difficulty

24   "identifying an appropriate revenue recognition accounting policy" and "application of the revenue

25   recognition policy under the Agreement."  DJP Decl., Ex. 16 at 12-13, 14 n.30.  In support of its

26   revocation, the SEC found the Company's "response to its accounting dilemma [to be] less than

27   desirable," that the Company's "efforts to provide information to the public have not been effective,"

28   and that its representations about when it would be compliant not credible.  *Id.*

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW        - 7 -

1     Significantly, the SEC characterized the delay in the Company's filing as a problem of its

2  own making, noting that "Impax cannot blame others for its inability to account for a contract that it

3  entered to further its business interests."  DJP Decl., Ex. 13 at 15.  "Impax created a morass" by

4  entering the SAA – an agreement it was not capable of accounting for – and "Impax's internal

5  control weaknesses compounded its accounting problems."  *Id*. at 12.  Although defendants

6  repeatedly refer to the complexity of the SAA, the SEC found that the "accounting issues that are

7  preventing completion of Impax's 2004 audit are not unique and inordinately complex."  *Id*. at 15.

8  Defendants' excuses are just that – nothing more than an improper attempt to avoid discovery.  The

9  Court should not countenance defendants' attempts to circumvent their discovery obligations.

10     **4.     Plaintiffs' Requests Are Narrowly Tailored and Directly**
       **Related to Allegations in the Complaint**

11

12     Plaintiffs have repeatedly detailed the relationship of their discovery requests to their

13  allegations and their burden of proof – during meet and confers, in correspondence and in these

14  motion papers.  Yet, defendants mischaracterize plaintiffs' requests as a "fishing expedition."  Defs'

15  Brf. at 10.  Contrary to defendants' contentions, plaintiffs are not seeking to discover new wrongs or

16  add new claims to their Complaint.  Instead plaintiffs' discovery requests seek those documents

17  which evidence the full impact of defendants' fraud on Impax's earnings.

18     Plaintiffs' allegations are based on defendants' improper revenue recognition for bupropion

19  products under the SAA during 2004.  This is an unresolved accounting problem for the Company,

20  as demonstrated by the appearance of ***unaudited*** FY04 financials in the 2008 request for registration.

21  While elements of accounting under the SAA may have been resolved incrementally – some in

22  November 2004, some in March 2005, some even later – plaintiffs are entitled to documents that

23  demonstrate how Impax went from announcing its first three profitable quarters in 2004 – the most

24  profitable quarter boasting $5.2 million in profits – to its largest annual net loss in the Company's

25  history of $49 million.  The fact that Deloitte still has not signed off on even this $49 million loss

26  further reinforces plaintiffs' need for the discovery they seek.  Defendants have not released restated

27  financials for 1Q04 or 2Q04 that reflect their new accounting methods.  Documents sought by

28  plaintiffs are relevant to show why Deloitte has still not signed off on defendants' FY04 financials,

1    whether the Company and Deloitte are currently in disagreement and whether the Company intends

2    to obtain Deloitte's sign off for a clean audit at some point in the future, and the origin of the now

3    $49 million loss for FY04.

4           At trial, plaintiffs have the burden of demonstrating the falsity and materiality of defendants'

5    statements and that defendants acted with scienter.  Documents responsive to plaintiffs' discovery

6    requests seeking post-class period evidence are relevant to show changes made to the Company's

7    revenue recognition for bupropion sales in 2004 under the SAA; whether defendants improperly

8    failed to accrue reserves or properly account for returns, chargeback or rebates; the magnitude of the

9    accounting impropriety which led to a FY04 loss of almost $49 million; details relating to the

10   accounting under SAA, regardless of when resolved; alternative proposals for accounting under the

11   SAA; whether defendants had knowledge or should have been aware of the flaws in the Company's

12   accounting methods; material weaknesses in Impax's internal controls; the opinions of the

13   Company's auditors on Impax's accounting methods and the findings of the OCA upon each of these

14   matters.  Thus, the discovery sought is necessary to proving plaintiffs' claims and defendants should

15   be compelled to produce responsive documents.

16          **B.      Relevant and Responsive Documents Have Been Created Since April
                       15, 2005 and Are Discoverable**

17

18          Defendants seek to impose an arbitrary discovery cutoff on documents created after April 15,

19   2005 that are relevant and responsive to Request Nos. 4, 12 and 18.  These Requests seek documents

20   related to accounting for sales, return, credits, discounts and reserves for bupropion, revenue

21   recognition, and discounting by retailers.  Defendants acknowledge the relevance of the documents

22   sought but refuse to produce relevant documents created after April 15, 2005 through the resolution

23   of defendants' FY04 accounting.  Defs' Brf. at 12-14.  Plaintiffs are entitled to discover documents

24   relevant to all aspects of revenue recognition under the SAA for FY04 and this extends to discovery

25   related to defendants' most recent filing of unaudited FY04 financials.

26          Once again, defendants rely on the Close-Out Letter as a basis for their refusal to produce

27   documents created after April 15, 2005.  As discussed above in §II.A.2., the Close-Out Letter was a

28   private agreement between Impax and Teva.  The Close-Out Letter did not resolve the Company's

revenue recognition deficiencies or lead to the filing of audited FY04 annual results.  The 2008 Registration Statement only underscores that relevant documents continue to be created to the present.

### C.     The Accounting Methods Defendants Considered Are Relevant and Discoverable

Request No. 10 seeks documents and communications relating to recognition of revenue for bupropion, including "any alternative methods of revenue recognition proposed for bupropion regardless of whether those methods were implemented."  DJP Decl., Ex. 2.  In their brief, defendants admit that "documents regarding revenue recognition policies used or considered during the class period" are relevant to whether defendants "knowingly or recklessly employed improper revenue recognition policies."  Defs' Brf. at 14.  Plaintiffs agree.  However, defendants assert that accounting methods considered *after* the class period, but which pertain to the class period, are irrelevant.  Here, defendants are plainly wrong.  The revenue recognition policies contemplated or employed by defendants after the class period are relevant to demonstrating the reasonableness, accuracy, precision, applicability, aggressiveness and magnitude of error in the revenue recognition policies employed during the class period.

Further, the Company's 2008 Registration Statement strongly supports plaintiffs' argument: FY04 has been restated from Impax's first three profitable quarters – totaling net income of $6 million – to its largest annual loss in history – $49 million.  The Company is employing a revised revenue recognition method in line with plaintiffs' allegations, which essentially restates Impax's financials for 1Q04 and 2Q04.  Documents relating to revenue recognition policies proposed or implemented after the class period will demonstrate how defendants arrived at their new FY04 financials and are relevant to plaintiffs' claims that defendants knew or were reckless in not knowing that the revenue recognition policies in place during 2Q04 were improper.

Defendants admit that plaintiffs are entitled to documents responsive to Request Nos. 8, 9 and 11 regarding agreements between Impax and companies other than Teva, and accounting and recognition of revenue for products other than bupropion.  Defs' Brf. at 15.  In so doing, however, defendants make the completely nonsensical argument that "[d]ocuments that were not available

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW       - 10 -

1    ***before or during*** the class period cannot be relevant to what Defendants knew ***or should have***

2    ***known*** during the class period." *Id*. (emphasis added).  Clearly, documents available during the

3    class period, as well as documents obtained by defendants or created by defendants after the class

4    period, are relevant to demonstrating what defendants ***should have known*** and were therefore

5    reckless in not knowing during the class period.

6       **D.    Documents Related to Employee Compensation Are Relevant and**
         **Discoverable**

7
        Plaintiffs allege that defendants delayed paying bonuses in order to improperly benefit from

8    Impax's artificially inflated revenues.  ¶452.  The decision not to pay a bonus on the eve of Impax's

9    first ever profitable quarter is uncharacteristic and suspicious.  In past years, defendants had received

10   large bonuses despite negative earnings.  Plaintiffs allege that the decision allowed defendants to

11   take larger bonuses (which would have been unjustified or unsavory in 2003) based on profitable

12   2004 sales figures.  In their brief, defendants challenge plaintiffs' allegations on the merits.  Defs'

13   Brf. at 17.  Defendants seem to forget that the Court upheld plaintiffs' allegations in their entirety,

14   and defendants must now produce discovery thereon.

15       Defendants also fail to meet their burden regarding their objection to producing documents

16   related to the lucrative contract given to Dr. Ann Hsu, the wife of Impax's CEO.  Plaintiffs allege

17   that the contract between Dr. Ann Hsu and Impax – which began prior to and extended through the

18   class period – allowed defendant Larry Hsu to reap improper compensation based on defendants'

19   false and misleading statements.  The relationship bears all the hallmarks of impropriety and

20   plaintiffs are entitled to discovery thereon.

21       Plaintiffs' allegations have survived the pleading stage and are now subject to discovery.

22   Therefore, defendants' repeated insistence that plaintiffs' allegations are "insufficient to create an

23   inference of scienter" completely misses the mark.[6]  Defs' Brf. at 15.  Defendants' repeated finger

24

25   _____

26   [6]     Defendants insist that the Court's prior rulings related to whether plaintiffs had pled a strong
        inference of scienter entirely cuts off plaintiffs' right to discovery on certain allegations. *Id*. at 15-
27   17, 19.  Defendants cite to the Court's orders granting defendants' motion to dismiss the First
        Amended Complaint and denying defendants' motion to dismiss the Third Amended Complaint,
28   wherein the Court held that certain allegations, ***considered in isolation***, were inadequate to plead a

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW       - 11 -

pointing to isolated quotations from previous Court rulings, taken wholly out of context, does nothing to support their petulant refusals to produce. [7]  Plaintiffs have pled a strong inference of scienter in the operative complaint, and are now entitled to gather evidence that supports or disproves their allegations.

**E.  Plaintiffs' Individual Requests Are Proper and Defendants Should Be Compelled to Produce the Requested Documents**

**1.  Request No. 13**

Request No. 13 seeks "[d]ocuments and communications related or referring to the Company's overall reduction in reserves accrued during 1Q04 and 2Q04." DJP Decl., Ex. 2.  This Request goes to the level of reserves at Impax during the class period.  Defendants' convoluted interpretation of this Request mischaracterizes the parties' discussions during the meet and confer process and highlights the need for Court intervention at the discovery stage.  Defs' Brf. at 18, 21.

In an attempt to meet and confer in good faith, plaintiffs explained their request to seek documents related to the decision to reduce the Company's reserves.  Any fair reading of plaintiffs' allegations clearly demonstrates that the reduction in reserves was a result of a decision by defendants.  However, as made clear in their opposition, defendants place undue emphasis on the word "decision" which they claim permits them to deny plaintiffs any discovery related to their narrowly drafted Request.  Defendants view the reduction in reserves not as a "decision" but a

---

strong inference of scienter.  Dkt. Nos. 74 at 14; 127 at 14.  However, defendants ignore the part of the Court's Order where the Court found that collectively plaintiffs' allegations do support a strong inference of scienter.  Dkt. No. 127 at 14.  Defendants have never moved to strike any of the allegations contained within the operative complaint and plaintiffs are entitled to discovery relevant to their allegations.

[7]      The Court's holdings as to the sufficiency of allegations contained within previous versions of the complaint – in addition to not being relevant to the scope of discovery – have no bearing on the sufficiency of the operative complaint.  An amended complaint supersedes the original and prior amended complaints. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Armstrong v. Davis*, 275 F.3d 849, 878 n.40 (9th Cir. 2001); *Monroe v. Maricopa County Sheriff's Office*, No. CV 07-2628-PHX-MHM (DKD), 2008 U.S. Dist. LEXIS 37572, at *5-*6 (D. Ariz. Apr. 25, 2008). Defendants seem to be in denial that this case has moved beyond the pleading stage. *See* DJP Decl., Ex. 18 (Impax Laboratories, Inc's Petition for Writ of Mandamus to the Ninth Circuit, filed August 28, 2008).

1   mechanical response to their failure to accrue any reserves whatsoever in the face of a 173% increase

2   in sales. *Id.* at 18.

3        The Complaint contains numerous allegations related to the Company's decision not to

4   accrue reserves for bupropion and ultimately to reduce reserves by 67% compared to sales. ¶¶109-

5   125, 228-233. Confidential witnesses confirm that the decrease in reserves did not make sense and

6   the failure to set up ***any reserves at all*** for bupropion products was directly related to defendants'

7   fraudulent scheme to artificially inflate revenue from sales of bupropion. ¶¶120-125. Plaintiffs

8   allege that defendants improperly relied on Teva to accrue reserves on Impax's behalf, even when

9   they had direct evidence and personal knowledge that Teva was not accruing reserves for Impax.

10  ¶¶109, 120-122. Discovery responsive to Request No. 13 goes to demonstrating that defendants

11  knew or were deliberately reckless in not knowing that their reliance on Teva to accrue reserves for

12  Impax was entirely improper under Generally Accepted Accounting Principles. ¶90. Therefore,

13  defendants should be compelled to produce responsive documents.

14               **2.      Request No. 42**

15       Request No. 42 seeks documents related to the departure of Barry R. Edwards, CEO and

16  board member, from Impax's employment. In their brief, defendants again improperly rely on the

17  Court's prior opinions related to whether isolated allegations were sufficient to support a strong

18  inference of scienter to survive a motion to dismiss. Defs' Brf. at 19; *see also* n.7, *supra*.

19  Additionally, as noted in n.7, *supra*, the Court's remarks in prior orders that certain of plaintiffs'

20  allegations in isolation may be insufficient ***alone*** to raise an inference of scienter, but suffice in

21  totality, do not give defendants license to unilaterally refuse to comply with legitimate, well-drafted,

22  narrow discovery requests. Discovery related to the departure of Impax's CEO, who had knowledge

23  of bupropion credits and was in charge when Impax became delinquent in its SEC filings is relevant

24  to scienter. Plaintiffs' motion to compel production of responsive documents related to Request No.

25  42 should be granted.

26               **3.      Request No. 44**

27       Request No. 44 seeks documents relating to Deloitte's decision not to stand for

28  reappointment as Impax's auditor. Defendants assert that they are not required to produce

1    documents because they claim there was no disagreement with Deloitte as to defendants' choice of

2    accounting methodology. Defs' Brf. at 19. Defendants ignore the numerous documents filed as

3    exhibits to plaintiffs' motion to compel which refute defendants' assertion that Deloitte has no

4    disagreements with Impax.

5         For example, in the May 23, 2008 Opinion of the Commission, the SEC explicitly stated that

6    "[i]n March 2005, Deloitte informed Impax that it was unable to 'reach a consensus on the

7    appropriate method of revenue recognition for the transactions [arising under the Agreement] in

8    2004,' and therefore was unable to complete its audit of the Company's financial statements for the

9    year ending December 31, 2004." DJP Decl., Ex. 16 at 3-4 (alteration in original). The SEC goes on

10   to quote Impax's own submission which stated: "'Deloitte has advised us that it believed the [May

11   2005 Letter] did not clearly present all of the pertinent facts related to our relationship with Teva

12   under the [Agreement] or clearly present the proposed accounting or the basis for such

13   accounting . . . [and] that *it has not yet concluded whether it agrees with the proposed*

14   *accounting*.'" *Id*. at 5 (alteration in original) (emphasis added). In its Initial Decision as to Impax,

15   the SEC noted that "Deloitte believes the revenue recognition model that Impax proposed [to the

16   OCA] is "acceptable," but that *application of the model may not result in financial statements that*

17   *provide transparent financial information to investors*." DJP Decl., Ex. 13 at 8 (emphasis added).

18   It is difficult to fathom what disagreement might be more relevant to investors than the one stated by

19   Deloitte to the SEC. *Id.*[8]

20        Defendants' 2008 Registration Statement containing unaudited FY04 results highlights the

21   Company's disagreements with Deloitte. This filing, which employs a revised revenue recognition

22   policy, dramatically restates the Company's 1Q04 and 2Q04 results. Defendants' inability to get

23   _____

24   [8]    The documents defendants cite contradict their assertions in their brief. Deloitte's letter
     indicates that it is unable to comment on whether Impax had fixed material weaknesses in its internal

25   controls. Declaration of Louis H. Kozloff in Support of Defendants' Opposition to Plaintiffs'
     Motion to Compel Production of Documents from Impax Defendants, Ex. 6. As the SEC noted, a

26   material weakness "is a control deficiency, or combination of control deficiencies, that results in
     more than a remote likelihood that a material misstatement of the annual or interim financial

27   statements will not be prevented or detected." DJP Decl., Ex. 16 at 6 n.12.

28

     PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL
     PRODUCTION OF DOCUMENTS FROM IMPAX DEFENDANTS – C-04-4802-JW        - 14 -

Deloitte's certification of the revised revenue recognition methodology and FY04 annual results supports the relevancy of the documents sought by plaintiffs.

### F.  Defendants Have Not Sustained Their Burden with Respect to Their Boilerplate Objections

Defendants do not even attempt to dispute that their confidentiality objections are improper. Therefore defendants should be compelled to produce documents responsive to Request Nos. 10-11, 21-29 and 50 over their admittedly baseless confidentiality objections.

As explained in plaintiffs' motion to compel, plaintiffs' challenge with respect to Request Nos. 2-3, 5-7, 14-16, 30-31, 35 and 38-41, was limited to defendants' failure to articulate specific objections.  Defendants' brief does nothing to remedy the deficiency of their boilerplate objections on the purported bases of vagueness, overbreadth and burden.  Instead, defendants merely assert that they "have not withheld documents based on these objections in their production of documents to date."  Defs' Brf. at 20.  However, defendants have conceded that they "will supplement their objections with specific information concerning the overbroad nature of the Requests and undue burden of production if it becomes necessary for Defendants [to] rely on these objections" – something they would not concede during our meet and confers.  *Id*.  Accordingly, defendants should be compelled to produce responsive documents over their meaningless boilerplate objections.

## III.  CONCLUSION

For the foregoing reasons and arguments outlined in the opening motion, as well as any oral argument before the Court, plaintiffs' motion to compel should be granted in its entirety and defendants should be required to produce responsive documents within 30 days of the Court's Order granting the motion.

DATED:  October 15, 2008                     Respectfully submitted,

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             AZRA Z. MEHDI
                                             DANIEL J. PFEFFERBAUM
                                             SUZANNE H. KAPLAN


                                             _____
                                                          /s/
                                             DANIEL J. PFEFFERBAUM

1

2          100 Pine Street, Suite 2600
           San Francisco, CA  94111
           Telephone:  415/288-4545
3          415/288-4534 (fax)

4          COUGHLIN STOIA GELLER
             RUDMAN & ROBBINS LLP
5          LAURIE L. LARGENT
           655 West Broadway, Suite 1900
6          San Diego, CA  92101
           Telephone:  619/231-1058
7          619/231-7423 (fax)

8          Lead Counsel for Plaintiffs

9          VANOVERBEKE MICHAUD &
             TIMMONY, P.C.
10         MICHAEL J. VANOVERBEKE
           THOMAS C. MICHAUD
11         79 Alfred Street
           Detroit, MI  48201
12         Telephone:  313/578-1200
           313/578-1201 (fax)

13         Additional Counsel for Plaintiffs

14  S:\CasesSD\IMPAX Labs\BRF00054885.doc

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following designated Internet site at:  http://securities.csgrr.com/.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 15, 2008.

                                                            /s/
DANIEL J. PFEFFERBAUM
COUGHLIN STOIA GELLER
        RUDMAN & ROBBINS LLP
100 Pine Street, 26th Floor
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:dpfefferbaum@csgrr.com

# Mailing Information for a Case 5:04-cv-04802-JW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Dale E. Barnes , Jr**
  dale.barnes@bingham.com,teresa.bowen@bingham.com,lisa.lee@bingham.com

- **Joseph Otto Click**
  click@blankrome.com,smith-sh@blankrome.com

- **Patrick J. Coughlin**
  PatC@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Robert S. Green**
  CAND.USCOURTS@CLASSCOUNSEL.COM

- **Suzanne Heald Kaplan**
  shkaplan@csgrr.com

- **Louis H. Kozloff**
  Kozloff@blankrome.com

- **Laurie L. Largent**
  llargent@csgrr.com

- **William S. Lerach**
  e_file_sd@lerachlaw.com

- **Elizabeth Pei Lin**
  elin@milberg.com,schang@milberg.com,cchaffins@milberg.com

- **Tricia Lynn McCormick**
  triciam@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Azra Z. Mehdi**
  azram@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Daniel Jacob Pfefferbaum**
  DPfefferbaum@csgrr.com,nrogers@csgrr.com,khuang@csgrr.com,GDarwish@csgrr.com

- **Willow E. Radcliffe**
  willowr@csgrr.com,khuang@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing

program in order to create notices or labels for these recipients.

**Kerry Brainard**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Tim P. Harris**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037

**Michael Joseph**
600 New Hampshire Avenue, N.W.
Washington, DC 20037

**Darren Jay Robbins**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway
Suite 1900
San Diego, CA 92101

**Hardy Vieux**
Blank Rome LLP
Watergate 600
New Hampshire Avenue,NW
Washington, DC 20037